UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Mission Coal Company, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully state the following in support of this motion (this "Motion"):

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing, but not directing, the Debtors (i) to pay prepetition wages, salaries, other

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Kevin Nystrom, Chief Restructuring Officer of Mission Coal Company, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on October 14, 2018 (the "Commencement Date").

compensation, and reimbursable expenses in an aggregate amount up to $15,911,000 pursuant to the Interim Order and up to $22,811,000 in the aggregate pursuant to the Final Order and (ii) to continue employee benefits programs in the ordinary course of business; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the Commencement Date to consider approval of this Motion on a final basis.

## **Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Northern District of Alabama (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## **Background**

5. The Debtors are engaged in the mining and production of metallurgical coal, also known as "met" coal, which is a critical component of the steelmaking process. Established through a series of acquisitions, the Debtors are among the leading producers of met coal in the United States. The Debtors are headquartered in Kingsport, Tennessee and operate subterranean, surface, and longwall mining complexes in West Virginia and Alabama.

6. On the Commencement Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**The Debtors' Workforce**

7. The Debtors' employees and independent contractors perform a wide variety of functions critical to the administration of these chapter 11 cases and the Debtors' successful reorganization. Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency. In many instances, the Debtors' employees and independent contractors include highly trained personnel who are not easily replaced. Without the continued, uninterrupted services of their employees and independent contractors, the Debtors' reorganization efforts will be halted.

8. As of the Commencement Date, the Debtors employ approximately 1,075 individuals in the United States on a full-time basis and one individual on a part-time basis (collectively, the "Employees"), of which approximately 650 (collectively, the "Represented Employees") are represented by the United Mine Workers of America (the "UMWA"). The Debtors are party to two collective bargaining agreements (collectively, the "CBAs") with the UMWA, which generally set forth the terms of the Represented Employees' hourly wages, benefits, and other compensation.[3] Approximately 45 percent of the Debtors'

[3] In particular, Pinnacle Mining Company, LLC and the UMWA are party to a CBA dated April 27, 2018, and Oak Grove Resources, LLC and the UMWA are party to a CBA dated April 27, 2018. The Debtors are not assuming

non-union Employees are paid on an hourly basis (collectively, the "Hourly Employees") and approximately 55 percent receive a salary (collectively, the "Salaried Employees," and, together with the Hourly Employees, the "Non-Represented Employees").

9. In addition to the Employees, the Debtors also retain from time to time specialized individuals as independent contractors (the "Independent Contractors") to complete discrete projects. The Debtors currently retain approximately four Independent Contractors. The Independent Contractors are a critical supplement to the efforts of the Debtors' Employees and are paid through accounts payable rather than through payroll.

10. As discussed in the First Day Declaration, the Debtors have been experiencing severe adverse geological conditions at the Debtors' Pinnacle mine. In anticipation of the potential closure of the Pinnacle coal processing complex, on August 6, 2018, the Debtors issued conditional notices pursuant to the Worker Adjustment and Retraining Notification Act (the "Warn Act") to approximately 360 Employees, notifying them of the potential idling and closure of operations at the Pinnacle mining complex (collectively, the "WARN Act Notices"). Just prior to that, on July 30, 2018, the Debtors conducted a reduction in their workforce at the Pinnacle mining complex, including three Salaried Employees and approximately 90 Hourly Employees. In the months leading up to the Commencement Date, the Debtors continued to operate the Pinnacle coal processing complex and attempted to address the adverse mining conditions. As discussed in the First Day Declaration, the Debtors ultimately determined in their business judgment that it is no longer economical to continue operations at the Pinnacle coal processing complex and have begun the wind-down of such operations. The Debtors anticipate that approximately 280 Employees will

or affirming any contracts, agreements, programs, or applicability of any law related to any CBA pursuant to this Motion, and the Debtors reserve all of their rights with regard to any such CBA.

be laid off in conjunction with the closure of the Pinnacle coal processing complex, while approximately 60 Employees will remain employed through the closure.

**Employee Compensation and Benefits**

11. To minimize the personal hardship the Employees would suffer if employee obligations are not paid when due or as expected, the Debtors seek authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, expense reimbursements, and other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, taxes, and 401(k) contributions), health insurance, retirement benefits, workers' compensation benefits, severance, paid time off, other paid leave, unpaid leave, life and accidental death and dismemberment insurance, short- and long-term disability coverage, and other benefits that the Debtors have historically directly or indirectly provided to the Employees in the ordinary course of business (collectively, the "Employee Compensation and Benefits").[4] In addition, the Debtors also are seeking to pay all costs incident to the Employee Compensation and Benefits.

12. Subject to the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Compensation and Benefits programs in the ordinary course of business. Out of an abundance of caution, the Debtors request the right to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law.

[4] The relief sought in this Motion is subject to any renegotiation of the CBAs and shall be subject to any order entered by the Court pursuant to section 1113 or 1114 of the Bankruptcy Code.

