**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 393** |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE
DEBTORS' ASSETS, (II) SCHEDULING HEARINGS AND OBJECTION DEADLINES
WITH RESPECT TO THE SALE, (III) SCHEDULING BID DEADLINES
AND AN AUCTION, (IV) APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (V) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors and

debtors in possession (the "Debtors") for the entry of an order (this "Order"): (a) approving the

proposed bidding procedures attached as **Exhibit 1** to this Order (the "Bidding Procedures");

(b) scheduling an auction; (c) approving the form and manner of notice thereof; (d) scheduling

dates and deadlines in connection with the sale (the "Sale") of all, substantially all, or any

combination of the Debtors' assets (the "Assets"); (e) approving the form and manner of notice

thereof; (f) approving procedures for assuming and assigning the Debtors' executory contracts and

unexpired leases (the "Assumption Procedures"); and (g) granting related relief; all as more fully

set forth in the Motion; and upon the First Day Declaration; and this court having jurisdiction over

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this court having found that it may enter a final order consistent with Article III of the United States Constitution; and this court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this court (the "Hearing"); and this court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this court; and after due deliberation and sufficient cause appearing therefor, THE COURT FINDS THAT:

A.      The findings of fact and conclusions of law herein constitute the court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

B.      Jurisdiction and Venue.  This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3020, and 6004.

D.      Notice of the Bidding Procedures Motion.  Notice of the Motion, the Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of these

3

chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules. Notice of the Motion has been given to: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) counsel to the Committee; (c) counsel to the agent under the Debtors' debtor-in-possession credit agreement; (d) counsel to the agent under the Debtors' prepetition first-lien credit agreement; (e) counsel to the lenders under the Debtors' debtor-in-possession credit agreement and prepetition first-lien credit agreement; (f) counsel to Mission Coal Funding, LLC, in its capacity as the lender under the Debtors' prepetition second-lien credit agreement; (g) the United States Attorney's Office for the Northern District of Alabama; (h) the Internal Revenue Service; (i) the Environmental Protection Agency; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Securities and Exchange Commission; (l) the Pension Benefit Guarantee Corporation; (m) the United Mine Workers of America; (n) the United Mine Workers of America Pension Plan; (o) all parties who have expressed a written interest in some or all of the Assets; (p) all known holders of liens, encumbrances, and other claims secured by the Assets; (q) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; (r) the counterparties to any executory contract or unexpired lease to which a Debtor is a party (the "Contract Counterparties"); (s) all known creditors of the Debtors; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002. Accordingly, no further notice of the Motion, the Hearing, or this Order is necessary or required.

E.      The Debtors have articulated good and sufficient reasons for this Court to: (a) approve the Bidding Procedures attached hereto as **Exhibit 1**; (b) schedule the Bid Deadline, the Auction, the Sale Objection Deadline, and the Sale Hearing; and (c) approve the form of the Sale Notice attached hereto as **Exhibit 2**; (d) approve the Assumption Procedures and the form and manner of notice of the Cure Notice attached hereto as **Exhibit 3**; and (e) grant related relief.

4

F.     <u>Opening Bidder's Proposed Agreement</u>. The Court finds that utilizing a bid (the "<u>Opening Bid</u>") submitted by New Coal Acquisition Co., LLC (together with its assignees or designees, the "<u>Opening Bidder</u>") as set forth in the proposed agreement to be filed with the Court at a later date (the "<u>Opening Bidder's Proposed Agreement</u>") in connection with the Sale process is a necessary and constructive step toward the consummation of a sale of all, substantially all, or any combination of the Debtors' assets, and utilizing the Opening Bidder's Proposed Agreement allows the Debtors to solicit the highest or otherwise best bid for their assets through the Bidding Procedures. The Opening Bidder's Proposed Agreement will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely. As stated on the record and in open Court, the Opening Bid to be used in connection with the Bidding Procedures (i) will consist of a $145 million credit bid by the DIP Lenders, plus Assumed Liabilities, plus $50,000 on account of purchased Avoidance Actions, plus $38 million in additional cash consideration, consisting of $16.3 million for the Estate Retained Professional Fees Escrow Amount, $15 million for the Payroll Escrow Amount, and $6.7 million for the Wind-Down Escrow Amount and (ii) such transaction shall be approved and consummated pursuant to an order pursuant to section 363 of the Bankruptcy Code as opposed to approved and consummated pursuant to a chapter 11 plan.[3]

G.     <u>Bidding Procedures</u>. The Bidding Procedures are reasonable and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates.

H.     The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion. The Bidding Procedures balance the Debtors' interests in emerging expeditiously from

---

[3]     In the event of any inconsistencies between this Order and the Opening Bidder's Proposed Agreement, the Opening Bidder's Proposed Agreement shall control.

the chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

I.       The Sale Notice.   The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction.

J.       The Cure Notice.   The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, and incorporated herein by reference as if fully set forth in this Order, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures.

K.       The Debtors' and the Opening Bidder's Positions.   As noted on the record and in open court the Debtors prefer the Sale be approved and consummated through a chapter 11 plan of reorganization and the Opening Bidder prefers the Sale be approved and consummated through a separate Sale Order (as defined below) pursuant to section 363 of the Bankruptcy Code and not require consummation of a plan in order to close on the Sale.

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is granted as provided herein.

2.       All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the court at the hearing on the Motion or by stipulation filed with the court, are overruled.

3.       The Debtors shall not be bound by the Opening Bidder's Proposed Agreement and consummation of any sale to a Successful Bidder shall remain subject to entry of a Court order approving the Sale to the Successful Bidder; *provided further* that the Sale of the Assets free and clear of any successorship obligations under any Collective Bargaining Agreement and/or with

6

respect to any Benefit Plan (collectively, the "Employee Obligations") is expressly conditioned on the Debtors' obtaining relief from such obligations under sections 1113 and 1114 of the Bankruptcy Code, as applicable. Notwithstanding anything to the contrary in the Opening Bidder's Proposed Agreement, a Qualified Bidder may provide for the assumption of the Employee Obligations, and in considering whether a bid is a Qualified Bid or a Successful Bid, the Debtors shall take into consideration whether the Potential Bidder or Qualified Bidder proposes to assume the Employee Obligations.

## I.  Important Dates and Deadlines.

4.  The following dates and deadlines are hereby approved (and may be amended from time to time by the Debtors in consultation with the Consultation Parties by filing an appropriate notice on the Court's docket and posting such notice on the website of the Debtors' notice and claims agent, Omni Management Group ("Omni") at https://omnimgt.com/sblite/missioncoal/)).[4]

5.  Unless extended by the Debtors, with the consent of the DIP Lenders and in consultation with the other Consultation Parties, the deadline by which all bids for the Assets must be *actually received* by the parties specified in the Bidding Procedures is **Wednesday, February 13, 2019, at 4:00 p.m., prevailing Central Time**.

