**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF SUCCESSFUL BIDS**

1.  On December 5, 2018, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter into and Perform Under the Stalking Horse Purchase Agreement, (II) Approving Bidding Procedures for the Sale of the Debtors' Assets, (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (IV) Scheduling Bid Deadlines and an Auction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Docket No. 393] (the "Motion").[2]

2.  On December 21, 2018, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102).  The location of the Debtors' service address is:  7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] Capitalized terms used herein that are otherwise not defined shall have the meaning given to them in the Bidding Procedures Order.

*and (VI) Granting Related Relief* [Docket No. 490] (the "Bidding Procedures Order"), which, among other items, approved the bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

3.     On February 7, 2019, the Court entered the *Amendment to Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Docket No. 728] (the "Amended Bidding Procedures Order").

4.     Pursuant to the Bidding Procedures, on or prior to the Bid Deadline, the Debtors received several bids for the Maple mining assets and the Pinnacle mining assets. As of the Bid Deadline, the Debtors did not receive any bids for the Oak Grove mining assets or any bids for the Debtors' combined assets that the Debtors deemed higher and better than the Opening Bidder's Proposed Agreement.

5.     Pursuant to the Bidding Procedures, on February 27, 2019, the Debtors held an Auction where competitive bidding ensued to determine the highest and best bid for the Maple and Pinnacle mining assets on a stand-alone basis. The Debtors declared conditional highest and best bids on the Maple and Pinnacle mining assets on a stand-alone basis, but did not select a Successful Bidder for such assets, pending determination of any viable bids for the Oak Grove mining assets, or competing combined bids. At both the beginning and conclusion of the Auction on the Maple and Pinnacle mining assets, the Debtors announced on the record that the Debtors would not select a Successful Bidder pending consideration of potential bids on the Oak Grove mining assets and/or

2

combined bids for substantially all of the assets, including the Opening Bidder's Proposed Agreement.

6.     Since the Auction the Debtors continued to solicit bids for the Oak Grove mining assets and combined bids for both the Oak Grove and Maple mining assets. The Debtors received additional competitive bids, and after engaging in extensive, good faith discussions and consulting with the Consultation Parties, now select the following Successful Bids and Successful Bidders:

>  (a)  The Maple Eagle, Seminole, and the Oak Grove mining complexes will be acquired by a newly formed entity that is 79% held by Murray Energy Corporation and 21% held by Javelin Global Commodities (UK) Ltd. (collectively, the "Successful Oak Grove and Maple Eagle Bid").
>
>  (b)  The Pinnacle mining complex will be purchased in part by Bluestone Resources, Inc. ("Bluestone") and in part by Contura Energy, Inc. ("Contura"). Bluestone will be purchasing all assets of Pinnacle, other than those purchased by Contura, including the surface reserves and the Green Ridge reserves. Contura will acquire the Pinnacle rights associated with the Indian Creek and Pocahontas #3 reserves and certain surface property and other specified assets at Pinnacle for purposes of water collection and discharge (collectively, the "Successful Pinnacle Bid").

7.     The Debtors submit the Successful Oak Grove and Maple Eagle Bid and Successful Pinnacle Bid as the Successful Bids. Attached hereto as (a) **Exhibit A** is a summary of the Successful Oak Grove and Maple Eagle Bid, and (b) **Exhibit B** is a summary of the Successful Pinnacle Bid. The Debtors and the Successful Bidders are working as expeditiously as possible to finalize the respective forms of Asset Purchase Agreements, and will file such with the Court as soon as possible.[3] The Debtors select the Opening Bid and Opening Bidders as the Backup Bid

---

[3]     The Successful Bids remain subject to final documentation and the Debtors' reserve all rights related thereto.

and Backup Bidder on the terms set for the in the Opening Bidder's Proposed Agreement. *See* Docket No. 512.[4]

8. A hearing to consider approval of the Sales and confirmation of the Plan will be held at the Robert S. Vance Federal Building, 1800 5th Avenue North, Birmingham, Alabama on **April 3, 2019 at 10:00 a.m. (prevailing Central Time)**.

9. Copies of all documents filed in these chapter 11 cases are available free of charge by visiting the Debtors' restructuring website at: http://www.omnigmgt.com/missioncoal or by calling 888-585-6494 (U.S. and Canada) or 818-906-8300 (International). You may also obtain copies of any pleadings for a fee by visiting the Court's website at https://ecf.alnb.uscourts.gov.

*[Remainder of page intentionally left blank.]*

---

[4] The DIP Lenders filed with the Bankruptcy Court a form of asset purchase agreement on December 28, 2018 (the "Dec 28 APA"). The Debtors assert that the Dec 28 APA is a binding and irrevocable bid pursuant to, among other things, the terms of the Bidding Procedures Order. The DIP Lenders believe that the Dec 28 APA is stale and is otherwise terminable by the DIP Lenders. The DIP Lenders have agreed to be the back-up bidder for the Oak Grove and Maple Eagle assets pursuant to a substantially similar APA (a draft of which was provided to the Debtors on March 27, 2019), with key revisions to such Dec 28 APA as follows: (i) the removal of the Pinnacle Business and associated assets from Acquired Assets/Assumed Liabilities and an express inclusion as an Excluded Asset/Excluded Liability, including reclamation liabilities; (ii) the Payroll Escrow Amount and Wind-Down Escrow Amount to be subject to caps to be mutually agreed between the DIP Lenders and the Debtors; (iii) the payment of Estate Retained Professional Fee Claims to be subject to the express provisions (and caps) set forth in the Final DIP Order, and to be paid pursuant to the terms of the revised APA (iv) revised bankruptcy milestones, (v) the addition of a closing condition and termination event related to the receipt of $27 million of consideration (and no less than $15 million of cash consideration) on account of the equity settlement (and the use of such cash proceeds). The Debtors have not agreed to such terms. All parties reserve all rights with regard thereto.