13. By this Motion, the Debtors seek authority to make the following payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Relief Sought | Interim Amount | Total Amount |
|---|---|---|
| **Compensation and Withholding Obligations** | | |
| Unpaid Wages | $5,300,000 | $5,300,000 |
| Unpaid Contractor Obligations | $45,000 | $45,000 |
| Withholding Obligations | $1,300,000 | $1,300,000 |
| Expense Reimbursements | $70,000 | $70,000 |
| **Employee Benefit Programs** | | |
| Health Insurance Programs | $1,900,000 | $1,900,000 |
| Life, Disability, and AD&D Insurance | $395,000 | $395,000 |
| Workers' Compensation Program | $2,400,000 | $2,400,000 |
| Retirement Obligations | $3,000,000 | $9,800,000 |
| Retirement Deductions | $255,000 | $255,000 |
| Accrued and Owing Paid Leave | $1,200,000 | $1,300,000 |
| **Supplemental Employee Benefits** | | |
| Relocation Assistance | $36,000 | $36,000 |
| Bonus Program | $10,000 | $10,000 |
| **Total** | **$15,911,000** | **$22,811,000** |

14. The Debtors believe that four Employees are owed Employee Compensation and Benefits amounts that exceed $12,850, the priority compensation cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

## I. Compensation and Withholding Obligations.

### A. Unpaid Wages.

15. The Debtors pay their Employees' wage and salary obligations (the "Wages") on either a salaried or hourly basis, and such Wages and other compensation (collectively, the "Employee Compensation") are paid on a bi-weekly basis. The Debtors pay approximately $3.2 million in the aggregate on a bi-weekly basis on account of Employee Wages, but historically accrue, on average, approximately $1.1 million in additional overtime pay on a bi-weekly basis due to the nature of the Debtors' business and operations. The Debtors expect this amount to be reduced as the Pinnacle coal processing complex is shut down. The Debtors expect that once the layoffs are complete at Pinnacle, their bi-weekly Wage payments will be reduced by approximately $1.3 million and their overtime payments will be reduced by approximately $800,000.

16. Because the majority of Employees are paid in arrears, certain Employees will be owed accrued but unpaid Wages as of the Commencement Date. Wages also may be due and owing as of the Commencement Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees.

17. As of the Commencement Date, the Debtors estimate that Employees are owed an aggregate of approximately $5.3 million on account of accrued Employee Compensation (excluding reimbursable expenses, paid time off, and amounts related to the 401(k) plan) earned before the Commencement Date) (the "Unpaid Wages"), all of which will come due in the first 21 days of these cases. The Debtors seek authority, pursuant to both the Interim Order and the Final Order, to pay their Employees any Unpaid Wages in the ordinary course of business and consistent with past practice, and to continue making Wages and overtime payments on a postpetition basis in the ordinary course of the Debtors' business.

**B. Independent Contractors Compensation.**

18. The Debtors rely on approximately four Independent Contractors in the ordinary course of their business. These Independent Contractors perform financial and legal services that are critical to the Debtors' operations. The Debtors believe that receiving the authority to continue paying their Independent Contractors is critical to minimizing disruption of the Debtors' business operations. On average, the Debtors spend approximately $80,000 on Independent Contractors on a monthly basis.

19. As of the Commencement Date, the Debtors estimate that Independent Contractors are owed an aggregate of approximately $45,000 on account of accrued services rendered prior to the Commencement Date (the "Unpaid Contractor Amounts"), all of which will come due in the

first 21 days of these cases. The Debtors seek authority to pay any Unpaid Contractor Amounts owed on account of services already rendered in the ordinary course of the Debtors' business.

**C. Withholding Obligations.**

20. During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including garnishments, union dues, and child support, and other pre-tax deductions payable pursuant to certain of the Health and Welfare Programs (as defined below) (collectively, the "Deductions"). Some of the Deductions are forwarded to various third-party recipients. As of the Commencement Date, the Debtors estimate that the aggregate amount of accrued but unpaid Deductions is approximately $200,000, all of which will come due in the first 21 days of these cases.

21. The Debtors also are required by law to withhold from the Employees' Compensation amounts related to, among other things, federal, state, and local income taxes as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and, together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority at the same time Employees' payroll checks are disbursed. As of the Commencement Date, the Debtors estimate that the aggregate amount of accrued but unpaid Payroll Taxes is approximately $1.1 million.

22. As of the Commencement Date, the Debtors estimate that the aggregate amount of accrued but unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") is approximately $1.3 million. The Debtors seek authority, pursuant to the Interim Order and the

Final Order, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business during the administration of these chapter 11 cases.

**D. Payroll Processing.**

23. The Debtors utilize ADP, LLC ("ADP"), and a third-party payroll service to process and administer their Payroll Taxes. The Debtors calculate the Payroll Taxes for each Employee and transfers funds sufficient to satisfy such obligations to ADP in advance of each applicable pay period. ADP pays the Payroll Taxes on behalf of the Debtors.

24. On average, the Debtors pay approximately $42,000 per month to ADP for the payroll-related services that it provides to the Debtors and related administrative costs (the "Payroll Fees"). As of the Commencement Date, the Debtors do not believe any amounts are owed to ADP on account of Payroll Fees. However, failure to pay the Payroll Fees in the future could lead to delayed disbursement of Payroll Taxes to the appropriate third parties to the detriment of the Employees and the Debtors' operations. As a result, the Debtors seek to continue administering payroll in the ordinary course of business.