6.  The date and time of the Auction, if needed, is **Wednesday, February 27, 2019, at 10:00 a.m., prevailing Eastern Time**, which time may be extended by the Debtors, with the

---

[4]  "Consultation Parties" means the following parties: (a) the DIP Lenders (as defined in the Final DIP Order) and their counsel and financial advisors, including Akin Gump Strauss Hauer & Feld LLP and Houlihan Lokey; (b) the DIP Agent (as defined in the Final DIP Order) and their counsel; (c) counsel and financial advisors to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee"); and (d) counsel and financial advisors to WPP LLC, by NRP (Operating) LLC, its sole member ("NRP") to the extent provided for in the *Agreed Order and Settlement Agreement Related to Motion to Assume Oak Grove Coal Mining Lease* [Docket No. 299]. Notwithstanding the foregoing, a party shall not be a Consultation Party if such party is a bidder at the Auction; *provided, however*, if any such Consultation Party notifies the Debtors in writing that it irrevocably forfeits its rights to be a bidder, the foregoing restriction shall no longer apply with respect to such Consultation Party upon the Debtors' receipt of such notice.

7

consent of the DIP Lenders and in consultation with the other Consultation Parties, upon written notice filed with the Court, to be held at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022.  The Debtors shall send written notice of the date, time, and place of the Auction to Qualified Bidders no later than two (2) business days before such Auction, and shall post notice of the same no later than two (2) business days before such Auction on Omni's website at https://omnimgt.com/sblite/missioncoal/.

7.      The deadline to object to approval of the Sale (the "Sale Objection Deadline") is set for **Wednesday, March 6, 2019, at 4:00 p.m., prevailing Central Time**.  The deadline by which responses to any objections to approval of the Sale must be filed is **Monday, March 11, 2019** at 4:00 p.m., prevailing Central Time.

8.      The hearing to consider approval of the Sale (the "Sale Hearing") will take place on **Wednesday, March 20, 2019, at 10:00 a.m., prevailing Central Time**, which hearing may be scheduled for an earlier date to the extent required by the Successful Bidder.  To the extent the Successful Bidder requires approval and consummation of the Sale pursuant to an order approving the Sale of the Assets pursuant to section 363 of the Bankruptcy Code (the "Sale Order"), as opposed to approval and consummation of the Sale through a chapter 11 plan, the Debtors shall work in good faith with such Successful Bidder to schedule a hearing for approval of such Sale and entry of such Sale Order (subject to the DIP Lenders' rights under the DIP Credit Agreement and the Bankruptcy Code) as soon as reasonably practicable after the conclusion of the Auction; *provided, however,* that nothing herein or in the Bidding Procedures shall require the Debtors to consummate the Sale with the Opening Bidder pursuant to a Sale Order and (a) the Debtors reserve all of their rights to argue that any Sale with the Opening Bidder must be approved and consummated pursuant to a chapter 11 plan of reorganization and (b) the Opening Bidder reserves all of its rights to argue that any Sale with the Opening Bidder must be approved and consummated

8

pursuant to section 363 of the Bankruptcy Code and not require consummation of a plan in order to close on the Sale.

9.    Notwithstanding the foregoing, the Court's approval of the foregoing schedule is without prejudice to all parties' rights to object to the approval of any sale contemplated under this Order at the Sale Hearing on any grounds.

## II.    The Opening Bidder.

10.    The Opening Bidder shall be deemed a Qualified Bidder, and the Opening Bid shall be deemed a Qualified Bid.  The Opening Bidder is not required to make a Good Faith Deposit. Subject to the terms of the DIP Order, no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale.

## III.    The Bidding Procedures.

11.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Assets.  Any party desiring to bid on one or more individual Assets or all or substantially all of the Assets shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

12.    Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, as set forth in the Bidding Procedures.

13.    Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") and the right and power to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured

9

claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured; *provided, further*, that a Secured Creditor shall not be entitled to any Bid Protections; *provided, further*, that the Opening Bidder shall have the right (including as part of any applicable Overbid) to credit bid all or a portion of the value of the secured portion of its claims for the Assets pursuant to section 363(k) of the Bankruptcy Code, including any secured claims on account of its adequate protection liens, which amount shall be no less than approximately $203,340,782, plus all accrued and unpaid interest (the "DIP Claim Amount"). Notwithstanding the foregoing, nothing shall affect any rights of parties in interest, if any, with respect to challenging whether any Qualified Bidder has a valid secured claim and such bidder's right to credit bid if the Court determines that such bidder does not have a valid secured claim and the right of the Opening Bidder to bid up to the full amount of the DIP Claim Amount is, as of the date of entry of the Bid Procedures Order, subject to the Committee's challenge rights as set forth in the Final DIP Order, which challenge rights the Debtors, the Committee and the Opening Bidder agree shall be adjudicated or otherwise resolved prior to the Auction. For the avoidance of doubt, the Opening Bidder shall be considered a Qualified Bidder with respect to its right to acquire all or any of the Assets by credit bid.

14. The Debtors may, in consultation with the Consultation Parties: (a) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best offer for each Asset or Assets; (b) reject at any time before entry of an Order of the court approving the Successful Bid, any bid that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders

10

as the Debtors determine, in consultation with the Consultation Parties, to be in the best interests of the Debtors' estates in these cases.

15.    For the avoidance of doubt, nothing in this Order shall or shall be construed to limit any objection that MCF may have to the Sale; including, but not limited to, an objection based on the Debtors' failure to satisfy the conditions of section 363(f) of the Bankruptcy Code. All such objections are preserved and may be asserted at or before the hearing to approve the Sale.

16.    The Waid Settlement Fund Plaintiffs ("Claimants") in the case of *JoAnn Waid, et al. v. Seneca North American Coal, LLC, et al*, Case Number CV 04-1234, assert the following position: "Among the Debtors' assets is an easement on certain properties adjacent to its coal preparation plant located at 1500 Concord Mine Road, Hueytown, Alabama. The Claimants believe that assumption of the easement will require a cure in accordance with the Debtors' settlement documents with the counter-parties thereto." The Debtors do not concede that any of the statements made in this paragraph 16 are factually or legally accurate and reserve all of their rights with respect thereto, including responding to any objections made to the Sale. Additional information regarding the Claimants' position can be obtained from the Attorney for the Claimants, Walter F. McArdle; Phone Number- 205-581-6295.