4

Birmingham, Alabama
Dated: March 27, 2019

*/s/ Daniel D. Sparks*

Daniel D. Sparks
Bill D. Bensinger
**CHRISTIAN & SMALL LLP**
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Telephone:    (205) 795-6588
Facsimile:    (205) 328-7234
Email:        ddsparks@csattorneys.com
              bdbensinger@csattorneys.com

- and -

James H.M. Sprayregen, P.C.
Brad Weiland (admitted *pro hac vice*)
Melissa N. Koss (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              brad.weiland@kirkland.com
              melissa.koss@kirkland.com

- and -

Stephen E. Hessler, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        stephen.hessler@kirkland.com
              ciara.foster@kirkland.com

*Co-Counsel to the Debtors*

**<u>Exhibit A</u>**

**Successful Oak Grove and Maple Eagle Bid Summary**

## OAK GROVE AND MAPLE EAGLE MINES (MURRAY OFFER)

Below is a brief summary of the principal terms of the Successful Bid[1] for the Maple Eagle ("Maple"), Seminole Alabama ("Seminole") and the Oak Grove ("Oak Grove") mining complexes. This summary is not comprehensive, but sets forth the principal terms of the Successful Bid, the definitive documentation for which will be entered into subsequently. The terms set forth below are subject to change and the final terms will be reflected in the definitive documentation related to the transactions.

**Summary of Successful Bid**:

The acquirer ("Buyer"), an entity that is 79% held by Murray Energy Corporation ("Murray") and 21% held by Javelin Global Commodities (UK) Ltd. ("Javelin"), will acquire substantially all of the assets at the Oak Grove, Seminole, and Maple mining complexes for a total consideration of $264.7 million and the assumption of approximately $70 million in reclamation liabilities. Of the $264.7 million in total consideration, $160 million will be paid in the form of take-back paper issued by Buyer to the current DIP Lenders and $42.8 million will be paid in cash. Buyer will also fund $31.7 million in estimated cure costs, tax liabilities, post-petition payables and other administrative liabilities upon closing. In addition, Javelin will cause $10 million in cash to be put on Buyer's balance sheet to support the purchased assets following the closing, and Javelin and the Debtors will enter in a series of coal sale and/or marketing agreements upon selection as Successful Bidder.

Funding of the cash necessary for the transaction will be provided as follows: (a) Murray will provide a $25 million equity contribution, (b) Javelin will provide a $25 million prepayment facility to BidCo, and (c) Javelin will provide a $40 million working capital facility to Bidco.

The corporate structure of Buyer is as set forth on the attached Exhibit A. Buyer will form two intermediate HoldCo's (HoldCo 1 and HoldCo 2). HoldCo 1 will own Oak Grove OpCo, and HoldCo 2 will own Maple Eagle OpCo and Seneca OpCo. Buyer, each Holdco, and each OpCo will be a special purpose, bankruptcy remote entity, which each will be governed by the terms and conditions of the Special Purpose Entity term sheet, which is attached hereto as Exhibit B. In addition, Murray will agree not to grant a pledge of its equity interests in Buyer.

Murray and Javelin have committed to closing on or about April 12.

---

[1]  Defined terms used but not defined herein have the respective meanings given thereto in the bid procedures in the form attached as Exhibit 2 to that certain *Order (I) Authorizing the Debtors to Utilize the Opening Bid and Opening Bidder's Proposed Agreement in Connection with the Sale, (II) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Schedules Bid Deadlines and an Auction, (V) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief*, entered on December 21, 2018 [Docket No. 490].

DOC ID - 31593131.1

| Term | Summary |
|---|---|
| **Scope of Acquired Assets** | All of the assets related to and required to operate the Maple, Seminole and Oak Grove mining complexes, including, without limitation all cash collateral associated with any assumed liabilities. |
| **Scope of Excluded Assets** | Any assets related to the Pinnacle Mining Complex ("Pinnacle") and such other Excluded Assets as set forth in the Sale Documentation including the Robindale receivables (which Buyer values at $20 million) and prepaid deposits related to professional fee retainers. |
| **Scope of Excluded Liabilities** | Any liabilities associated with Pinnacle and such other Excluded Liabilities as set forth in the Sale Documentation |
| **Purchase Price** | Buyer will pay total consideration of $264.7 million and assume approximately $70 million of reclamation liabilities. Of the total consideration, the DIP Lenders will receive $160 million in the form of take-back paper issued by Buyer, on terms and conditions set forth on the attached Exhibit C, and $42.8 million will be paid in cash by Buyer. Buyer will also fund $31.7 million in certain liabilities of the Debtors. |
| **Assumption of Certain Liabilities** | *See* Appendix A |
| **Conditions to Sale Closing** | ▪ Sale closing to occur upon satisfaction of all conditions set forth in the Buyer's revised APA. |
| **Other Considerations** | ▪ Javelin will provide a $40 million working capital facility to Buyer that will be available upon closing to provide sufficient liquidity to support operations post-emergence and cover contract cure costs, fund working capital build, and any other expenses incurred at Closing<br>▪ Bid assumes that Robindale receivables (which Buyer values at $20 million) will remain with the Debtors' estate and all other receivables will be sold to Buyer.<br>▪ DIP Lenders would be responsible for (a) estate wind-down costs (which shall be no greater than the amount set forth opposite such line item (i.e. $1.0 million) in the budget included in the offer made by the DIP Lenders in their form of asset purchase agreement dated December 28, 2018), provided, that Buyer will fund $1 million of such estate wind-down costs, and (b) any breakage costs associated with the Robindale marketing agreement, which Buyer will not acquire and will not be an assumed contract |