**E. Expense Reimbursements.**

25. In the ordinary course of business, the Debtors reimburse certain Employees for certain reasonable and customary expenses that such Employees personally incur in the scope of their employment (collectively, the "Expense Reimbursements"). Expense Reimbursements typically include expenses associated with travel, lodging, ground transportation, meals, and other business-related expenses incurred in the course of an Employee's duties. The Expense Reimbursements are incurred by Employees through the use of personal funds, and the applicable Employees may be held personally liable for any unpaid obligations even though the obligations

were incurred for the Debtors' benefit. Thus, the Debtors' inability to reimburse the Expense Reimbursements likely would impose significant hardship on Employees.

26. Due to the timing of when Employees submit expense reimbursements, it is often difficult for the Debtors to precisely estimate the amount of prepetition Expense Reimbursements outstanding as of the Commencement Date. Based on historical practice, the Debtors estimate that as of the Commencement Date, approximately $70,000 is accrued but unpaid on account of Expense Reimbursements, all of which is expected to come due in the first 21 days of these cases. By this Motion, the Debtors seek authority to pay unpaid prepetition Expense Reimbursements and to continue paying prepetition and postpetition Expense Reimbursements in the ordinary course of business on a postpetition basis and consistent with past practice.

## II. Employee Benefit Programs.

### A. Health and Welfare Programs.

27. The Debtors offer several insurance policies to eligible Employees for medical, dental, and vision care coverage and certain other benefits (each as defined herein, and, collectively, the "Health and Welfare Programs"), including:

- self-insured medical plans;
- self-insured dental plan;
- self-insured vision plan;
- life insurance;
- disability benefits;
- workers' compensation;
- vehicle allowance;
- retirement plans; and
- certain other supplemental benefit programs.

28. The Debtors seek authority to pay any unpaid amounts due under the Health and Welfare Programs in aggregate total of approximately $16.1 million, pursuant to the Interim Order and the Final Order, and to continue the Health and Welfare Programs postpetition in the ordinary course.

**1. Health Insurance Programs.**

29. The Debtors offer their Employees the opportunity to participate in a number of health benefit plans, including their self-insured Medical Plans, the Dental Plan, and the Vision Plan (each as defined below, and, collectively, the "Health Insurance Programs").

30. The Debtors offer medical and prescription drug benefit programs (the "Medical Plans") to Employees, which are administered by Anthem Insurance Companies, Inc. ("Anthem"). Additionally, the Debtors provide health insurance under the policy with Anthem to approximately 25 retired UMWA workers. The Medical Plans are fully funded by the Debtors, and Employees are not required to make any payments on account thereof. The total cost of the Medical Plans is approximately $2.5 million each month. The Debtors also maintain a $200,000 deductible per memberstop loss policy with Anthem to supplement the Anthem policy. The Debtors seek the authority to continue paying the Medical Plan costs on a postpetition basis in the ordinary course of business during the pendency of these chapter 11 cases.

31. The Debtors also to provide certain benefits to certain former Employees after their termination, retirement, or disability leave, including (without limitation) benefits provided under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and continued benefits for laid off Represented Employees for a six-month period. The Debtors anticipate they will continue to provide benefits for a six-month period to the laid off employees at the Pinnacle Mine. The Debtors administer their obligations arising under COBRA through their payroll provider ADP. Premiums are paid by the former Employees directly to ADP. ADP remits the premiums

paid by the former Employees to the Debtors. The Debtors provide benefits under COBRA to 15 former Employees whose employment with the Debtors terminated prior to the Commencement Date, and in connection therewith the Debtors pay a de minimis monthly administration fee to ADP on account of such obligations. The Debtors seek the authority to continue operating the COBRA benefits plan in the ordinary course of business during the pendency of these chapter 11 cases.

32. The Debtors currently provide medical, prescription, and vision benefits to seven surviving spouses (the "Surviving Spouses Benefits"), the premium amounts for which are approximately $12,000 per month. The Debtors pay de minimis amounts to ADP each month to administer the Surviving Spouses Benefits and provide ACA reporting regarding the same. The respective terms of the Surviving Spouses Benefits are as follows: (1) two receive lifetime Surviving Spouses Benefits until they remarry; (2) two receive lifetime Surviving Spouses Benefits, regardless of marital status; and (3) three receive Surviving Spouses Benefits for 60 months following the date of death of their spouse. The Debtors also provide medical benefits to one former employee who is currently disabled. The Debtors will provide these benefits until the former employee is 55 years of age.

33. The Debtors also provide dental insurance administered by MetLife Services and Solutions, LLC ("MetLife") (the "Dental Plan"), and vision insurance through VSP (the "Vision Plan"). The Dental Plan and Vision Plan are fully paid for by the Debtors. The estimated total cost of the Dental Plan and Vision Plan is approximately $75,000 and $25,000 each month, respectively. Employees are not required to make any contributions on account of the Dental Plan and Vision Plan, although some Employees purchase supplemental dental coverage, which is paid for through deductions from their Employee Compensation. As of the Commencement Date, the



Case 18-04177-TOM11 Doc 20 Filed 10/15/18 Entered 10/15/18 10:46:36 Desc Main Document Page 12 of 46

Debtors believe they owe approximately $24,000 and $90,000 with respect to the Dental Plan administration and Vision Plan, respectively.

34. The Debtors pay approximately $2.7 million per month in the aggregate for their contributions and the administrative[5] payments for the Health Insurance Programs. As of the Commencement Date, the Debtors estimate they owe approximately $1.9 million with respect to the Health Insurance Programs. The Debtors seek authority, pursuant to the Interim Order and the Final Order, to pay any unpaid amounts on account of the Health Insurance Programs in a manner consistent with historical practice and to continue administering the Health Insurance Programs in the ordinary course of business and consistent with past practice.