**IV.    Sale Notice Procedures.**

17.    The form of Sale Notice substantially in the form attached hereto as **Exhibit 2** is approved.

18.    On or before three business days after the entry of this Order, the Debtors shall serve the Bidding Procedures Order and Bidding Procedures by first-class mail or courier service upon: (a) the Office of the Bankruptcy Administrator for the Northern District of Alabama; (b) counsel to the Committee; (c) counsel to the agent under the Debtors' proposed debtor-in-possession credit agreement; (d) counsel to the agent under the Debtors' prepetition

11

first-lien credit agreement; (e) counsel to the lenders under the Debtors' debtor-in-possession

credit agreement and prepetition first-lien credit agreement; (f) counsel to Mission Coal Funding,

LLC, in its capacity as the lender under the Debtors' prepetition second-lien credit agreement;

(g) the United States Attorney's Office for the Northern District of Alabama; (h) the Internal

Revenue Service; (i) the Environmental Protection Agency; (j) the office of the attorneys general

for the states in which the Debtors operate; (k) the Securities and Exchange Commission; (l) the

Pension Benefit Guarantee Corporation; (m) the United Mine Workers of America; (n) the United

Mine Workers of America Pension Plan; (o) all parties who have expressed a written interest in

some or all of the Assets; (p) all known holders of liens, encumbrances, and other claims secured

by the Assets; (q) each governmental agency that is an interested party with respect to the Sale and

transactions proposed thereunder; (r) the counterparties to any executory contract or unexpired

lease to which a Debtor is a party (the "Contract Counterparties"); (s) all known creditors of the

Debtors; and (t) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## V.    The Assumption Procedures.

19.    The Assumption and Assignment Procedures set forth in the Bidding Procedures

Motion regarding the assumption and assignment of the Assigned Contracts proposed to be

assumed by the Debtors and assigned to a Successful Bidder are approved.

> A.    **Cure Notice**. On or before January 14, 2019, with the consent of the
> Opening Bidder (such consent not to be unreasonably withheld or
> conditioned) and subject to consultation with the Consultation Parties, the
> Debtors shall file with the Court and serve via first class mail, electronic
> mail, or overnight delivery, the Cure Notice annexed as **Exhibit 3** to this
> Order on all Contract Counterparties, and post the Cure Notice to the Case
> Website (https://omnimgt.com/sblite/missioncoal/).
>
> B.    **Content of Cure Notice**. The Cure Notice shall notify the applicable
> Contract Counterparties that the Assigned Contracts may be subject to
> assumption and assignment in connection with a proposed sale transaction,
> and contain the following information: (i) a list of the Assigned Contracts;
> (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith

12

estimates of the Cure Costs; and (iv) the deadline by which any Contract Counterparty to an Assigned Contract may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

C.     **Customized Cure Notice**. The Debtors shall serve on all Contract Counterparties, via first class mail or electronic mail, a customized version of the Cure Notice, without the Assigned Contracts Schedule, which will include:   (a) the Omni Instructions;  (b) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Assigned Contracts and rights thereunder; (c) Cure Costs, if any; and (d) the Necessary Notice Information.  The Debtors shall serve on the Rule 2002 Notice List, via first class mail or electronic mail, a modified version of the Cure Notice that contains the Omni Instructions and Necessary Notice Information.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

D.     **Objections**. Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be **actually received** by counsel to the Debtors prior to **February 11, 2019, at 4:00 p.m. (prevailing Central Time)**; *provided* that the Debtors, subject to consultation with the Consultation Parties, may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

E.     **Effects of Filing an Objection to a Cure Notice**.  A properly filed and served objection to a Cure Notice will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of the Assigned Contract at issue, and/or objection to the accompanying Cure Costs, as set forth in the objection, but will not constitute an objection to the remaining relief requested in the Sale to the Successful Bidder.

F.     **Dispute Resolution**.  Any objection to the proposed assumption and assignment of an Assigned Contract, or Cure Costs, that remain unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at such later date as may be fixed by the Court).  Upon entry of an order by the Court resolving such Assigned Contract Objection, the assignment, if approved by the Court, shall be deemed effective as of the later of either (i) the date

13

such Contract Counterparty receives the Cure Notice, or (ii) the Effective Date. To the extent that any Assigned Contract Objection cannot be resolved by the parties, such Assigned Contract shall be assumed and assigned only upon satisfactory resolution of the Assigned Contract Objection, to be determined in the Successful Bidder's reasonable discretion. To the extent an Assigned Contract Objection remains unresolved, the Assigned Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Assigned Contract Objection after notice and a hearing. If an Assigned Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Assigned Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Costs in respect of such contract.

G. **Supplemental Cure Notice**. The Debtors reserve the right, with the consent of the Successful Bidder(s) and subject to consultation with the Consultation Parties, at any time after the Assumption and Assignment Service Date, to: (a) supplement the Assigned Contract Schedule attached to the Cure Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale; (b) remove any Assigned Contracts from the list of executory contracts and unexpired leases ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale or add to such list; and/or (c) modify the previously stated Cure Cost associated with any Assigned Contracts (a "<u>Supplemental Assigned Contracts Schedule</u>"). In the event that the Debtors exercise any of the rights reserved above, the Debtors will promptly provide the Consultation Parties with notice and an opportunity to object to any such actions, and thereafter will serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty, and its attorney, if known, to each impacted Assigned Contract at the last known address available to the Debtors. Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice. Any Assigned Contract Counterparty listed on a Supplemental Cure Notice may file a Supplemental Assigned Contract Objection only if such objection is to the proposed assumption and assignment of the applicable Assigned Contract or the proposed Cure Costs, if any. All Supplemental Assigned Contract Objections must: (a) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (b) include appropriate documentation in support of the objection; and (c) be filed and served on the Objection Recipients no later than 4:00 p.m. (prevailing Central Time) on the date that is the later of (i) the Sale Objection Deadline and (ii) fourteen days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "<u>Supplemental Assigned Contract Objection Deadline</u>").

H. **Supplemental Hearing**. If a Contract Counterparty files a Supplemental

14

Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors will seek a Supplemental Assigned Contract Hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assigned Contracts. If there is no such objection, then the Debtors will obtain entry of an order, including by filing a certification of no objection, fixing the Cure Costs and approving the assumption of any Assigned Contract listed on a Supplemental Cure Notice.

20. If a Contract Counterparty does not file and serve an Assigned Contract Objection or Supplemental Assigned Contract Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Cost, (a) the Cure Costs, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Assigned Contract or any other document, and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract and the Cure Costs, if any, and will be forever barred from objecting to the assumption and assignment of such Assigned Contract and rights thereunder, including the Cure Costs, if any, and from asserting any other claims related to such Assigned Contract against the Debtors or the Successful Bidder, or the property of any of them.

21. Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed no later than the later of the Sale Hearing or Supplemental Assigned Contract Objection Deadline, as applicable, and such objections will be resolved at the Sale Hearing or Supplemental Assigned Contract Hearing, as applicable. The Debtors may adjourn the resolution of any such objection to a later hearing.

22. The inclusion of an Assigned Contract on the Assigned Contract Schedule, Supplemental Assigned Contract Schedule, and/or in a Supplemental Cure Notice will not: (a) obligate the Debtors to assume any Assigned Contract listed thereon or obligate the Successful Bidder to take assignment of such Assigned Contract; or (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. Only those

15

Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

23. Solely in respect of the procedures for assuming and assigning, or rejecting, Executory Contracts or Unexpired Leases, in the event of any inconsistencies between this Order, the Bidding Procedures Motion, or the Bidding Procedures, this Order shall govern in all respects.

**VI.    Miscellaneous.**

24. Notwithstanding anything to the contrary in the Motion or this Order, the relief set forth herein shall be subject to the terms, conditions, limitations, and requirements of the *Final Order (I) Authorizing Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 363(c)(3), 364(d)(1) and 364(e), (II) Authorizing the Debtors' Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363, and 364, and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c)* (together with any approved budget (including any permitted variances) in connection therewith, the "Final DIP Order"), and to the extent there is any inconsistency between the terms of the Final DIP Order and any action taken or proposed to be taken under this Order, the terms of the Final DIP Order (together with any approved budget (including any permitted variances) in connection therewith) shall control.

25. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such provision.

26. Nothing in this Order shall preclude (a) the Debtors from considering, negotiating and filing, (b) any party in interest from proposing to and negotiating with the Debtors, or (c) any

16

party in interest from seeking relief to file, in each case, a plan of reorganization in lieu of or in connection with a sale of less than substantially all of the Debtors' assets.

27.     In the event of any inconsistency between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

28.     Notwithstanding anything to the contrary in the Bidding Procedures, any exclusivity, "no shop," or other provision in any Bid that purports to limit the Debtors' ability to market the Assets shall be null and void.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

30.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

31.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

32.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:  December 21, 2018  
Birmingham, Alabama

/s/ Tamara O. Mitchell  
THE HONORABLE TAMARA O. MITCHELL  
UNITED STATES BANKRUPTCY JUDGE

17

# EXHIBIT 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL**
**ASSETS OF MISSION COAL COMPANY AND CERTAIN DEBTOR AFFILIATES**

On December 21, 2018, the United States Bankruptcy Court for the Northern District of Alabama (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling the Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures. These Bidding Procedures set forth the process by which the Debtors are authorized, in consultation with the Consultation Parties,[3] to conduct an auction (the "Auction"), if any, for the sale (the "Sale") of all, substantially all, or any combination of the Debtors' assets (the "Assets").

New Coal Acquisition Co., LLC (including its assignees or designees, the "Opening Bidder") submitted a bid (the "Opening Bid") for certain of the Debtors' assets to set a floor for the Sale. The Debtors will now conduct a round of open bidding intended to obtain the highest or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3] "Consultation Parties" means the following parties: (a) the DIP Lenders (as defined in the Final DIP Order) and their counsel and financial advisors, including Akin Gump Strauss Hauer & Feld LLP and Houlihan Lokey; (b) the DIP Agent (as defined in the Final DIP Order) and their counsel; (c) counsel and financial advisors to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee"); and (d) counsel and financial advisors to WPP LLC, by NRP (Operating) LLC, its sole member ("NRP") to the extent provided for in the *Agreed Order and Settlement Agreement Related to Motion to Assume Oak Grove Coal Mining Lease* [Docket No. 299]. Notwithstanding the foregoing, a party shall not be a Consultation Party if such party is a bidder at the Auction; *provided, however*, if any such Consultation Party notifies the Debtors in writing that it irrevocably forfeits its rights to be a bidder, the foregoing restriction shall no longer apply with respect to such Consultation Party upon the Debtors' receipt of such notice.

otherwise best bid for all, substantially all, or any combination of the Assets, culminating in an Auction for such Assets if competing bids are received.

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Omni Management Group by calling 888-585-6494 or visiting the Debtors' restructuring website at (https://omnimgt.com/sblite/missioncoal/).**

To the extent that these Bidding Procedures require the Debtors to consult with any Consultation Party in connection with making a determination or taking any action, or in connection with any other matter related to these Bidding Procedures or at the Auction, of any, the Debtors shall do so in a regular and timely manner prior to making such determination or taking any such action.

## Key Dates

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtors and to submit competing bids for the Assets. The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids until **February 13, 2019 at 4:00 p.m. (prevailing Central time)** (the "Bid Deadline").

The key dates for the sale process are as follows:[4]

| February 13, 2019 at 4:00 p.m. (prevailing Central time) | Bid Deadline - Due Date for Bids and Deposits |
| --- | --- |
| February 19, 2019 at 4:00 p.m. (prevailing Central time) | Debtors to determine which Bids are Qualified Bids and notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder. |
| February 25, 2019 at 4:00 p.m. (prevailing Central time) | Debtors to provide the Opening Bidder and each Qualified Bidder a schedule setting forth (i) the highest or otherwise best fully binding offer for the Assets and/or (ii) the highest or otherwise best fully binding offer(s) for all or any portion of the Assets. |
| February 27, 2019 at 10:00 a.m. (prevailing Eastern time) | Auction (if necessary), which will be held at Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. |
| March 20, 2019 at 10:00 a.m. (prevailing Central time) | Sale Hearing, which will be held at the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, 1800 Fifth Avenue, |

---

[4] These dates are subject to extension or adjournment as provided for herein.

2

| | North Birmingham, Alabama 35203, which hearing may be scheduled for an earlier date to the extent required by the Successful Bidder, subject to applicable bankruptcy law (including, if applicable, sections 1113 and 1114 of the Bankruptcy Code). |
|---|---|

Unless otherwise approved by the Bankruptcy Court, no modification, extension, waiver or addition to these Bidding Procedures shall be inconsistent with the Bidding Procedures Order or any other Order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court or with the prior consent of the DIP Lenders.

**1.     Submissions to the Debtors.**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers for all, substantially all, or any combination of the Assets, which in the aggregate will make the highest or otherwise best offer to purchase the Assets. The Assets will be offered for sale in one or more combinations, and as a whole, through an Auction. The Debtors, in consultation with the Consultation Parties, may consider bids from multiple bidders (including multiple bids submitted by the same bidder) for the Assets in any combination. The Opening Bidder's Proposed Agreement and Opening Bid referenced herein provide for the Opening Bidder's acquisition of certain of the Debtors' assets, subject to the terms and conditions thereof. The Debtors have not agreed to the terms of the Opening Bidder's Proposed Agreement.