Case 18-04177-TOM11    Doc 1120    Filed 03/27/19    Entered 03/27/19 22:10:14    Desc
Main Document      Page 8 of 29

| Term | Summary |
|------|---------|
| | ▪ Prior to closing, Buyer to be listed as contract miner on all permits to be transferred after Closing (including, but not limited to, MSHA, Alabama and West Virginia permits listed on the schedules)<br>▪ Javelin and the Debtors will enter into a series of coal sale and/or marketing agreements upon selection as Successful Bidder. |

DOC ID - 31593131.1

# APPENDIX A – ILLUSTRATIVE SCHEDULE OF CURE COSTS AND ASSUMED LIABILITIES

**Assumed Cure Costs and Liabilities**

(a) Maple Eagle Powelton Minerals Lease

(b) Oak Grove Jefferson Lease

(c) Oak Grove Natural Resource Partners Lease

(d) Estate Wind Down Budget*

(e) Accrued Payroll Liabilities

(f) Health Insurance Programs

(g) Health Insurance IBNR and Workers Compensation IBNR

(h) Accrued Paid Time Off Liabilities

(i) UMWA Obligations

(j) Other Taxes Post Petition

(k) Pre and Post Property Taxes

(l) Trade Payables

(m) Oak Grove Asset Retirement Obligations

(n) Seminole West Virginia Asset Retirement Obligation

(o) Seminole Alabama Asset Retirement Obligations

*Item (d) above to be capped at $1.0 million and remains subject to further Murray diligence on Estate Wind Down Budget composition

*The Acquired Assets include all cash collateral related to any obligations being assumed by the Buyer.

# EXHIBIT A

## CORPORATE STRUCTURE OF BUYER



DOC ID - 31593131.1

5

# EXHIBIT B

## SPECIAL PURPOSE ENTITY TERM SHEET

**Term Sheet Insert[2]**

| | |
|---|---|
| **Special Purpose Entity** | Terms and conditions of SPE/bankruptcy remoteness of Bidco, Holdco 1, Holdco 2, Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo to be acceptable to Castlelake (or an entity or agent designated by Castlelake, as "**Lender**") in its sole discretion. Schulte, Roth & Zabel LLP, as counsel to Murray Energy and Bidco, to provide usual and customary legal opinion related to no substantive consolidation under federal law.<br><br>As long as any secured debt is outstanding to Lender, any amendments/waivers, etc. of SPE/bankruptcy remoteness of Bidco, Holdco 1, Holdco 2, Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo (including organizational documents, change of identity of director/manager), to be subject to consent of Lender in its sole discretion.<br><br>Without limiting the foregoing, the organizational documents of each of Bidco, Holdco 1, Holdco 2, Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo shall contain no less restrictive provisions than as set forth in **Addendum A** hereof. |
| **Loan Parties** | Bidco shall be the issuer/borrower of the secured debt issued to Lender.<br><br>Each of Holdco 1, Holdco 2, Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo shall be a guarantor of the secured debt issued to Lender. |
| **Pledge of Equity** | Bidco shall be formed to hold 100% of the limited liability company membership interests of Holdco 1 and Holdco 2.<br><br>Bidco shall pledge 100% of the limited liability company membership interests in each of Holdco 1 and Holdco 2 to Lender pursuant to a pledge agreement in form and substance acceptable to the parties to such agreement. Murray Energy and Javelin shall each agree to a negative pledge as it relates to the equity interests of Bidco.<br><br>In addition, Holdco 1 and Holdco 2 shall each pledge 100% of the limited liability company membership interests in each of Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo to Lender pursuant to a pledge agreement in form and substance acceptable to the parties to such agreement.<br><br>Among other usual and customary provisions, the pledge agreements shall provide the following:<br><br>• Each of BidCo, Holdco 1 and Holdco 2 shall collaterally assign certain Voting Rights (as defined below) to the Lender.<br><br>• Except during the continuance of an Event of Default ("**EOD**") under the pledge agreements, BidCo, Holdco 1 and Holdco 2 may exercise the Voting Rights, provided that such entities do not exercise the Voting Rights in a manner that would be inconsistent with or result in a |

---

[2] **NTD**: Subject to review and revision by Delaware counsel. Further subject to revision based on final capital structure of acquirer.

violation of any provision of the pledge agreement, note purchase agreement, or any other debt document.

- Upon the occurrence and during the continuance of an EOD, all rights of Bidco, Holdco 1 and Holdco 2 to exercise the Voting Rights shall cease and the Lender shall have the right to exercise, in person or by its nominees or proxies, all Voting Rights assigned to it and Lender shall exercise such Voting Rights for and on behalf of Lender in such manner as Lender in its sole discretion shall deem to be in Lender's best interests.

"<u>Voting Rights</u>" means all of each of Bidcos, Holdco 1 and Holdco 2's respective rights under the organizational documents of Holdco 1 and Holdco 2, Oak Grove OpCo, Maple Eagle OpCo and Seneca OpCo to vote and give approvals, consents, decisions and directions and exercise any other similar right with respect to the Pledged Collateral.