**2. Insurance, Disability, and Workers' Compensation Programs.**

**a. Life and AD&D Insurance Programs.**

35. The Debtors provide life and accidental death and dismemberment insurance coverage (the "Standard Life and AD&D Insurance") to Non-Represented Employees through MetLife, which provides one times the annual salary for Hourly Employees and two times the annual salary for Salaried Employees, with a maximum coverage of up to $1 million for Non-Represented Employees. The Debtors also provide $5,000 in spouse life insurance coverage and $2,000 in child life insurance coverage to Non-Represented Employees. With respect to Represented Employees, the Standard Life and AD&D Insurance provides a maximum benefit amount of $90,000.

36. As of the Commencement Date, the Debtors believe they owe approximately $220,000 with respect to the Standard Life and AD&D Insurance, which amount includes

[5] The Debtors also employ the services of USI Insurance Services, LLC ("USI") as a broker in connection with certain of the Health and Welfare Programs. USI receives commissions on the insurance plans for these services.

outstanding amounts owed for the Disability Benefits, as discussed below (the "Unpaid Life Insurance and Disability Obligations"). The Debtors seek authority to pay the Unpaid Insurance and Disability Obligations and the authority to continue providing the Standard Life and AD&D Insurance in the ordinary course of business and consistent with past practice.

**b. Disability Benefits.**

37. The Debtors provide Employees with short- and long-term disability benefits (the "Disability Benefits"). Employees are eligible for Disability Benefits on the first day of the month following their date of hire. Under the short-term disability benefits program, Salaried Employees are entitled to, among other things, continuation of 60 to 100 percent of their base wages, determined by a scale based on employment years of service, with a weekly maximum of $10,000, in the event of qualified non-work related illness or injury (the "Short-Term Disability Benefits"). Under the long-term disability benefits program, Salaried Employees are entitled to, among other things, continuation of 60 percent of their monthly wages, with a monthly maximum of $10,000, in the event of qualified non-work related illness or injury (the "Long-Term Disability Benefits"). Employees are terminated once they begin receiving Long-Term Disability Benefits. Under the sickness and accident UMWA benefits program, Represented Employees are entitled to, among other things, $470 per week reduced by other specific forms of compensation. The duration of pay is determined by a scale informed by the length of employment with the employer.

38. The Short-Term Disability Benefits and the Long-Term Disability Benefits are fully insured through MetLife. As of the Commencement Date, the Debtors believe they owe approximately $10,000 and $165,000 in premiums with respect to the Short-Term Disability Benefits and Long-Term Disability Benefits, respectively.

39. Approximately 30 Employees are currently receiving the Disability Benefits. As of the Commencement Date, as noted above, the Debtors believe they owe MetLife approximately

$395,000 for the Unpaid Life Insurance and Disability Obligations. The Debtors seek authority, pursuant to the Interim Order and Final Order, to pay the Unpaid Life Insurance and Disability Obligations in a manner consistent with historical practice and to continue providing the Disability Benefits in the ordinary course of business and consistent with past practice.

**c. Workers' Compensation Program.**

40. The Debtors maintain high-deductible workers' compensation insurance policies for Employees at the levels required by laws in the states in which the Debtors operate for claims arising from or related to their employment with the Debtors, including occupational pneumoconiosis ("black lung") claims under applicable state law (collectively, the "Workers' Compensation Program"). All Employees are entitled to participate in the Workers' Compensation Program. In addition, the Debtors also incur costs in connection with the Federal Mine Safety and Health Act of 1977, *see* 30 U.S.C. §§ 901–45 (the "Black Lung Benefits Act").[6]

41. Coverage for Employees is maintained through Rockwood Casualty Insurance Company ("Rockwood"). The Debtors pay approximately $14.4 million annually to Rockwood for maintaining the Workers' Compensation Program (the "Workers' Compensation Premiums"). The Debtors make monthly installment payments of approximately $1.2 million on account of the Workers' Compensation Premiums throughout the year. As of the Commencement Date, the Debtors owe approximately $2.4 million on account of Workers' Compensation Premiums. As a self-funded policy, a portion of the Workers Compensation Premium goes to paying existing claims, and another portion goes to building collateral to fund future claims. As of the Commencement Date the Debtors estimate based on the monthly contributions paid and claims

[6] As of the Commencement Date, the Debtors estimate that they owe approximately $18,200,000 on account of obligations pursuant to the Black Lung Benefits Act. The Debtors reserve all of their rights with regard to any obligations arising pursuant to the Black Lung Benefits Act.

made under the program, that the collateral balance is approximately $6.1 million. The Debtors request the authority to pay such unpaid Workers' Compensation Premiums, and any other unpaid Workers' Compensation premiums that become due during these chapter 11 cases, in the ordinary course of business and consistent with past practice.