**2.     Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity (other than the Opening Bidder) interested in consummating a Sale (a "Potential Bidder") must deliver or have previously delivered to the Debtors:

(i)     an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed;

(ii)    in a form acceptable to the Debtors and their advisors, in consultation with the Consultation Parties: (x) evidence of the financial capability to consummate the Sale, and (y) a written commitment from the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale); and

(iii)   any other evidence the Debtors, in consultation with the Consultation Parties, may reasonably request to evaluate the buyer.

**3.     Due Diligence.**

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room and to additional non-public information regarding the Debtors.

3

**No Potential Bidder will be permitted to conduct any due diligence that includes confidential information without entering into a Confidentiality Agreement with the Debtors.** The Debtors will provide to each Potential Bidder that satisfies the foregoing commercially reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. For all Potential Bidders, the due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information; *provided, however*, that Potential Bidders that become Qualified Bidders may continue to conduct due diligence in accordance with this section 3.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided that* the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale.

The Debtors also reserve the right to, in consultation with the Consultation Parties, withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

**All due diligence requests must be directed to** Jefferies LLC, 520 Madison Avenue, New York, New York 10022, Attn: Leon Szlezinger (lszlezinger@jefferies.com), Dan Chu (dan.chu@jefferies.com), Seth Herman (sherman@jefferies.com), and Johnston Suter (jsuter@jefferies.com).

### (a)    Communications with Potential Bidders.

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to the Sale between and amongst Potential Bidders shall exclusively be through the Debtors and the Debtors' advisors. Communications between and amongst Potential Bidders is expressly prohibited unless the Debtors expressly consent in writing to such communication; *provided, however*, the Opening Bidder shall be permitted to communicate with Potential Bidders with regard to (x) the Opening Bidder's determination that a Sale to the Opening Bidder would be approved and consummated outside of a plan of reorganization and pursuant to an order approving the Sale pursuant to section 363 of the Bankruptcy Code (the "Sale Order"), (y) the reason for the Opening Bidder so determining and (z) the Opening Bidder's view that any Potential Bidder that also determines to structure its Bid in the same manner should not be disadvantaged in the Auction. For the avoidance of doubt, and notwithstanding the foregoing, the Opening Bidder shall be prohibited from colluding with any Potential Bidder or discouraging a Bid from any Potential Bidder.

(b)     **Due Diligence from Potential Bidders.**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder is no longer a Potential Bidder or that a bid made by such Potential Bidder is not a Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the chapter 11 cases or in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (i) with the prior written consent of such bidder; (ii) to the applicable bidder; (iii) in accordance with these Bidding Procedures, including to any Consultation Party; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

**4.      Qualified Bidders.**

(a)     A "Qualified Bidder" is a Potential Bidder (A) who demonstrates the financial capability to consummate the Sale (as determined by the Debtors in consultation with the Consultation Parties), (B) whose Bid is a Qualified Bid (as defined herein), and (C) that the Debtors, in consultation with the Consultation Parties, determine should be considered a Qualified Bidder. On or before February 19, 2019, the Debtors' advisors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder. The Opening Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures and at all times.

(b)     If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit and all accumulated interest thereon on or within five business days after the Bid Deadline.

(c)     For the avoidance of doubt, the Debtors expressly reserve the right to notify a Potential Bidder that its bid is not a Qualifying Bid (a "Non-Qualifying Bid") and permit a Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid. Notwithstanding the foregoing, other than as may be provided in the Opening Bid, Bidders shall be prohibited from including in their Bid a proposed use of any cash component of the Purchase Price that would be received by the

Debtors if such Bidder were the Successful Bidder.

(d)     Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, in consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction, if any, as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## 5.     Bid Requirements.

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in their reasonable business judgment and after consultation with the Consultation Parties, shall constitute a "Qualified Bid").

(a)     **Assets.** Each Bid must clearly state which Assets that the Qualified Bidder is agreeing to purchase and assume. With respect to a bid for some, but not all, of the Assets, the allocation of value in U.S. dollars that the Potential Bidder associates with each mine (or group of mines if such bid is conditioned upon the purchase of all mines in such group), including a description of any significant assumptions on which such valuation is based.

(b)     **Assumption of Obligations.** Each Bid must clearly state which liabilities and obligations of the Debtors the Qualified Bidder is agreeing to assume.

(c)     **Purchase Price.** Each Bid must clearly set forth the purchase price to be paid for the applicable asset package, including and identifying separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids and assumed liabilities (the "Purchase Price").

(d)     **Minimum Bid.**

(i)     At a minimum, each Bid seeking to acquire all of the Debtors' assets that are the subject of the Opening Bid must have a Purchase Price that in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a monetary value equal or greater than the aggregate Assumed Liabilities, the Credit Bid and Release contemplated by the Opening Bid (i.e., $145 million), plus the Cash Consideration (i.e., approximately $38 million), plus $1 million in cash or cash equivalents (collectively, the "Minimum Overbid"); or

(ii)     At a minimum, each Bid seeking to acquire individual assets or

6

combinations of assets that are less than all of the Debtors' assets (each a "Partial Bid") must have a Purchase Price that in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a value, individually or in conjunction with one or more other Bids, that satisfies the criteria for being a Qualified Bid (as defined below). Any Partial Bid must include an allocation of the Purchase Price with respect to the applicable mines such Partial Bid seeks to acquire and state whether the Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the Bid must state the price the Bidder would pay for each such Asset.

(e) **Markup of the Opening Bidder's Proposed Agreement.** Each Bid must be accompanied by an executed purchase agreement as well as a redline of such agreement marked to reflect the amendments and modifications made to the form of the Opening Bidder's Proposed Agreement provided by the Debtors to Potential Bidders, which amendments and modifications may include amendments or modifications to the agreement which provide for the closing of a sale (i) outside of a plan of reorganization pursuant to section 363 of the Bankruptcy Code or (ii) pursuant to a plan of reorganization. The Debtors prefer the Sale be approved and consummated through a chapter 11 plan of reorganization and the Opening Bidder prefers the Sale be approved and consummated through a separate Sale Order pursuant to Bankruptcy Code section 363 and not require consummation of a plan in order to close on the Sale. Each Bid must specify whether the Sale is to be approved and consummated through a chapter 11 plan of reorganization or approved and consummated outside of a chapter 11 plan of reorganization pursuant to a Sale Order pursuant to section 363 of the Bankruptcy Code. If a Bid proposes approval and consummation of a Bid pursuant to section 363 of the Bankruptcy Code, such Bid shall include a proposed form of Sale Order. Each such purchase agreement must provide a representation that the Qualified Bidder will (i) make all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), if applicable, and (ii) submit and pay the fees associated with all necessary filings under the HSR Act as soon as reasonably practicable; *provided*, *however*, that the timing and likelihood of receiving HSR Act approval will be a consideration in determining the highest or otherwise best Bid.