"<u>Pledged Collateral</u>" means all of each Bidco, Holdco 1 and Holdco 2's respective right, title and interest, whether now owned or hereafter acquired, in, under and to (i) the organizational documents and equity interests of each guarantor, including, without limitation, each of Bidco, Holdco 1 and Holdco 2's respective share of the profits, losses and capital of each guarantor, and all Voting Rights, claims, powers, privileges, benefits, options or rights of any nature whatsoever which currently exist or may be issued or granted by each guarantor, and all instruments, whether heretofore or hereafter acquired, evidencing such rights and interests, (ii) all distributions including all rights to distributions from guarantors (other than Tax Distributions), (iii) all general intangibles relating to the foregoing, (iv) the proceeds (including claims against third parties), products and accessions of the foregoing, (v) all replacements and substitutions of the foregoing, (vi) all books and records (including computerized records, software and disks) relating to any of the foregoing, (vii) all other rights appurtenant to the property described in foregoing clauses (i) through (vi), (viii) any stock certificates, share certificates, limited liability company certificates, partnership certificates or other certificates or instruments evidencing the foregoing and (ix) for purposes of clarity and not limitation, any direct or indirect interests of each borrower in the property described in the foregoing clauses (i) through (viii).

7

Case 18-04177-TOM11    Doc 1120    Filed 03/27/19    Entered 03/27/19 22:10:14    Desc
Main Document    Page 13 of 29

# Addendum A[3]

## A. Springing Member

- The operating agreements shall contain customary protections for "special purpose entity" LLCs and shall at all times have one springing member who, so long as any of the secured debt to Lender is outstanding, shall also be the Independent Director[4].

- In connection with a member cessation event (i.e., the occurrence of an event that causes the sole member to cease to be a member, subject to customary exceptions), the Springing Member shall, without any action of any person and simultaneously with the member cessation event, automatically be admitted to the company as the special member and shall continue the company without dissolution.

- The special member may not resign from the company or transfer its rights as special member unless a successor special member has been admitted to the company as special member.

## B. Independent Director

- As long as any secured debt is outstanding, the member(s) shall cause the company at all times to have at least one Independent Director, who will be initially appointed by the member(s) (with the approval of the Lender).

- To the fullest extent permitted by law, including Section 18-1101(c) of the DE LLC Act, the Independent Director will consider only the interests of the company, including its creditors, in acting or otherwise voting on all actions of the company.

- The Independent Director shall serve solely for the purposes of approving or disapproving Material Actions (as defined below) and shall not, and shall not be required to, participate in the authorization of any other matter.

- The Independent Director shall have a fiduciary duty of loyalty and care to the company similar to that of a director of a business corporation organized under the General Corporation Law of the State of Delaware.

---

[3] This summary is not intended to include all the applicable provisions in the organizational documents/ operating agreements, and other customary provisions consistent with the intent of the parties that each guarantor and borrower be structured as, and have all the protections of, to the maximum extent of the law, "bankruptcy remote" special purpose entities.

[4] It is intended that the springing member and Independent Director shall be a natural person with at least 3 prior years employment experience as an independent director, independent manager or independent member by CT Corporation, Corporation Service Company, National Registered Agents, Inc., Wilmington Trust Company, or a similar company that provides such services and is not affiliated with, in any manner, Murray Energy or any of Murray Energy's affiliates.

DOC ID - 31593131.1

- No Independent Director shall at any time serve as trustee in bankruptcy for any affiliate of the company.

## C. Limitations on Company's Activities

- So long as any secured debt is outstanding to Lender, the operating agreements will include provisions required in order to qualify each company as a "special purpose" entity.

- So long as any secured debt is outstanding to Lender, no person shall be authorized or empowered, nor shall they permit the company, without the prior unanimous written consent of the Board (acting unanimously, including the Independent Director (it being understood that, to the fullest extent permitted by law, including Section 18-1101(c) of the Act, when so acting or voting, the Independent Director shall consider only the interests of the company, including its creditors)), to take any Material Action or adopt a new limited liability company agreement or alter, amend or repeal any special purpose provision.

- So long as any secured debt is outstanding to the Lender, no person shall (x) take any Material Action or (y) adopt any amendment to any of the special purpose provisions unless the Independent Director then serving in such capacity participates in such vote or authorization.

  - "Material Action" to include any action to (a)(i) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, (ii) seek or consent to the appointment of a receiver, liquidator or any similar official for the company or a substantial portion of its assets or properties, (iii) make an assignment for the benefit of creditors, (iv) admit in writing the company's inability to pay its debts generally as they become due, (v) declare or effectuate a moratorium on the payment of any secured debt obligations, or (vi) take any action that might cause the company to become insolvent; (b) convert, merge or consolidate with any other person or sell all or substantially all of its assets or acquire all or substantially all of the assets or capital stock or other ownership interest of any other person; (c) execute any dissolution, liquidation, or winding up of the company or (d) take any action in furtherance of any of the foregoing.

- Operating agreements to contain usual and customary covenants and agreements as to the company's activities to ensure separateness.

## D. Third-Party Rights

- The Lender shall be a third-party beneficiary of all special purpose provisions.

## E. Amendments

- So long as any secured debt is outstanding to the Lender, the special purpose provisions may not be modified, altered, supplemented or amended unless the Lender consents in writing and any purported modification, alteration, supplementation or amendment of the special purpose provision without the Lender's consent shall be void and have no force or effect.