42. For the claims administration process to operate in an efficient manner and to ensure that the Debtors' comply with their contractual obligations, the Debtors must continue to assess, determine, and adjudicate claims brought under the Workers' Compensation Program during these chapter 11 cases. In addition, to the extent any Employees assert claims under the Workers' Compensation Program, the Debtors request that the Court modify the automatic stay under section 362 of the Bankruptcy Code to permit the Employees to proceed with their claims under the Workers' Compensation Program. This required modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

43. Because the Debtors are statutorily and/or contractually obligated to maintain the Workers' Compensation Program, their inability to do so may result in adverse legal consequences that disrupt the reorganization process. Thus, the Debtors request the authority, pursuant to both the Interim Order and the Final Order (a) to pay the Unpaid Workers' Compensation Premiums, (b) to continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis, including by paying all Unpaid Workers' Compensation Premiums, and (c) to modify the automatic stay solely to allow Employees to assert claims under the Workers' Compensation Program.[7]

[7] The Debtors' Workers' Compensation Program may change postpetition in the ordinary course of business due to changes in applicable laws and regulations and the Debtors' ability to meet requirements thereunder. By this Motion, the Debtors request authority to continue the Workers' Compensation Program postpetition, including making any changes to current policy and practices that become necessary.

### 3. **Retirement Plans.**

44. The Debtors provide all active Non-Represented Employees with the ability to participate in a 401(k) program (the "401(k) Plan"). The Debtors additionally provide all active Represented Employees with the ability to participate in a qualified retirement benefit plan (the "Union Savings Plan"). On behalf of certain current and former Represented Employees' retirement benefits, certain of the Debtors have additional payment obligations to a defined benefit multiemployer pension plan (the "UMWA 1974 Pension Plan," and, together with the 401(k) Plan and the Union Savings Plan, the "Retirement Plans"). Finally, the Debtors also make contributions and provide retiree healthcare benefits to certain former Represented Employees pursuant to the Coal Industry Retiree Health Benefit Act of 1992 (such obligations, together with the obligations related to the Retirement Plans, collectively, the "Retirement Obligations").

45. Represented Employees are immediately eligible for either the 401(k) Plan or Union Savings Plan upon their date of hire. Non-Represented Employees are automatically enrolled in the 401(k) Plan after 60 days of employment. The Debtors do not match any contributions made by Non-Represented Employees to the 401(k) Plan. The Retirement Plans generally provide for pre-tax salary deductions of compensation up to limits set by the Internal Revenue Code, which the Debtors deduct automatically from each paycheck (collectively, the "Retirement Deductions"). As of the Commencement Date, the Debtors estimate that they have accrued Retirement Deduction of approximately $255,000, all of which will come due in the interim period.

46. The Debtors make a contribution to each Represented Employee's Union Savings Plan using a per hour worked formula. The Debtors contribute $1.50 per hour into Union Savings Plan for Retiree Health Care for 2007 New Inexperienced Miners ("NIMS"). The Debtors contribute $3.00 per hour into Union Savings Plan for Retiree Health Care and Pension eligibility

for NIMS who were hired in 2012 and beyond. The Debtors contribute $1.50 per hour into the Union Savings Plan for Employees with 20 years of credited pension service. The Debtors contribute $1.50 per hour into Union Savings Plan for miners who opt out of future pension credits prior to July 1, 2018. The Debtors also make defined contributions to the UMWA 1974 Pension Plan, with such amounts depending, in part, on the total number of hours worked by Represented Employees.

47. On a monthly basis, the Debtors contribute approximately $200,000 on account of the Union Savings Plan and approximately $660,000 on account of the UMWA 1974 Pension Plan. The Debtors anticipate that these monthly obligations will be reduced upon closure of the Pinnacle mine and preparation plant. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Retirement Plans is $1.9 million.

48. In addition, the Debtors previously negotiated terms with the UMWA on the payment of prior unpaid Retirement Obligations. The Debtors estimate that the remaining unpaid balance for this negotiated amount is approximately $7.9 million. The Debtors make monthly payments of $400,000 to the UMWA per the terms of the agreement. As of the Commencement Date, approximately $800,000 of payments under this agreement were due and payable.

49. Many Employees' retirement savings solely consist of the Retirement Plans. Thus, the Debtors believe that continuing the Retirement Plans is essential to maintaining Employee morale and protecting Employee expectations. In addition, the Debtors believe that the Retirement Deductions are generally held in trust by the Debtors and are not property of their estates. Further, certain of the Retirement Obligations, such as the Debtors' contributions to the Union Savings Plan, are contractual obligations arising under the CBAs. As such the Debtors are required to honor such obligations or risk breaching their commitments thereto.

50. Thus, the Debtors request the authority, but not direction, (a) solely pursuant to the Final Order, to continue the 401(k) Plan and consistent with their ordinary course practice, (b) pursuant to both the Interim Order and the Final Order, to transfer the Retirement Deductions on a pre- or postpetition basis and to continue the Retirement Plans in the ordinary course of business on a postpetition basis, (c) pursuant to both the Interim Order and the Final Order, to pay any accrued and unpaid Retirement Obligations in a manner consistent with historical practice, and (d) pursuant to both the Interim Order and Final Order, to continue to honor the Retirement Obligations in the ordinary course of business on a postpetition basis.

**B. Retiree Medical Benefits.**

51. The Debtors make contributions and provide retiree healthcare benefits to certain former Represented Employees pursuant to the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§ 9701–22 (the "Retiree Medical Benefits"). The Retiree Medical Benefits include medical benefits, such as health, vision, and prescription drug benefits. The Debtors provide Retiree Medical Benefits to approximately 25 retired Represented Employees. The Debtors do not provide any medical benefits to retired Non-Represented Employees. As discussed above, the Debtors provide Retiree Medical Benefits through their Anthem policy.