(f) **Deposit.** Each Bid, other than the Opening Bid, must be accompanied by a cash deposit in the amount equal to 10 percent of the aggregate cash Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Deposit").

(g) **Employee Obligations.** Each Bid must expressly propose a treatment of the Debtors' prepetition collective bargaining agreements (the "CBAs") and post-employment benefits (collectively, the "Employee Obligations"). For the avoidance of doubt, and notwithstanding anything to the contrary in the Opening Bid, a Qualified Bidder may provide for the assumption of the Employee Obligations.

7

(h) **Qualified Bid Documents.** Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a schedule of assumed contracts to the extent applicable to the Bid, and a copy of the Asset Purchase Agreement clearly marked to show all changes requested by the Qualified Bidder, including those related to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid (the "Qualified Bid Documents").

(i) **Committed Financing.** To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors in consultation with the Consultation Parties, that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

(j) **Contingencies; No Financing or Diligence Outs.** A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, after consultation with the Consultation Parties.

(k) **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director or equity holder of the Debtors, or any entity affiliated with any current or former officer, director or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers be associated with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Jefferies and Kirkland & Ellis LLP should contact regarding such Bid. All information disclosed pursuant to this paragraph shall be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than one business day following the Bid Deadline.

(l) **Demonstrated Financial Capacity.** A Qualified Bidder must have, in the

8

Debtors' business judgment, after consultation with the Consultation Parties, the necessary financial capacity to consummate the proposed transactions required by its Bid.

**(m)** **Adequate Assurance of Future Performance.** Each Bid must (i) identify the executory contracts and unexpired leases to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all cure costs related to such executory contracts and unexpired leases by the Qualified Bidder and (iii) demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

**(n)** **Time Frame for Closing.** A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, after consultation with the Consultation Parties, which time frame shall include a closing by no later than April 12, 2019.

**(o)** **Binding and Irrevocable.** A Qualified Bidder's Bid for a particular asset package shall be irrevocable unless and until the Debtors accept a higher Bid for such asset package and such Qualified Bidder is not selected as the Backup Bidder for such asset package.

**(p)** **Expenses; Disclaimer of Fees.** Each Bid (other than the Opening Bid, solely to the extent set forth in the Opening Bidder's Proposed Agreement) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Opening Bidder, solely to the extent set forth in the Opening Bidder's Proposed Agreement) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction, if any, or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

**(q)** **Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Consultation Parties) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

**(r)** **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any

9

documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Asset Purchase Agreement.

(s) **Adherence to Bid Procedures.** By submitting its Bid, each Qualified Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction, if any.

(t) **Transfer of Mining Permits/Assumption of Reclamation Obligations.** Each Bid must (i) provide that the Bidder will: (a) take transfer of or obtain permits for the mining operations to be acquired; (b) assume all associated reclamation obligations with respect to the mines subject to the Bid to the extent required under applicable nonbankruptcy law; and (c) obtain assignment of or replace the reclamation surety bonds associated with such permits, and (ii) provide evidence of: (a) the Bidder's ability to satisfy the conditions set forth in clause (i) of this paragraph (including verification that the Bidder is not, and will not be as of the time of the transfer, "permit blocked" under the federal Surface Mining Control and Reclamation Act by application of the federal Applicant Violator System); and (b) the Bidder's financial resources necessary to obtain assignment of or replace the reclamation surety bonds associated with such permits, which evidence may include a letter from a surety company confirming that the Bidder is a "qualified buyer" (as such term is used in the surety industry).

(u) **Government Approvals.** Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, after consultation with the Consultation Parties, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals;

(v) **Government Approvals Timeframe.** Each Bid must set forth an estimated timeframe for obtaining any required internal, governmental, licensing, regulatory or other approvals or consents for consummating any proposed Sale.

(w) **Consent to Jurisdiction.** The Qualified Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

(x) **Bid Deadline.** Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **4:00 p.m. (prevailing Central Time)**

10

on **February 13, 2019** by:

(i)      **Debtors.** Mission Coal Company, LLC, 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660, Attn: Gary M. Broadbent (Gary.Broadbent@missioncoal.com).

(ii)     **Debtors' Counsel**. Counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Stephen E. Hessler, P.C. (stephen.hessler@kirkland.com) and Ciara Foster (ciara.foster@kirkland.com) and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Melissa N. Koss (melissa.koss@kirkland.com).

(iii)    **Debtors' Co-Counsel**. Co-Counsel to the Debtors, Christian & Small LLP 505 North 20th Street, Suite 1800, Birmingham, Alabama 35203, Attn: Daniel D. Sparks (ddsparks@csattorneys.com) and Bill D. Bensinger (bdbensinger@csattorneys.com).

(iv)    **Debtors' Financial Advisors**. Financial advisors to the Debtors, Jefferies LLC, 520 Madison Avenue, New York, New York 10022, Attn: Leon Szlezinger (lszlezinger@jefferies.com), Dan Chu (dan.chu@jefferies.com), Seth Herman (sherman@jefferies.com), and Johnston Suter (jsuter@jefferies.com) and AlixPartners, 1114 Avenue of the Americas, 41st Floor, New York, NY 10036, Attn: Kevin Nystrom (knystrom@alixpartners.com) and Bret Fernandes (BFernandes@alixpartners.com).

## 6.    **Right to Credit Bid.**

At the Auction, if any, any Qualified Bidder, including a Opening Bidder, who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the Opening Bidder shall: (a) have the right (including as part of any applicable Overbid) to credit bid all or a portion of the value of the secured portion of its claims for the assets pursuant to section 363(k) of the Bankruptcy Code, including any secured claims on account of its adequate protection liens, which amount shall be no less than approximately $203,340,782, plus all accrued and unpaid interest (the "DIP Claim Amount"); *provided*, that nothing herein shall impact any parties' rights with respect to either (i) challenges to the liens or claims of the Opening Bidder or any Secured Creditor or (ii) assertions under section 506(c) of the Bankruptcy Code or the effects that such challenges or assertions have, if any, on the ability of any Secured Creditor (other than the Opening Bidder) to credit bid, and the right of the Opening Bidder to bid up to the full amount of the DIP Claim Amount is, as of the date of entry of the Bid Procedures Order, subject to the Committee's challenge rights as set forth in the Final DIP Order, which challenge rights the Debtors, the Committee and the Opening Bidder agree shall be adjudicated or otherwise resolved prior to the Auction. For the avoidance of doubt, the Opening Bidder shall be considered a Qualified Bidder with respect to its right to acquire all or any of the Assets by credit bid.