DOC ID - 31593131.1

9

**EXHIBIT C**

**TAKE-BACK PAPER TERM SHEET**

| | |
|---|---|
| **Facility Type** | ■ $160 Million First Lien Senior Secured Take-Back Paper |
| **Issuer / Borrower** | ■ BidCo |
| **Guarantors** | ■ Fully and unconditionally guaranteed on a joint and several basis by the Borrower and all current and future domestic restricted subsidiaries, including HoldCos 1 and 2, and OpCos 1, 2 and 3. |
| **Ranking / Security** | Security package in the equity and assets in Oak Grove, Maple Eagle and Seminole Alabama, excluding coal inventory and accounts receivable:<br>■ 1st lien to any outstanding balance due to Take-Back Paper<br>■ 2nd lien to any outstanding balance of the amount due pursuant to the Javelin Prepayment Facility<br><br>Security Package in the coal inventory and accounts receivable of Oak Grove, Maple Eagle and Seminole Alabama:<br>■ 1st and 2nd lien to any outstanding balance on the Javelin Prepayment Facility and Working Capital Financing<br>   3rd lien to Take-Back Paper |
| **Maturity** | ■ 4 years |
| **Call Protection** | ■ No call protection |
| **Coupon** | ■ 8% cash/PIK toggle<br>■ PIK option only available until June 30, 2021, at the option of the Issuer<br>■ Cash pay interest at all times beginning June 30, 2021<br>■ Interest payable semi-annually<br>■ 3 month interest holiday as compensation for recent increases in the assumed cure costs, tax liabilities and other administrative liabilities by BidCo |
| **Mandatory Prepayments** | ■ 85% ECF Sweep<br>■ Terms of ECF to be agreed |
| **Financial Covenants** | 1.25x Fixed Charge Coverage Ratio beginning the period ending 6/30/2021 |
| **Negative Covenants** | ■ Standard and customary incurrence based covenants which will limit ability to sell assets, grant liens, incur indebtedness, engage in transactions with affiliates, merge or acquire other assets and make restricted payments<br>■ Documentation to include covenant requiring Company to take actions necessary to fully capitalize the business for benefit of Noteholders |

# **Exhibit B**

## **Successful Pinnacle Bid Summary**

## PINNACLE MINE SUCCESSFUL BID SUMMARY

Below is a summary of the principal terms of the Successful Bid[1] for the Pinnacle mining complex. This summary is not comprehensive, but sets forth the principal terms of the Successful Bid, the definitive documentation for which will be entered into subsequently. As noted below, the Debtors have determined that there are two Successful Bidders with respect to specific aspects of the Pinnacle mining complex, Bluestone Resources, Inc. ("Bluestone") and Contura Energy, Inc. ("Contura"). The Successful Bid consists of two separate bids, one bid by Bluestone with respect to certain portions of the Pinnacle mining complex and one bid by Contura with respect to certain other portions of the Pinnacle mining complex. Neither Successful Bidder is responsible for the obligations of the other Successful Bidder in respect of the other Successful Bidder's obligations in connection with the consummation of the transactions. The Successful Bids of Contura and Bluestone are subject to (i) resolution of open issues (including with respect to the Brewster matter discussed below), (ii) negotiation of definitive documentation of the final terms governing the transactions among the Debtors, Bluestone, Contura and NRP/WPP, and (iii) completion of confirmatory due diligence, in each case, as agreeable to each of Contura and Bluestone in its respective sole discretion. Therefore, the terms set forth below are subject to change.

### Summary of Bluestone Successful Bid:

Bluestone would acquire all assets related to the Pinnacle mine, other than the specific assets to be acquired by Contura, for an aggregate purchase price of $100,000 (the "Bluestone Transaction"). The Bluestone assets generally relate to all surface property associated with the Pinnacle mine, including the Pinnacle Preparation Plant, all surface reserves (excluding any reserves to be leased to Contura pursuant to the Contura Transaction or reserves located on surface associated with the Mine Void Area (as described on the map on Exhibit A)) and the Green Ridge reserves. Bluestone would not acquire any contracts related to the Pinnacle mine, other than the Lasher Lease,[2] Berwind Lease,[3] NRP Lease (as described below)[4] and West

---

[1] **Note to Draft**: Defined terms used by not defined herein have the respective meanings given thereto in the bid procedures in the form attached as Exhibit 2 to that certain *Order (I) Authorizing the Debtors to Utilize the Opening Bid and Opening Bidder's Proposed Agreement in Connection with the Sale, (II) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale, (IV) Schedules Bid Deadlines and an Auction, (V) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VII) Granting Related Relief*, entered on December 21, 2018 [Docket No. 490].

[2] "Lasher Lease" means that certain Coal Mining Lease, dated August 1, 2005, by and between Lasher LLC and Pinnacle Mining Company, LLC, as amended by that certain First Amendment to Lease, dated December 19, 2013, by and between Lasher LLC and Pinnacle Mining Company, LLC.

[3] "Berwind Lease" means that certain Lease Agreement, effective as of January 1, 1999, by and between Berwind Land Company and U.S. Steel Mining Company, LLC, as assigned to Pinnacle Mining Company, LLC by that certain Consent to Assignment and Assumption Agreement, effective June 30, 2003, by and among Berwind Land Company, U.S. Steel Mining Company, LLC and Pinnacle Mining Company, LLC.

[4] "NRP Lease" means the 2018 Pinnacle Lease as defined in the Agreed Order and Settlement Agreement Related to Motion to Assume Oak Grove Coal Mining Lease filed on 11/20/2018 [Doc. 299] (the "Agreed

KE 60148245
#91849380v11

Virginia DOH Lease[5] (collectively, the "Bluestone Assumed Contracts"). The Debtors would transfer to Bluestone each of the permits set forth below under the heading "Bluestone Summary" opposite the heading "Permits" (such permits, the "Bluestone Permits"). In addition, Bluestone would assume certain liabilities associated with the Bluestone acquired assets, including reclamation obligations, cure costs related to the assumed contracts, trade payables, obligations for real estate taxes and accrued payroll and payroll taxes related to the period prior to closing.