**C. Paid Leave.**

52. The Debtors maintain several paid leave benefit programs for Employees, providing paid leave for PTO, Holidays, and Other Paid Leave (each as defined below, and together, the "Paid Leave").

53. In the ordinary course of business, the Debtors provide paid time off ("PTO") to the Employees as a Paid Leave benefit. Hourly Employees and Salaried Employees are entitled to 10 vacation days, 5 personal days, and 3 bereavement days per calendar year. Represented Employees are entitled to 14 vacation days, 3 floating vacation days, and 6 personal days per

calendar year. PTO does not accrue and does not roll over to the next calendar year if unused. Employees who are terminated or resign are entitled to a cash payment in lieu of the accrued but unused PTO, subject to deduction for any amounts owed to the Debtors. The Debtors estimate that approximately $1.3 million is owed to Pinnacle employees on account of prepetition PTO that will become payable as they are laid off and the mine closes. The Debtors seek authority to pay, pursuant to the Interim Order and Final Order, any unpaid amounts due under the Paid Leave in total of approximately $1.3 million.

54. In addition, the Debtors also offer Non-Represented Employees 8 paid holidays and Represented Employees 9 paid holidays throughout the year (each a "Holiday" and, collectively, the "Holidays"). Generally, eligible Employees are not required to work on a designated Holiday and are paid for Holiday time at their base rate of pay.

55. The Debtors also permit their Employees to take certain other paid and unpaid leaves of absence for personal reasons, many of which are required by law. The Debtors pay Employees for certain missed work time in the ordinary course of business for bereavement leave or jury duty (the "Other Paid Leave"). Employees are not entitled to any separate cash payments in addition to their normal compensation for the Other Paid Leave. The Debtors also permit Employees to take unpaid leaves of absence for family medical leaves and military leaves (the "Unpaid Leave"). Employees are not entitled to cash payments for unused Unpaid Leave. The Debtors do not owe any amounts on account of Unpaid Leave as of the Commencement Date.

56. The Debtors believe that the continuation of the Paid Leave and Unpaid Leave policies in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend.

57. As a result, the Debtors, pursuant to the Interim Order and the Final Order, seek authority to allow eligible Employees to use their Paid Leave and Unpaid Leave in the ordinary course of business on a postpetition basis, and to pay any outstanding PTO and PTO arising in the ordinary course of business.

58. To be clear, the Debtors anticipate that their Employees will utilize any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

### D. Postpetition Non-Employee Director Compensation.

59. The Debtors have six directors that sit on the various boards. Three of the directors are Employees, and three are not. Two of the non-Employee directors are independent directors (each, an "Independent Director"). Independent Directors currently receive a $120,000 annual retainer, which is paid on a monthly basis, the first two months of which were paid in advance (the "Annual Retainer") and there are no prepetition amounts outstanding. The non-independent non-employee director receives $50,000 annual retainer for director compensation. The three employee directors are compensated $100,000 each per year and such payments are made in the each regular payroll. Directors are also entitled to expense reimbursement for out-of-pocket expenses (together with the Annual Retainer, the "Director Compensation").

60. The Debtors believe that the directors should be fairly compensated for the fair value of their services rendered to the Debtors during their chapter 11 cases. The Debtors, therefore, request the authority, solely pursuant to the Final Order and out of an abundance of caution, to pay Director Compensation as it comes due on a postpetition basis in the ordinary course of business and consistent with the Amended Director Compensation Policy.

### E. Vehicle Allowance Program.

61. In the ordinary course of business, the Debtors provide a vehicle-allowance program for certain insider-Employees and certain non-insider Employees working at mining locations (the "Vehicle Allowance Program"). As part of the Vehicle Allowance Program, the Debtors provide these Employees an allowance on account of costs these Employees incur with respect to vehicles. The Debtors' inability to continue the Vehicle Allowance Program could impose disproportionate hardship on such Employees that often must travel for the Debtors' benefit.

62. The Debtors pay approximately $800,000 per year on account of the Vehicle Allowance Program to approximately 55 employees. The payments are made as part of regular payroll. By this Motion, the Debtors seek authority to continue the Vehicle Allowance Program in the ordinary course of business on a postpetition basis and consistent with past practice.

### F. Bonus Program.

63. In the ordinary course of business, the Debtors have historically offered certain bonus programs, including a sign-on bonus, an emergency medical technician bonus, an employee referral bonus, a mine rescue bonus, a production bonus, and a retention bonus for non-insider, mine-level employees at Pinnacle mine (the "Bonus Programs"). As of the Commencement Date, the Debtors estimate that they owe approximately $10,000 on account of the Bonus Programs. By this Motion, pursuant to the Interim Order and Final Order, the Debtors seek authority to pay any outstanding amounts owed on account of the Bonus Programs and to continue the Bonus Programs.

### G. Relocation Program.

64. In the ordinary course of business, the Debtors pay for certain expenses associated with relocating or providing temporary housing to certain Employees (the "Relocation Program"). As of the Commencement Date, the Debtors estimate they owe approximately $36,000 on account

of the Relocation Program. By this Motion, pursuant to the Interim Order and Final Order, the Debtors seek authority to pay any outstanding amounts owed on account of the Relocation Program and to continue the Relocation Program.