11

## 7. Auction.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, after consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Assets (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidders at or prior to the Auction. When determining the highest or otherwise best Qualified Bid and selecting the winning bidder, as compared to other Qualified Bids, the Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the number, type, and nature of any changes to the Asset Purchase Agreement or Opening Bidder's Proposed Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought and obligations to be assumed in the Qualified Bid, including whether the Qualified Bidder seeks to assume the Employee Obligations; (b) the amount and nature of the total consideration; (c) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (e) the tax consequences of such Qualified Bid; and (f) the Employee Obligations (collectively, the "Bid Assessment Criteria"). For the avoidance of doubt, when determining the highest or otherwise best Qualified Bid, one dollar of the DIP Claim Amount shall be equal in all respects to one dollar of cash that may be bid by another Qualified Bidder.

If no Qualified Bids other than the Opening Bid are received by the Bid Deadline, then the Debtors may cancel the Auction, and may decide, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, to designate the Opening Bid as the Successful Bid, and pursue entry of the order approving a Sale of the Debtors' assets to the Opening Bidder pursuant to the Opening Bidder's Proposed Agreement.

The Auction, if any, shall take place at **10:00 a.m. (prevailing Eastern Time) on Monday, February 27, 2019**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors after consultation with the Consultation Parties, and subject to the consent of the DIP Lenders. The Auction, if any, shall be conducted in a timely fashion according to the following procedures:

### (a) The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction, if any, in consultation with the Consultation Parties. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid for each asset package. The Debtors explicitly reserve the right, in their business judgment and after consultation with the Consultation parties, to exercise their discretion in conducting the Auction, including determining whether assets are to be auctioned separately, together, or any combination thereof, and whether to adjourn the Auction to facilitate separate discussions between Qualified Bidders, the Debtors, and the Consultation Parties, as applicable. The Debtors shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, including the Opening Bidder, and the members and advisors of the Committee, shall be entitled to attend the Auction, if any, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction, if any.

**(b)    Terms of Overbids.**

"Overbid" means any bid made at the Auction, if any, by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

(i)    **Minimum Overbid Increments.** The initial Overbid for all of the Debtors' assets shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than $1 million, and successive Overbids higher than the previous bid, as Debtors shall, in consultation with the Consultation Parties, announce at the Auction (the "Minimum Overbid Increment").

The Debtors reserve the right, in consultation with the Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid may include: (a) cash and/or noncash consideration; *provided, however*, that the value for such noncash consideration shall be determined by the Debtors in their reasonable business judgment, in consultation with the Consultation Parties; and (b) in the case of a Bid by a Secured Creditor, a credit bid of up to the full amount of the such secured creditors' allowed secured claim including, for the avoidance of doubt, a Bid by the DIP Lenders up to the full amount of the DIP Claim Amount; *provided, however*, that nothing herein shall impact any parties' rights with respect to either (a) challenges to the liens or claims of a Secured Creditor, or (b) solely with respect to Secured Creditors other than the Opening Bidder, assertions under section 506(c) of the Bankruptcy Code or the effects that such challenges or assertions have, if any, on the ability of the any Secured Creditor to credit bid, in each case, subject to the terms of the Final DIP Order.

(ii)    **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, after consultation with the Consultation Parties, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

(iii)    **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as

13

determined in the Debtors' reasonable business judgment after consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(iv) **Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtors, shall announce for each asset package whether the Debtors have identified in the initial applicable Overbid round, an Overbid as being higher or otherwise better than the Initial Minimum Overbid for such asset package, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid for a given asset package (for each asset package, the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

**(c)** **Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtors, the Qualified Bidders and the Consultation Parties, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors and the Consultation Parties with such additional evidence as the Debtors, in their reasonable business judgment, after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

**(d)** **Closing the Auction.**

(i) The Auction, if any, shall continue until there is one or more Bids for the Assets that the Debtors determine, in their reasonable business judgment, after consultation with the Consultation Parties, to be the highest or otherwise best Bid or Bids for all Assets, taken as a whole. Each such Bid shall be declared the "Successful Bid" for such asset package and such Qualified Bidder, the "Successful Bidder" for such asset package, at which point the Auction will be closed. The Auction, if any, shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid(s) is conditioned upon approval by the Court of the Successful Bid(s).

(ii) A Successful Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

14

(iii) For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

(iv) The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, if any, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

(v) As soon as reasonably practicable after closing the Auction, if any, and in any event not less than one business day following closing the Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for each Successful Bid and Backup Bid, to be filed with the Court.

**(e)** **No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction, if any, will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**8.** **Backup Bidder.**

(a) Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted for all or any portion of the Assets, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction for such Asset(s), as determined by the Debtors in the exercise of their reasonable business judgment, after consultation with the Consultation Parties (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder") for such Asset(s), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

(b) The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

(c) If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful

15

Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

All Qualified Bids (other than each Successful Bid and Backup Bid) shall be deemed rejected by the Debtors on and as of the date of approval of each Successful Bid and Backup Bid by the Bankruptcy Court. The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures

**9.      Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in their reasonable business judgment, after consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, if any, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction, at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) waiving, or imposing additional, terms and conditions set forth herein with respect to Potential Bidders and (f) rejecting any or all bids or Bids; *provided, however*, that any modification, extension, waiver, or addition to the Bidding Procedures shall not be inconsistent with the Opening Bidder's Proposed Agreement, the Bidding Procedures Order, or any other Order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court or with the prior consent of the DIP Lenders.

**10.      Approval of Sale Transactions.**

A hearing to consider approval of the Sale of certain of the Assets to the Successful Bidders (the "Sale Hearing") is currently scheduled to take place on or before at **10:00 a.m. (prevailing Central Time) on Wednesday, March 20, 2019**, before the Honorable Tamara O. Mitchell, at the Court, 1800 Fifth Avenue North, Birmingham, Alabama 35203. The Sale Hearing may be scheduled for an earlier date to the extent required by the Successful Bidder; *provided* that any sale free and clear of Employee Obligations is expressly conditioned on the Debtors' obtaining relief from such obligations under sections 1113 and 1114 of the Bankruptcy Code, as applicable. To the extent the Successful Bidder requires approval and consummation of the Sale pursuant to a Sale Order pursuant to Bankruptcy Code section 363, as opposed to approval and consummation of the Sale through a chapter 11 plan, the Debtors shall work in good faith with such Successful Bidder to schedule a hearing for approval of such Sale and entry of such Sale Order as soon as reasonably practicable after the conclusion of the Auction.