**Summary of Contura Successful Bid**:

Contura would acquire the sub-surface property rights related to the Pinnacle mine, as well as certain surface properties necessary to manage water discharge obligations and certain additional assets as set forth below and attached, for an aggregate purchase price of $3,750,000 (the "Contura Transaction"). Amounts, if any, with respect to apportioned taxes and all amounts required to be paid to the WV DEP under the proposed consent order number M-19-252 dated January 14, 2019 (the "Consent Order") will be a deduction to, and paid from, the purchase price at closing (or, in the case of amounts under the Consent Order, will remain as a liability of the estate of the Debtors and Contura will have no liability in respect thereof, and Contura will receive an acknowledgment to that effect from the WV DEP reasonably satisfactory to Contura). In addition, at closing Contura would assume certain liabilities associated with the Contura acquired assets, including reclamation obligations and certain environmental liabilities.

Following signing, Contura will use commercially reasonable efforts to obtain replacement permits for portions of each of the permits U-0204-83, 0-4008-92 and 0-401097 to the extent (but only to the extent) such permits relate specifically to the properties and operations contemplated to be acquired by Contura; provided, however, that Contura will not be required to make any payments or concessions to the WV DEP or take any actions that would be adverse to Contura in connection with obtaining such permits other than (i) the payment of customary filing and other administrative fees, (ii) obtaining, and paying the reasonable and necessary costs for, customary surveys and other related reports, and (iii) posting customary bonds as required by the WV DEP (in amounts not in excess of 110% of the respective amounts set forth on Exhibit C). Contura's receipt of such permits would also be a condition to Contura's obligation to close the Contura Transaction.

In addition to the other conditions to closing agreed to by Contura and Mission and set forth in the definitive purchase agreement, the Contura Transaction would also be conditioned on the prior closing of the Bluestone Transaction and the prior transfer of the Bluestone Permits to

---

Order and Settlement"). For the avoidance of doubt, while the bids contemplate separate leases for Bluestone and Contura, all of the assets and liabilities associated with the NRP Lease (other than those matters raised in WPP's cure cost objection, which are resolved by the payment of the WPP Payment) will be assumed and assigned to either Bluestone or Contura in connection with the transaction. Upon the closing of the contemplated transactions, the assets and liabilities arising out of the NRP Lease will no longer reside with the Debtors.

[5] "West Virginia DOH Lease" means that certain Coal Lease, dated August 21, 2014, by and between West Virginia Department of Highways and Pinnacle Mining Company, LLC.

Bluestone. The Contura Transaction will also be conditioned on Contura's satisfaction that other than any payment to the WV DEP that will be accounted for as a deduction to the purchase price, or remain as a liability of the estate of the Debtors, as described above, Contura will have no financial liability or other obligation under the Consent Order. The parties continue to discuss matters regarding the Brewster heirs' property interests as relate to the Brewster reserves.

The "Outside Date" for the purchase agreement for the Contura Transaction will be 9 months from the date of execution.

**Interim Operations**:

During the period prior to the closing of the Contura Transaction:
- Bluestone would grant access to Mission as necessary to secure and manage the assets that it retains until the Contura Transaction closes;
- Mission would grant access to Bluestone with respect to portions of the surface that are necessary for Bluestone's operations (and not otherwise a Contura Asset);
- Mission will maintain permits U-0204-83, 0-4008-92 and 0-401097, including related bonding; and
- Mission will maintain insurance with respect to and remain liable for indemnity obligations as currently set forth in the Agreed Order and Settlement with respect to any aspect of the Option that remains active as per below.

**NRP Lease and Other Matters**:

Mission, WPP, Bluestone and Contura will enter into a separate side agreement whereby the parties agree that:

- Upon closing of the Bluestone Transaction, Bluestone and NRP will enter into a new lease with respect to the areas covered by the current NRP Lease (other than the Pocahontas 3 seam in the Indian Creek area) and the existing option described in the Agreed Order and Settlement (the "Option") will no longer be effective with respect to such areas;
- Concurrent with execution of the purchase agreement between Contura and Mission, Contura and WPP will enter into a new lease (in a form to be mutually acceptable to and agreed by Contura and WPP) with respect to the Pocahontas 3 seam in the Indian Creek area, which lease will become effective at closing of the Contura Transaction. The Option will be terminated in full as of the closing of the Contura Transaction;
- Mission will retain indemnification obligations and minimum insurance requirements as set forth in the Agreed Order and Settlement with respect to areas for which the Option remains in effect;
- The quarterly payment obligations under the Agreed Order and Settlement will cease following closing of the Bluestone Transaction;
- Upon closing of the Contura Transaction, the greater of $500,000 and 10% of the proceeds from the sale of the Pinnacle assets will be paid directly to WPP as a deduction to the purchase price otherwise payable to Mission by Contura (the "WPP Payment"), and WPP will waive all claims related to cure costs,

3

termination costs and other matters associated with the NRP Lease. WPP will release such claims at an earlier time if required to approve the plan of reorganization, conditioned upon receipt of the WPP Payment at the closing of the Contura Transaction; and

- After the closing of the Contura Transaction, Bluestone and Contura will cooperate to obtain surveys for the pump sites/de-water sites listed in item 13(v) on Exhibit A and for the Future Pumping Stations (as defined on Exhibit A) and shall execute correction deeds with the surveyed property descriptions.