## Basis for Relief

### I. Sufficient Cause Exists to Authorize the Debtors to Honor the Employee Compensation and Benefits.

#### A. Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.

65. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Employee Compensation and Benefits owed to the Employees to priority treatment. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

#### B. Payment of Certain Employee Compensation and Benefits Is Required by Law.

66. The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the

Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business.

67. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process.

## II. Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

68. Courts frequently authorize the payment of prepetition obligations under section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims if the debtor is able to "show that a sound business purpose justifies such actions." *See In re Allied Holdings, Inc.*, 337 B.R. 716, 721 (Bankr. N.D. Ga. 2005); *In re Georgetown Steel Co., LLC*, 306 B.R. 549, 555 (Bankr. D.S.C. 2004); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound

business purpose" to justify its actions under section 363 of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

69. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of a bankruptcy court, empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court may use its power under section 105(a) to authorize payment of the Employee Compensation and Benefits under the "necessity of payment" rule (also referred to as the "doctrine of necessity").

70. Federal courts have consistently used the "doctrine of necessity" or the "necessity of payment" rule to permit postpetition payments of prepetition obligations, especially when necessary to preserve the value of a debtor's estate. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). Today, the rationale for the necessity of payment rule–the rehabilitation of a debtor in reorganization cases–is "the paramount policy and goal of Chapter 11." *Id.*; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of

reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); 2 COLLIER ON BANKRUPTCY, 105.02[4][a] (16th ed. rev. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

71. Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. The majority of the Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

72. Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business, and the Debtors believe that, absent the payment of the Employee Compensation and Benefits owed to the Employees, the Debtors may experience Employee turnover and instability at this critical time in these chapter 11 cases. The coal industry is a highly specialized business that requires unique technical expertise. The Debtors believe that, without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang

of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors, therefore, believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these chapter 11 cases.

73. Indeed, courts in this and other districts have recognized the importance of satisfying employee obligations in cases requesting relief similar to that requested here. *See, e.g.*, *In re Walter Energy, Inc.*, Case No. 15-02741 (TOM) (Bankr. N.D. Ala. July 15, 2015) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis on an interim basis); *In re Dixie Pellets, LLC*, Case No. 09-05411 (TOM) (Bankr. N.D. Ala. Sept. 16, 2009) (same); *In re BFW Liquidation, LLC, f/k/a Bruno's Supermarkets, LLC*, Case No. 09-00634 (TOM) (Bankr. N.D. Ala Feb 6, 2009) (same); *see also In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2018) (same); *In re Armstrong Energy, Inc.*, Case No. 17-47541-659 (KSS) (Bankr. E.D. Mo. Dec. 1, 2017) (same).[8] Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Employee Compensation and Benefits in the ordinary course of business and consistent with past practice.

## III. A Limited Waiver of the Automatic Stay for Workers' Compensation Program Is Appropriate in this Case.

74. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

[8] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

> debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

75. The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit their Employees to proceed with their claims against the Workers' Compensation Program in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the Employee's workers compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' business to the detriment of all stakeholders. In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

76. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions,

when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

77. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Commencement Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to pay the Employee Compensation and Benefits and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Reservation of Rights**

78. Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors

that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

79. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

80. The Debtors will provide notice of this Motion to: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the agent under the Debtors' proposed debtor-in-possession credit agreement; (d) counsel to the agent under the Debtors' prepetition first-lien credit agreement; (e) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreement; (f) counsel to Mission Coal Funding, LLC, in its capacity as the lender under the Debtors' prepetition second-lien credit agreement; (g) the United States Attorney's Office for the Northern District of Alabama; (h) the Internal Revenue Service; (i) the Environmental Protection Agency; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Securities and Exchange Commission; (l) the Pension Benefit Guarantee Corporation; (m) the United Mine Workers of America; (n) the United Mine Workers of America Pension Plan; and (o) any party that has

requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

81. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Birmingham, Alabama
Dated: October 15, 2018

*/s/ Daniel D. Sparks*


Daniel D. Sparks
Bill D. Bensinger
**CHRISTIAN & SMALL LLP**
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Telephone: (205) 795-6588
Facsimile: (205) 328-7234
Email: ddsparks@csattorneys.com
bdbensinger@csattorneys.com

- and -

James H.M. Sprayregen, P.C.
Brad Weiland (*pro hac vice* admission pending)
Melissa N. Koss (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
brad.weiland@kirkland.com
melissa.koss@kirkland.com

- and -

Stephen E. Hessler, P.C. (*pro hac vice* admission pending)
Ciara Foster (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: stephen.hessler@kirkland.com
ciara.foster@kirkland.com

*Proposed Co-Counsel to the Debtors*

**Exhibit A**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors (i) to pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) to continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on _________, 2018, at__:__ _.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on _________, 2018, and shall be served on: (a) the Debtors, Mission Coal Company, LLC, 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660, Attn: Gary M. Broadbent; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Brad Weiland and Melissa N. Koss, and Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Stephen E. Hessler, P.C. and Ciara Foster; (c) proposed co-counsel to the Debtors, Christian & Small LLP, 505 North 20th Street, Suite 1800, Birmingham, Alabama 35203, Attn.: Daniel D. Sparks and Bill D. Bensinger; (d) the Office of the Bankruptcy Administrator for the Northern District of Alabama, Robert S. Vance Federal Building, 1800 Fifth Avenue North, Suite 300,