**The Sale Hearing may be continued to a later date by the Debtors, after consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Opening Bidder).**

16

At the Sale Hearing, the Debtors, in consultation with the Consultation Parties, shall present the Successful Bids to the Court for approval.

## 11.    Return of Deposits

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court or as expressly provided below.  The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five business days after the Sale Hearing.  The Deposit of each Backup Bidder, if any, shall be returned to such Backup Bidder no later than three business days after the closing of the transaction with the relevant Successful Bidder for the assets bid upon by such Backup Bidder. Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If a Successful Bidder timely closes on its winning transaction, its Deposit shall be credited towards the applicable purchase price(s).  If a Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors.

## 13.    Fiduciary Out.

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any of the Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law; *provided, however*, that the Debtors shall provide the Consultation Parties with advance written notice of such action or inaction within two business days prior to taking such action or inaction.

17

## **EXHIBIT 2**

**Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that on December 21, 2018, the United States Bankruptcy Court for the Northern District of Alabama (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") to select the party or parties to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

Copies of the Bidding Procedures Order, the Bidding Procedures, or other documents related thereto are available upon request to Omni Management Group by calling **888-585-6494** (United States and Canada) and **818-906-8300** (International) or visiting the Debtors' restructuring website at https://www.omnimgt.com/missioncoal/.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **Wednesday, February 13, 2019**, at 4:00 p.m. (prevailing Central Time), and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **Wednesday, February 27, 2019, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

**PLEASE TAKE FURTHER NOTICE** that notwithstanding anything to the contrary in the Opening Bidder's Proposed Agreement, a Qualified Bidder may provide for the assumption of the Employee Obligations, and in considering whether a bid is a Qualified Bid or a Successful Bid, the Debtors will take into consideration whether the Potential Bidder or Qualified Bidder proposes to assume the Employee Obligations.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds thereto; and (iv) be filed with the Court and served and **actually received no later than March 6, 2019**, at **4:00 p.m. (prevailing Central Time)** (the "**Sale Objection Deadline**") by the Court and the following parties: (a)  counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.:  Melissa Koss and 601 Lexington Avenue, New York, New York 10022, Attn: Ciara Foster; (b) counsel for the DIP Lenders, Akin Gump Strauss Hauer & Feld LLP, Attn.: Lisa Beckerman and Arik Preis; (c) counsel for the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn.:  Jennifer Kimble and Jeffrey Cohen; and (d) the Bankruptcy Administrator for the Northern District of Alabama.

**PLEASE TAKE FURTHER NOTICE** that on **Wednesday, March 20, 2019** at 10:00 a.m. (prevailing Central Time) or as soon thereafter as the Debtors may be heard, shall be the date and time for the hearing at which the Court will consider approval of the Sale (the "Sale Hearing").  The Sale Hearing may be scheduled for an earlier date to the extent required by the Successful Bidder.  To the extent the Successful Bidder requires approval and consummation of the Sale pursuant to a Sale Order pursuant to section 363 of the Bankruptcy Code, as opposed to approval and consummation of the Sale through a chapter 11 plan, the Debtors shall work in good faith with such Successful Bidder to schedule a hearing for approval of such Sale and entry of such Sale Order as soon as reasonably practicable after the conclusion of the Auction.

2

Birmingham, Alabama

Dated:  December [●], 2018

_/s/ Daniel D. Sparks_

Daniel D. Sparks

Bill D. Bensinger

**CHRISTIAN & SMALL LLP**

505 North 20th Street, Suite 1800

Birmingham, Alabama 35203

Telephone:    (205) 795-6588

Facsimile:    (205) 328-7234

Email:          ddsparks@csattorneys.com

                   bdbensinger@csattorneys.com

- and -

James H.M. Sprayregen, P.C.

Brad Weiland (admitted _pro hac vice_)

Melissa N. Koss (admitted _pro hac vice_)

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

300 North LaSalle

Chicago, Illinois 60654

Telephone:    (312) 862-2000

Facsimile:    (312) 862-2200

Email:          james.sprayregen@kirkland.com

                   brad.weiland@kirkland.com

                   melissa.koss@kirkland.com

- and -

Stephen E. Hessler, P.C. (admitted _pro hac vice_)

Ciara Foster (admitted _pro hac vice_)

**KIRKLAND & ELLIS LLP**

**KIRKLAND & ELLIS INTERNATIONAL LLP**

601 Lexington Avenue

New York, New York 10022

Telephone:    (212) 446-4800

Facsimile:    (212) 446-4900

Email:          stephen.hessler@kirkland.com

                   ciara.foster@kirkland.com

_Co-Counsel to the Debtors_

3

**EXHIBIT 3**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) Case No. 18-04177-TOM11 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

     **PLEASE TAKE NOTICE** that on December 21, 2018, the United States Bankruptcy Court for the Northern District of Alabama (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] authorizing the Debtors[3] to conduct an auction (the "Auction") to select the party to purchase the Debtors' assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3] This relief granted in the Bidding Procedures Order is solely limited to the Debtors.

of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' Case Website (https://www.omnimgt.com/missioncoal/). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "<u>Cure Costs</u>").

      **PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than February 11, 2019**, at **4:00 p.m. (prevailing Central Time)** (the "<u>Cure Objection Deadline</u>") by the Court and the following parties: (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn.: Melissa Koss and 601 Lexington Avenue, New York, New York 10022, Attn: Ciara Foster; (b) counsel for the DIP Lenders, Akin Gump Strauss Hauer & Feld LLP, Attn.: Lisa Beckerman and Arik Preis; (c) counsel for the Official Committee of Unsecured Creditors, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York 10020, Attn.: Jennifer Kimble and Jeffrey Cohen; and (d) the Bankruptcy Administrator for the Northern District of Alabama.

      **PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

      **PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Costs in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

      **PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors

and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

[*Remainder of page intentionally left blank*]

Birmingham, Alabama
Dated: [●], 2018

/s/ Daniel D. Sparks
Daniel D. Sparks
Bill D. Bensinger
**CHRISTIAN & SMALL LLP**
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Telephone:    (205) 795-6588
Facsimile:    (205) 328-7234
Email:        ddsparks@csattorneys.com
              bdbensinger@csattorneys.com

- and -

James H.M. Sprayregen, P.C.
Brad Weiland (admitted *pro hac vice*)
Melissa N. Koss (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              brad.weiland@kirkland.com
              melissa.koss@kirkland.com

- and -

Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        stephen.hessler@kirkland.com
              ciara.foster@kirkland.com

*Co-Counsel to the Debtors*

4