**Detailed Summary**:

Please see the below for a more detailed summary of the Bluestone and Contura Successful Bids.

|  | **Bluestone Summary** | **Contura Summary** |
|---|---|---|
| **Scope of Acquired Assets** | <ul><li>The Bluestone Assumed Contracts;</li><li>Pinnacle preparation plant;</li><li>Certain leased real property;</li><li>Certain coal reserves;</li><li>Rights to subside lands;</li><li>Rights to warranties associated with acquired equipment;</li><li>Rights to use haul roads and other rights of way; and</li><li>Documents, books and records related to the acquired assets</li><li>Certain owned real property (surface)</li></ul> | <ul><li>The assets set forth on Exhibit A;</li><li>Certain equipment;</li><li>Certain contracts;</li><li>Certain coal reserves;</li><li>Rights to subside lands;</li><li>Rights to warranties associated with acquired equipment;</li><li>Certain documents, books and records;</li><li>Certain claims and avoidance actions, if applicable;</li><li>All assets listed on a specified Schedule;</li><li>[Certain tax refunds, tax returns and tax documents;]</li><li>Certain insurance policies (if applicable);</li><li>Insurance proceeds related to the acquired assets for which Debtors are not otherwise liable under the Agreed Order and Settlement; and</li><li>Proceeds from the sale of any acquired asset</li></ul> |
| **Scope of Excluded Assets** | <ul><li>Collective Bargaining Agreements;</li><li>Employee personnel files or benefit plans;</li><li>Equity interests of the selling entities and corporate records;</li></ul> | <ul><li>Collective Bargaining Agreements;</li><li>Employee personnel files or benefit plans;</li><li>Equity interests of the selling</li></ul> |

4

| | **Bluestone Summary** | **Contura Summary** |
|---|---|---|
| | ▪ Contracts that are not assumed contracts;<br>▪ Rights under insurance policies;<br>▪ Prepaid deposits related to professional fee retainers;<br>▪ Cash consideration paid to selling entities;<br>▪ Deposits, escrows, surety bonds, or other financial assurances and cash or cash equivalents securing any surety bonds or financial assurances related to the excluded assets or excluded liabilities;<br>▪ Tax returns for any tax that is an excluded liability;<br>▪ Avoidance actions and certain other causes of action;<br>▪ Proceeds from the sale of excluded assets;<br>▪ Cash and cash equivalents and all accounts receivable;<br>▪ Tax refunds;<br>▪ Accrued payroll and payroll taxes;<br>▪ Intercompany receivables; and<br>▪ Assets acquired by Contura | entities and corporate records;<br>▪ Certain corporate books and records;<br>▪ Documents that the Sellers are required by legal requirements to retain;<br>▪ Contracts that are not assumed contracts;<br>▪ Certain rights under insurance policies;<br>▪ Prepaid deposits related to professional fee retainers;<br>▪ Cash consideration paid to selling entities;<br>▪ Deposits, escrows, surety bonds, or other financial assurances and cash or cash equivalents securing any surety bonds or financial assurances;<br>▪ Tax returns for any tax for a pre-closing period (subject to provision of copies of any such returns required by Contura);<br>▪ Avoidance actions and certain other causes of action;<br>▪ Proceeds from the sale of Excluded Assets;<br>▪ Cash and cash equivalents and all accounts receivable;<br>▪ Certain tax refunds;<br>▪ Intercompany receivables; and<br>▪ The fee property associated with the Specific Sites (as defined on Exhibit A) |
| **Purchase Price** | $100,000 | $3,750,000 (subject to reduction as noted above) |
| **Assumption of Certain Liabilities** | ▪ Liabilities and Cure Costs related to assumed contracts;<br>▪ Reclamation liabilities related to the Pinnacle Mine;<br>▪ Trade Payables related to the | ▪ Liabilities related to assumed contracts (other than Cure Costs, except as set forth below);<br>▪ Cure Costs relating to the |

5

| | Bluestone Summary | Contura Summary |
|---|---|---|
| | Acquired Assets and incurred in the ordinary course of business after the filing date;<br>■ Liabilities with respect to transferred permits or otherwise arising out of or relating to the transferred permits; and<br>■ Accrued but unpaid liabilities with respect to real property taxes | assumed contracts as set forth on, and limited to the amounts set forth on, Exhibit B;<br>■ Reclamation liabilities related to transferred permits;<br>■ Liabilities relating to the ownership of the acquired assets arising post-closing;<br>■ Certain environmental liabilities related to the acquired assets; and<br>■ Regulatory violations relating to the transferred permits first arising post-closing |
| **Other Considerations** | ■ Bluestone to assume the Lasher Lease, Berwind Lease, and West Virginia DOH Lease<br>■ Bluestone to enter into a new lease with WPP | ■ Contura to enter into a new lease with WPP (in a form to be mutually acceptable to and agreed by Contura and WPP) |
| **Permits** | ■ List of permits being confirmed | ■ Contura to obtain new permits covering portions of U-0204-83, O-4008-92 and O-4010-97 as more fully described above |

6

## Exhibit A
## Contura Assets

1.  All rights to that certain portion of the Pocahontas No. 3 reserves identified on the attached map as "Retained Mineral Block A."

2.  All rights to that certain portion of the Pocahontas No. 3 reserves identified on the attached map as "Retained Mineral Block B."

3.  All rights to the Mine Void Area identified on the attached map.

4.  That certain surface property identified on the attached map as "Fan Site 8A" and related ponds ("Fan Site 8A").

5.  That certain surface property identified on the attached map as "Compressor Station."

6.  Those certain surface properties identified on the attached map as "Future Pumping Station 1", "Future Pumping Station 2" and "Future Pumping Station 3" (collectively, the "Future Pumping Stations" and each a "Future Pumping Station").