Birmingham, Alabama 35203; (e) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (f) counsel to the agent under the Debtors' proposed debtor-in-possession credit agreement, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, Attn: John R. Ashmead and Andrew Silverstein; (g) counsel to the agent under the Debtors' prepetition first-lien credit agreement, Miles & Stockbridge, P.C., 150 K Street, NW, Suite 800, Washington, DC 2005, Attn: Abbey M. Ruby; (h) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreement, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036-6745, Attn: Arik Preis and Jason P. Rubin; (i) counsel to Mission Coal Funding, LLC, in its capacity as the lender under the Debtors' prepetition second-lien credit agreement, Jones & Associates, 13 Kanawha Boulevard West, Suite 200, Charleston, West Virginia 25327, Attn: Matthew W. Gallimore; (j) the United States Attorney's Office for the Northern District of Alabama; (k) the Internal Revenue Service; (l) the Environmental Protection Agency; (m) the office of the attorneys general for the states in which the Debtors operate; (n) the Securities and Exchange Commission; (o) the Pension Benefit Guarantee Corporation; (p) the United Mine Workers of America; (q) the United Mine Workers of America Pension Plan; and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Interim Order should be construed as

authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

4. The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits programs in an aggregate interim amount not to exceed $15,911,000; *provided* that, pending entry of the Final Order, the Debtors are not authorized to pay any Employee or Independent Contractor any amount on behalf of prepetition services that exceeds the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code; *provided, further*, that the Debtors' authority to pay such prepetition amounts pursuant to this paragraph shall, where applicable, be subject to the following caps:

| Relief Sought | Interim Amount | Total Amount |
|---|---|---|
| **Compensation and Withholding Obligations** | | |
| Unpaid Wages | $5,300,000 | $5,300,000 |
| Unpaid Contractor Obligations | $45,000 | $45,000 |
| Withholding Obligations | $1,300,000 | $1,300,000 |
| Expense Reimbursements | $70,000 | $70,000 |
| **Employee Benefit Programs** | | |
| Health Insurance Programs | $1,900,000 | $1,900,000 |
| Life, Disability, and AD&D Insurance | $395,000 | $395,000 |
| Workers' Compensation Program | $2,400,000 | $2,400,000 |
| Retirement Obligations | $3,000,000 | $9,800,000 |
| Retirement Deductions | $255,000 | $255,000 |
| Accrued and Owing Paid Leave | $1,200,000 | $1,300,000 |
| **Supplemental Employee Benefits** | | |
| Relocation Assistance | $36,000 | $36,000 |
| Bonus Program | $10,000 | $10,000 |
| **Total** | **$15,911,000** | **$22,811,000** |

5. Nothing herein shall be deemed to (a) authorize the payment of any amounts which are subject to section 503(c) of the Bankruptcy Code, or (b) authorize the Debtors to cash out unpaid vacation/leave time upon termination of an Employee, unless applicable state law requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6. Pursuant to Section 362(d) of the Bankruptcy Code: (a) Employees are authorized

to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program. Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order or the Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

8. Notwithstanding anything to the contrary in this Interim Order, any payment made (or to be made) and any authorization contained in this Interim Order shall be subject to the terms, conditions, limitations, and requirements of the *Interim Order (I) Authorizing Postpetition Secured*

*Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 363(c)(3), 364(d)(1) and 364(e), (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c)* (together with any approved budget (including any permitted variances) in connection therewith, the "Interim DIP Order"), and to the extent there is any inconsistency between the terms of the Interim DIP Order and any action taken or proposed to be taken under this Interim Order, the terms of the Interim DIP Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

9. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

10. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

11. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim

Order are immediately effective and enforceable upon its entry.

14. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

15. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: ___________, 2018
Birmingham, Alabama

_______________________________________
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors (i) to pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) to continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Final Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

3. The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits programs in an aggregate final amount not to exceed $22,811,000; *provided that* the Debtors may pay amounts in excess of this figure if such amounts would otherwise be payable pursuant to the terms of this Final Order and after providing notice of such proposed payments to the office of the Bankruptcy

Administrator for the Northern District of Alabama and the official committee of unsecured creditors (if any) appointed in these chapter 11 cases.

4. Nothing herein shall be deemed to authorize the payment of any amounts which violates or implicates section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

5. Pursuant to Section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program. Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

6. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the

Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order or the Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

7. Notwithstanding anything to the contrary in this Final Order, any payment made (or to be made) and any authorization contained in this Final Order shall be subject to the terms, conditions, limitations, and requirements of the *Final Order (I) Authorizing Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 363(c)(3), 364(d)(1) and 364(e), (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c)* (together with any approved budget (including any permitted variances) in connection therewith, the "Final DIP Order"), and to the extent there is any inconsistency between the terms of the Final DIP Order and any action taken or proposed to be taken under this Final Order, the terms of the Final DIP Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

8. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

9. The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

10. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

11. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: ___________, 2018
Birmingham, Alabama

_______________________________________
UNITED STATES BANKRUPTCY JUDGE



Case 18-04177-TOM11 Doc 20 Filed 10/15/18 Entered 10/15/18 10:46:36 Desc Main Document Page 46 of 46