7.  All Brewster estate tracts to the extent owned by Mission or one of its affiliates.

8.  All equipment, improvements and personal property located at those certain surface properties identified on the attached map as "8A Dewater Site", "8I Dewater Site", "8R Dewater Site" and "9E Dewater Site" (collectively, the "Dewater Sites").

9.  All equipment, improvements and personal property located at that certain surface property identified on the attached map as "7K Dewater Site" (the "Potential Dewater Site").

10. The Indian Creek substation (together with the Dewater Sites and the Potential Dewater Site, the "Specific Sites").

11. Rights in favor of Contura across all surface property for the use of haul roads, access roads, other rights of way, rights to relocate surface facilities, construction of potential new roads and conduct of necessary operations to manage water discharge operations (the "Broad Surface Rights").  The Broad Surface Rights will be reserved by Mission in the deeds pursuant to which Bluestone acquires the surface properties it is acquiring from Mission, and will be transferred to Contura at the closing of the Contura Transaction.

12. Easement in favor of Contura for the use, maintenance, repair and access to the Specific Sites, Fan Site 8A, the Future Pumping Stations and the related pipelines, water lines, power lines and equipment in order to conduct discharge operations (the "Specific Surface Easement").

13. The following assets:

    (i)   Two Transformers located at Fan Site 8A, bearing serial numbers SEB3043 0002 and SEB3043 0001 and all associated wiring, power poles and switch gear;

    (ii)  Two Mine Fans located at Fan Site 8A (Robinson Type AF0925, bearing serial numbers 34297A and 34297B);

    (iii) Two 2300 HP motors driving the 2 Robinson Type Fans located at Fan Site 8A;

(iv)    Back up 2300 HP motors located in the Pinnacle warehouse; and

(v)     Water Pumps and associated water lines located at sites 1 Right,[6] 9e, 8a, 8i, 8r and 7k, the general locations of which are set forth on the attached map.

---

[6]    To confirm this pump is still located at the 1 Right location.

## Map of Contura Acquired Assets



# Exhibit B
## Contura Assumed Contracts

| Seller Entity | Counter Party | Agreement | Additional Information | Contract Date |
|---|---|---|---|---|
| Pinnacle Mining Company, LLC | Nelson Bailey, Jr. and Mary Bailey | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $19,700) | Original settlement amount was for $98,500, $78,800 of which Debtors report has been paid, leaving a balance of $19,700 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Morris and Claudette Blankenship | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $33,900) | Original settlement amount was for $169,500, $135,600 of which Debtors report has been paid, leaving a balance of $33,900 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Gregory and Sharon Chafin | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $42,000) | Original settlement amount was for $210,000, $168,000 of which Debtors report has been paid, leaving a balance of $42,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Michael and Mary Estep | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $31,000) | Original settlement amount was for $155,000, $124,000 of which Debtors report has been paid, leaving a balance of $31,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Elmer and Violet Green | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $27,000) | Original settlement amount was for $135,000, $108,000 of which Debtors report has been paid, leaving a balance of $27,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | James and Kristin Hatfield | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $25,600) | Original settlement amount was for $128,000, $102,400 of which Debtors report has been paid, leaving a balance of $25,600 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | William and Drema Lester | Mediation Settlement Agreement | Original settlement amount was for $165,000, $132,000 of | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle* |

| Seller Entity | Counter Party | Agreement | Additional Information | Contract Date |
|---|---|---|---|---|
| | | (assumption by Contura subject to a maximum cure payment of $33,000) | which Debtors report has been paid, leaving a balance of $33,000 | *Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Bessie Morgan | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $35,000) | Original settlement amount was for $175,000, $140,000 of which Debtors report has been paid, leaving a balance of $35,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | Mary Ricketts | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $27,000) | Original settlement amount was for $135,000, $108,000 of which Debtors report has been paid, leaving a balance of $27,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |
| Pinnacle Mining Company, LLC | James and Rose Surratt | Mediation Settlement Agreement (assumption by Contura subject to a maximum cure payment of $53,000) | Original settlement amount was for $265,000, $212,000 of which Debtors report has been paid, leaving a balance of $53,000 | Filed under seal on 5/18/2017 in *Surratt et. al. v. Pinnacle Mining Company, LLC*, U.S.D.C. for the S.D. of W.V. (Beckley), Case #: 5:15-cv-15444 |

- $327,200 remains unpaid in the aggregate.

## Exhibit C
## WV DEP Bonds

| Permit # | Type | Debtor | Bond Description | Surety Provider | Obligee | Permit Acres | Operating Status | Bond No - Term - Transaction | Effective Date | Expiration Date | Bond Amount | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| O-4010-97 | Deep mine | Pinnacle Mining Company, LLC | Gob Gas Well Sites | Indemnity National | West Virginia Department of Environmental Protection | 518 | A | N-7000844-2-1 | 2/15/2019 | 2/15/2020 | $ 520,000 | $ 14,300 |
| U-0204-83 | Deep mine | Pinnacle Mining Company, LLC | 50 Mine & warehouse | Indemnity National | West Virginia Department of Environmental Protection | 311 | A | N-7000846-2-1 | 2/15/2019 | 2/15/2020 | $ 811,200 | $ 22,308 |
| O-4008-92 | Deep mine | Pinnacle Mining Company, LLC | 145 Acres Wyoming County | Indemnity National | West Virginia Department of Environmental Protection | 145 | | N-7000935-1-1 | 3/15/2018 | 3/15/2019 | $ 145,000 | $ 3,988 |