**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **MISSION COAL COMPANY, LLC, et al.,** | ) | **CASE NUMBER 18-04177 TOM** |
| | ) | |
| **DEBTOR (JOINTLY ADMINISTERED).** | ) | **CHAPTER 11 PROCEEDING** |

---

**NOTICE OF APPEAL**

---

**COME NOW,** JoAnn Waid, Lennis L. Waid and other Waid Claimants listed on Exhibit A, attached hereto (hereinafter the "Waid Claimants" or "Appellants") and hereby file their Notice of Appeal from:

1.      The Order (i) Approving the Sale of the Acquired Assets Free and Clear of Claims, Liens, Interests and Encumbrances; (ii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iii) Granting Related Relief [Doc 1322] (copy attached as Exhibit B); and

2.      Order Confirming the Fourth Amended Chapter 11 Plan of Mission Coal Company, LLC, and certain of its Debtor affiliates [Doc 1324] (copy attached as Exhibit C).

Respectfully submitted on April 26, 2019.

*/s/ Walter F. McArdle*
Walter F. McArdle
Attorney for JoAnn Waid, et al.

**OF COUNSEL:**

SPAIN & GILLON, LLC
505 North 20th Street
Suite 1200, The Financial Center
Birmingham, Alabama 35203
Telephone: 205.581.6295
Email: wmcardle@spain-gillon.com

**CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the above and foregoing has been electronically filed with the Court and serve via the Court's CM/ECF system on April 26, 2019.

*/s/ Walter F. McArdle*
OF COUNSEL

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | Plaintiff | Property Address | Property City | Property Zip Code |
|---|---|---|---|---|
| 1 | ALEXANDER, Jane<br>ALEXANDER, James<br>LESLIE, Thelma | 1534 ARCADE TER and<br>1530 ARCADE TER | BESSEMER | 35023 |
| 2 | ANDERSON, David G.<br>ANDERSON, Sharon | 975 PICKENS DR | HUEYTOWN | 35023 |
| 3 | ANDERSON, Sharon<br>ANDERSON, David<br>ANDERSON, Philip | 172 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 4 | ASHCRAFT, Gary M.<br>ASHCRAFT, Bonnie | 6060 WILLOW CIR | BESSEMER | 35023 |
| 5 | BAKER, J.W. *(aka James Baker)*<br>BAKER, Deanna | 7283 TAYLORS FERRY RD | BESSEMER | 35023 |
| 6 | BAKER, James William | 740 PINEWOOD AVE | HUEYTOWN | 35023 |
| 7 | BARTON, Renee | 503 GAY RD | HUEYTOWN | 35023 |
| 8 | BENNETT, Brad | 516 GAY RD | HUEYTOWN | 35023 |
| 9 | CAIN, James L. Sr.<br>Bennett, Linda E. Cain | 520 GAY RD | HUEYTOWN | 35023 |
| 10 | BOOTH, Charles A.<br>BOOTH, Annette A. | 5651 WARRIOR RIVER RD | BESSEMER | 35023 |
| 11 | BROOKS, Betty W. | 1056 NORMANDALE CIR | HUEYTOWN | 35023 |
| 12 | BROWN, Ernest M.<br>BROWN, Linda | 317 FLORENCE ST | HUEYTOWN | 35023 |
| 13 | BROWN, James K. | 5821 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 14 | BROWN, Maple P. | 107 FOUST AVE | HUEYTOWN | 35023 |
| 15 | BROWN, Norman | 1560 LILLY LN | BESSEMER | 35023 |
| 16 | Brown, Violet H. | 113 FOUST AVE | HUEYTOWN | 35023 |
| 17 | BRUNER, Phillip<br>BRUNER, Rebecca | 5646 SMITH RD | BESSEMER | 35023 |
| 18 | BYESS, Adam<br>BYESS, Rachel | 1111 ROCK CREEK RD | BESSEMER | 35023 |
| 19 | CAMPBELL, Annette | 831 WILLOW BEND LN | BESSEMER | 35023 |
| 20 | CAMPBELL, Michael B. | 826 BAHIA LN | BESSEMER | 35023 |
| 21 | CAMPBELL, Stacy N.<br>CAMPBELL, Michael B. | 120 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 22 | CANTRELL, Larry Wayne | 3927 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 23 | CANTRELL, Larry Wayne | 132 DEXTER AVE | HUEYTOWN | 35023 |
| 24 | CANTRELL, Larry Wayne<br>CANTRELL, Ronda Kay | 3134 ALLISON BONNETT DR | BESSEMER | 35023 |
| 25 | CARDEN, Jerry L.<br>CARDEN, Evelyn G. | 6054 WILLOW CIR | HUEYTOWN | 35023 |
| 26 | CARNES, Albert Randall<br>THOMPSON, Alora | 604 GENON LAINE TERRACE | HUEYTOWN | 35023 |
| 27 | CARROLL, Donna Gower Kilpatrick | 6051 WILLOW CIR | BESSEMER | 35023 |

\* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | | | | |
|---|---|---|---|---|
| 28 | CARROLL, Donna Gower Kilpatrick | 6057 WILLOW CIR | BESSEMER | 35023 |
| 29 | CAUDLE, Brenda Joyce<br>CAUDLE, Charles | 1536 LILLY LN | BESSEMER | 35023 |
| 30 | CHAFIN, Frelda aka Frieda P. Dye | 115 MAGNOLIA LN | Bessemer | 35023 |
| 31 | CHANDLER, Fredrick Austin | 5662 SMITH RD | BESSEMER | 35023 |
| 32 | CHANEY, Ira C. | 1004 NORMANDALE CIR | BESSEMER | 35023 |
| 33 | ESARY, D.L. (Linda Childress as Personal Representative of the Estate of) | *1549 LILLY LN | BESSEMER | 35023 |
| 34 | CLEMONS, Donald R. | 741 PINEWOOD AVE | HUEYTOWN | 35023 |
| 35 | COOK, Chris Lynn<br>COOK, Teresa Ann | 7539 15TH STREET RD | BESSEMER | 35023 |
| 36 | CRIBBS, Catherine Chapman<br>CRIBBS, Richard | 201 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 37 | DABBS, Michael T.<br>DABBS, Sharon S.<br>BONNETT, Tracy | 5612 VICTORY LN | BESSEMER | 35023 |
| 38 | DOSS, Alma Earlene | 106 HAMMONDS ST | HUEYTOWN | 35023 |
| 39 | DOUGLASS, Bernard A.<br>DOUGLASS, Emily J. | 1931 VIRGINIA LN | HUEYTOWN | 35023 |
| 40 | DOUGLASS, Emily J. Waldrop<br>DABBS, Richard<br>DABBS, Deborah | 1015 PICKENS DR | HUEYTOWN | 35023 |
| 41 | DYLE, Martha Sue Gwin<br>DYLE, Ronald L. | 6011 GWIN DR | BESSEMER | 35023 |
| 42 | EARL, David Wayne<br>EARL, Rhonda | 1075 ROCK CREEK RD | BESSEMER | 35023 |
| 43 | EARLEY, Ronald A.<br>STELMAN, Gail | 1461 DOGWOOD LN | BESSEMER | 35023 |
| 44 | FREDERICK, C. Earnest<br>FREDERICK, Helen | 5647 SMITH RD | HUEYTOWN | 35023 |
| 45 | ELDRIDGE, James R.<br>ELDRIDGE, Shawn | 248 MASTERS RD | BESSEMER | 35023 |
| 46 | FELDER, Chris<br>FELDER, Barbara D. | 1036 NORMANDALE CIR | HUEYTOWN | 35023 |
| 47 | FINLEY, Wardell Leo<br>FINLEY, Georgia Mae | 201 FOUST AVE | HUEYTOWN | 35023 |
| 48 | FRANKLIN, Jack A.<br>FRANKLIN, Joyce H. (Life Estate)<br>FRANKLIN, Jack Jr.<br>FRANKLIN, Richard | 1052 NORMANDALE CIR | HUEYTOWN | 35023 |
| 49 | FRANKS, Herschel Wayne<br>FRANKS, Edna Jean | 1485 LILLY LN | BESSEMER | 35023 |
| 50 | GAMBLE, Eva (Charles Gamble as Personal Representative of the Estate of) | *3531 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 51 | GALLMAN, Christopher | 6300 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 52 | GARNER, George H. | 117 PINECREST RD | HUEYTOWN | 35023 |

* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| 53 | GARRIS, Robert W.<br>GARRIS, Barbara B. | 6516 GARRIS DR | BESSEMER | 35023 |
|----|------|------|------|------|
| 54 | GEORGE, Billy L. | 127 MCKEE ST | HUEYTOWN | 35023 |
| 55 | EARLY, Candace<br>HOLLIS, Godsey | 189 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 56 | GOLDEN, James L. Jr.<br>GOLDEN, Gladys | 6004 GWIN CIR | BESSEMER | 35023 |
| 57 | GOLSON, H.H. *(Vicki Briley, as Personal Representative of the Estate of)* | 204 OAK CIR | BESSEMER | 35023 |
| 58 | GORDON, Eddie D.<br>GORDON, Kelly L. | 5928 WATTERS DR | BESSEMER | 35023 |
| 59 | GORDON, Eddie D.<br>GORDON, Kelly L. | 436 COVENANT CIR | HUEYTOWN | 35023 |
| 60 | GOSA, Mary Pearl | 940 GOSA TOWN RD | BESSEMER | 35023 |
| 61 | GOSA, Quentella *(Mary Pearl as Personal Representative of the Estate of)* | 901 FLORENCE ST | HUEYTOWN | 35023 |
| 62 | GRIFFIN, Thomas E.<br>GRIFFIN, Jo Ann | 195 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 63 | GUYTON, Randy L.<br>GUYTON, Mary Diane | 196 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 64 | GUYTON, Mary Diane<br>JOHNSON, Theresa Janet | 224 MASTERS RD | BESSEMER | 35023 |
| 65 | GWIN, Kelli A. | 6024 GWIN CIR | HUEYTOWN | 35023 |
| 66 | GWIN, Dennis J. | 5901 LANTRIP DR | HUEYTOWN | 35023 |
| 67 | GWIN, Dennis J. | 5904 LANTRIP DR | HUEYTOWN | 35023 |
| 68 | GWIN, Dennis J. | 169 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 69 | GWIN, Dennis J. | 5918 WATTERS DR | BESSEMER | 35023 |
| 70 | GWIN, Dennis J. | 1468 LILLY LN | BESSEMER | 35023 |
| 71 | GWIN, Dennis J.<br>GWIN, Nikki | 7100 TAYLORS FERRY RD | BESSEMER | 35023 |
| 72 | HAGOOD, Larry W. *(Individually and as Trustee)*<br>HAGOOD, Betty J. *(Individually and as Trustee)* | 155 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 73 | HAGOOD, Larry W.<br>HAGOOD, Danny W.<br>HAGOOD, Donny C.<br>HAGOOD, Randy J. | 1004 PINEWOOD AVE | HUEYTOWN | 35023 |
| 74 | HAMAKER, Edmond Dale | 5608 SMITH RD | BESSEMER | 35023 |
| 75 | HARRISON, Robert Clayton<br>HARRISON, Wanda Joyce *(aka Joyce Guin Harrison)* | 3704 KATHERINE LN | HUEYTOWN | 35023 |
| 76 | HASTINGS, Larry Jon<br>HASTINGS, Ganett | 1512 DOGWOOD CT | BESSEMER | 35023 |
| 77 | HERALD, James Edward<br>HERALD, Dorthy Ann | 5654 SMITH RD | BESSEMER | 35023 |
| 78 | HERALD, Stephen Lee<br>HERALD, Cathy E. | 1410 WARRIOR DR | BESSEMER | 35023 |
| 79 | HESTER, Steven Daniel<br>HESTER, Glenda | 5927 WATTERS DR | BESSEMER | 35023 |

\* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| 80 | HICKS, Dollie Ann Hicks *(formerly Dollie Ann Hanson)* | 107 FLORENCE ST | HUEYTOWN | 35023 |
|---|---|---|---|---|
| 81 | HOLCOMB, Sonny<br>HOLCOMB, Charlotte | 7477 CROWDER DR | BESSEMER | 35023 |
| 82 | HOLCOMBE, Dale M.<br>HOLCOMBE, Donna S. | 6476 CCC RD | BESSEMER | 35023 |
| 83 | HOLCOMBE, Dale M.<br>HOLCOMBE, Donna Sue *(one and same as Donna S. Holcombe)*<br>MATHIS, Edward | 129 FOUST AVE | HUEYTOWN | 35023 |
| 84 | SMITH, James Scott<br>HOLCOMBE, Donna S. | 1398 WHITE DR | BESSEMER | 35023 |
| 85 | HOLMAN, Robert *(Life Estate)*<br>JACKSON, Patricia H.<br>HOLMAN, Mark R. | 1065 NORMANDALE CIR | HUEYTOWN | 35023 |
| 86 | HOOPER, Charles A. *(Life Estate)*<br>HOOPER, David Wayne<br>HOOPER, Dora | 7140 HANCOCK DR | BESSEMER | 35023 |
| 87 | HOSMER, Mary L. *(Life Estate)*<br>HOSMER, Donny Floyd<br>MILLER, Connie Lynn<br>HOSMER, William Thomas | 5931 WATTERS DR | BESSEMER | 35023 |
| 88* | HOWELL, J. L.<br>HOWELL, Janette T. *(Life Estate)*<br>HOWELL, Keith L.<br>HOWELL, Russell L. | 314 FLORENCE ST | HUEYTOWN | 35023 |
| 89 | HOWELL, Keith L.<br>HOWELL, Sharron | 106 PATRICIA ST | HUEYTOWN | 35023 |
| 90 | HOWELL, Russell L.<br>HOWELL, Lin J. | 1475 VIRGINIA RD | HUEYTOWN | 35023 |
| 91 | HUDDLESTON, Ronald<br>HUDDLETSON, Betty | 3331 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 92 | HUFF, Claude M. Jr.<br>HUFF, Suzi V. | 1788 WHITE DR | BESSEMER | 35023 |
| 93 | HUMES, Sherry<br>HUMES, Larry | 1508 DOGWOOD CT | BESSEMER | 35023 |
| 94 | HUTCHINS, Clarence<br>HUTCHINS, Willie | 197 FOUST AVE | HUEYTOWN | 35023 |
| 95 | INGRAM, Randall<br>INGRAM, Tina | 109 MAY DR | HUEYTOWN | 35023 |
| 96 | INMAN, Michael W. Jr. | 1612 KERRY DR | BESSEMER | 35023 |
| 97 | IRVIN, Allison<br>IRVIN, Terry | 801 PEBBLE LN | BESSEMER | 35023 |
| 98 | JACKS, Myra | 1009 NORMANDALE CIR | HUEYTOWN | 35023 |
| 99 | JACKSON, William G.<br>JACKSON, Patricia | 5658 SMITH RD | HUEYTOWN | 35023 |
| 100 | JONES, Rebecca M. *(Joseph Jones with POA)*<br>JONES, Joseph | 1010 NORMANDALE DR | BESSEMER | 35023 |

* No Easement

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | | | | |
|---|---|---|---|---|
| 101 | JONES, Queen, as heir of JONES, Walter | 203 FOUST AVE | HUEYTOWN | 35023 |
| 102 | KEEF, Kenneth KEEF, Alishia | 236 MASTERS RD | BESSEMER | 35023 |
| 103 | KILLOUGH, E. Terry KILLOUGH, Helen M. | 4816 15TH STREET RD | HUEYTOWN | 35023 |
| 104 | KING, Thomas E. Jr. | 1586 ARCADE TER | BESSEMER | 35023 |
| 105 | KIRBY, Jason Alan KIRBY, Rhonda | 5663 SMITH RD | BESSEMER | 35023 |
| 106 | KNAPP, Beverly G. | 6049 GWIN CIR | BESSEMER | 35023 |
| 107 | KNIGHT, Shoults Lindi | 515 GAY RD | HUEYTOWN | 35023 |
| 108 | KNIGHT, Joseph T. KNIGHT, Alice Ann | 300 POPE DR | HUEYTOWN | 35023 |
| 109 | KNIGHTEN, Sylvia | 1000 DOGWOOD PL | BESSEMER | 35023 |
| 110 | CARROLL, Shannon | 200 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 111 | LAIRD, Gena L. | 1451 LILLY LN | BESSEMER | 35023 |
| 112 | LATTA, Corey Edward LATTA, Cherri | 318 POPE DR | HUEYTOWN | 35023 |
| 113 | LAWLEY, Randy F. LAWLEY, J. Daralene | 1113 JOHNSTON RD | BESSEMER | 35023 |
| 114 | LAY, Martha H. (Roger Lay as Personal Representative of the Estate of) | 1044 NORMANDALE CIR | HUEYTOWN | 35023 |
| 115 | LAY, Christopher R. LAY, Roger PATTERSON, Jo B. (individually and as Personal Representative of Anne E. Berry) | 1045 NORMANDALE CIR | HUEYTOWN | 35023 |
| 116 | LEDBETTER, Patricia Ann | 5941 WATTERS DR | BESSEMER | 35023 |
| 117 | MARCUM, Rodney Joe MARCUM, Vicky | 1426 EDGEFIELD LN | BESSEMER | 35023 |
| 118 | MARCUM, Rodney Joe MARCUM, Brett J. | 130 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 119 | Douglas W Martin and Melissa D Martin | 312 OAK CIR | BESSEMER | 35023 |
| 120 | MARTIN, Wayne P. | 1013 NORMANDALE CIR | BESSEMER | 35023 |
| 121 | MASON, Sheila A. TUCKER, Erica Mason | 1013 PICKENS DR | HUEYTOWN | 35023 |
| 122 | MCARTHUR, Michael FRANKLIN, Suzanne | 1815 JAMES CT | BESSEMER | 35023 |
| 123 | MCCARTY, Billie S. | 1028 NORMANDALE CIR | HUEYTOWN | 35023 |
| 124 | MCFERRIN, Ellis L. Jr. MCFERRIN, Carolyn | 6047 WILLOW CIR | BESSEMER | 35023 |
| 125 | MEARS, Cynthia | 1480 LILLY LN | BESSEMER | 35023 |
| 126 | MONTGOMERY, Jerry G. MONTGOMERY, Judy | 3378 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 127 | MOODY, Alice E. | 1733 WHITE DR | BESSEMER | 35023 |

* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| 128 | MOORE, Eugene Jr. | 106 PINECREST RD | HUEYTOWN | 35023 |
|---|---|---|---|---|
| 129 | MORGAN, Leslie W. MORGAN, Sara F. | 716 PINEWOOD AVE | HUEYTOWN | 35023 |
| 130 | MORRIS, Steven MORRIS, Sandra | 1003 NORMANDALE CIR | HUEYTOWN | 35023 |
| 131 | MORROW, Luther E. Jr. MORROW, Marilyn | 702 DATES CIR | BESSEMER | 35023 |
| 132 | MUSSO, Carmello D. MUSSO, Loretta Sue | 1112 PINEWOOD AVE | HUEYTOWN | 35023 |
| 133 | NABORS, Harvey M. | 3422 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 134 | NASH, Peggy F. (Life Estate) EDMONSON, Nancy NASH, Louie Bryan, III CARNES, Catherine Lynn | 1145 PINEWOOD AVE | HUEYTOWN | 35023 |
| 135 | NICHOLS, Hubbard S., III NICHOLS, Mary C. | 103 BEASLEY DR | HUEYTOWN | 35023 |
| 136 | OGDEN, George William | 5630 SMITH RD | HUEYTOWN | 35023 |
| 137 | OGLESBY, Rebecca J. JONES, Jewel G. (Ted D. Jones with POA) | 3372 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 138 | OGLETREE, Lucille | 1024 NORMANDALE CIR | BESSEMER | 35023 |
| 139 | OGLETREE, Thomas Wayne | 7221 DONS DR | BESSEMER | 35023 |
| 140 | OLIVER, Connie L. | 249 MASTERS RD | BESSEMER | 35023 |
| 141 | PATE, Emaleen W. (Rebekah P. Brashier, as Personal Representative of the Estate of) | 1048 NORMANDALE CIR | HUEYTOWN | 35023 |
| 142 | PATTON, O. A. (Janet Welch as Personal Representative of the Estate of) | * 6324 WARRIOR RIVER RD | BESSEMER | 35023 |
| 143 | POPEE, Bryan | 5659 SMITH RD | BESSEMER | 35023 |
| 144 | POSEY, Jacqueline S. POSEY, Guy O., Sr. | 1375 OLD ROCK CREEK RD | BESSEMER | 35023 |
| 145 | HINTON, Paula Kay (aka Paula Price) | 5655 SMITH RD | BESSEMER | 35023 |
| 146 | PRICE, Richard PRICE, Brandy | 1000 NORMANDALE CIR | HUEYTOWN | 35023 |
| 147 | QUICK, Robert D. QUICK, Bonita S. | 1532 OAK LN | BESSEMER | 35023 |
| 148 | RANEY, Shelley M. | 1758 WHITE DR | HUEYTOWN | 35023 |
| 149 | RAYMOND, Stephen Arthur, Jr. RAYMOND, Jenny Griffin | 201 MCGREGOR DR | SYLVAN SPRINGS | 35118 |
| 150 | REDMAN, Jewel H. | 5913 WATTERS DR | BESSEMER | 35023 |
| 151 | ROBERTS, Gaye G. | 6007 GWIN CIR | BESSEMER | 35023 |
| 152 | ROBERTS, Sylvia A. Cobern | 124 MCKEE ST | HUEYTOWN | 35023 |
| 153 | ROGERS, Jimmy W. ROGERS, Joan W. | 1012 NORMANDALE CIR | BESSEMER | 35023 |
| 154 | ROLLINS, Jeanette | 5842 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 155 | RUSHING, Stanley W. | 256 MASTERS RD | BESSEMER | 35023 |
| 156 | SATTERLEE, Cathy N. | 111 FLORENCE ST | HUEYTOWN | 35023 |

\* No Easement

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | | | | |
|---|---|---|---|---|
| 157 | SCOTT, Howard A. <br> SCOTT, Sandra A. | 1325 NORTH CHURCH RD | BESSEMER | 35023 |
| 158 | SCOTT, Howard Allen | 6012 GWIN DR | BESSEMER | 35023 |
| 159 | SCOTT, Charles D. <br> SCOTT, Tonya | 5738 WARRIOR RIVER RD | BESSEMER | 35023 |
| 160 | SELLERS, Sue I. (Linda Smith as Personal Representative of the Estate of) | 113 BEASLEY DR | BESSEMER | 35023 |
| 161 | SEWELL, Bennie | 1008 NORMANDALE CIR | HUEYTOWN | 35023 |
| 162 | SHIVERS, Larry Don <br> SHIVERS, Linda Ann | 103 HAZEL DR | HUEYTOWN | 35023 |
| 163 | SHORT, Willis <br> SHORT, Jaime | 5619 VICTORY LN | HUEYTOWN | 35023 |
| 164 | SMITH, Gregory D. | 128 FOUST AVE | HUEYTOWN | 35023 |
| 165 | SMITH, Mary L. <br> SMITH, Clayton C. | 318 SUSAN PL | HUEYTOWN | 35023 |
| 166 | SMITH, Gertrude | 163 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 167 | SMITH, Thomas W. <br> SMITH, Tammy | 1516 DOGWOOD CT | BESSEMER | 35023 |
| 168 | SOLOWES, David Von | 311 OAK CIR | BESSEMER | 35023 |
| 169 | SPARKS, Connie K. | 5908 TULE DR | HUEYTOWN | 35023 |
| 170 | SQUIRES, Christopher <br> SQUIRES, Kay | 613 BAHIA LN | BESSEMER | 35023 |
| 171 | STANLEY, Rinda L. | 1420 LILLY LN | BESSEMER | 35023 |
| 172 | STANLEY, Rinda L. | 6450 CROSAN DR | BESSEMER | 35023 |
| 173 | STARNS, Wanda M. <br> STARNS, Kenneth D. <br> STARNS, Darryl W. | 5921 WATTERS DR | BESSEMER | 35023 |
| 174 | STEGALL, Rose (Sara Ozley as Personal Representative of the Estate of) | 265 MASTERS RD | BESSEMER | 35023 |
| 175 | STEWART, Michael J. <br> STEWART, Linda B. (Michael Stewart with POA) | 816 PEBBLE LN | BESSEMER | 35023 |
| 176 | STEWART, Charles Edgar <br> STEWART, Patricia Gail | 7533 15TH STREET RD | BESSEMER | 35023 |
| 177 | STRINGER, Garry A. | 208 OAK CIR | BESSEMER | 35023 |
| 178 | SUNDBERG, James M. | 1524 DOGWOOD CT | BESSEMER | 35023 |
| 179 | SUNDBERG, James M. <br> SUNDBERG, Emily Darlene | 1520 DOGWOOD CT | BESSEMER | 35023 |
| 180 | SWINDLE, David Earl <br> SWINDLE, Patricia Ann | 1608 CREST DR | BESSEMER | 35023 |
| 181 | TATE, Stephen Graham (Trustee) <br> TATE, Carol Lee (Trustee) | 1732 WHITE DR | BESSEMER | 35023 |
| 182 | TATE, Carol L. | 1184 SUNNY DELL LN | BESSEMER | 35023 |
| 183 | FOSTER, Ashley I. <br> TATE, Carol L. | 1111 SUNNY DELL CIR | BESSEMER | 35023 |
| 184 | DISMISSED | | | |

\* No Easement

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | | | | |
|---|---|---|---|---|
| 185 | TODD, Austin R.<br>TODD, Teenie D. | 6318 AMICK LN | HUEYTOWN | 35023 |
| 186 | TODD, Ricky W.<br>TODD, Sandra Renee | 1347 WHITE DR | BESSEMER | 35023 |
| 187 | TRUETT, Noah Terrell<br>TRUETT, Courtney A. | 1012 FOREST CIR | HUEYTOWN | 35023 |
| 188 | UPTON, Jerome | 6400 WHITE CT | BESSEMER | 35023 |
| 189 | WADE, Raymond E.<br>WADE, Velma S. | 1400 WARRIOR DR | HUEYTOWN | 35023 |
| 190 | WESTON, Betty J.<br>WESTON, Barry | 228 MASTERS RD | BESSEMER | 35023 |
| 191 | BROWN, Jerry W.<br>WADSWORTH, L.V. | 1100 PHILLIPS LN | BESSEMER | 35023 |
| 192 | WAID, Lennis J. | 5992 WATTERS DR | BESSEMER | 35023 |
| 193 | WAID, Lennis J.<br>HICKS, Timothy<br>HICKS, Wanda | 1428 LILLY LN | BESSEMER | 35023 |
| 194 | WALLACE, Linda Ann Kissinger | 1621 OLD ROCK CREEK RD | HUEYTOWN | 35023 |
| 195 | WALLACE, Linda K. | 3122 ALLISON BONNETT DR | BESSEMER | 35023 |
| 196 | WARD, John Ernest<br>WARD, Sherry D. | 107 HAZEL DR | HUEYTOWN | 35023 |
| 197 | WHEAT, Jeffrey A. | 500 TERRILL DR | BESSEMER | 35023 |
| 198 | WILLIAMS, Tony Charles<br>WILLIAMS, Dawn Marie P. | 7019 WARRIOR RIVER RD | BESSEMER | 35023 |
| 199 | WILLIAMS, Linda L. | 7183 WARRIOR RIVER RD | BESSEMER | 35023 |
| 200 | WILLIAMS, Linda T.<br>WILLIAMS, Tony C.<br>WILLIAMS, Dawn P. | 7038 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 201 | WILSON, Gladys | 110 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 202 | YOUNG, Michael B. | 3535 WARRIOR RIVER RD | BESSEMER | 35023 |
| 203 | YOUNG, Michael B. | 5624 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 204 | YOUNG, James H. Jr.<br>YOUNG Debbie | 1598 ARCADE TER | BESSEMER | 35023 |
| 205 | YOUNG, Debra Pate<br>YOUNG, James H. Jr.<br>KING, Jason<br>KING, Kaci | 1600 ARCADE TER | BESSEMER | 35023 |

\* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | Named Plaintiff | Property Address | Property City | Property Zip Code |
|---|---|---|---|---|
| 301 | SEE PLAINTIFF # 1 | | | |
| 302 | ANDERSON, David ANDERSON, Sharon | 178 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 303 | CAIN, James L. Sr. CAIN, Linda E. | 518 GAY RD | HUEYTOWN | 35023 |
| 304 | BROOKS, Betty | 1060 NORMANDALE CIR | HUEYTOWN | 35023 |
| 305 | BROWN, Norman *(John S. Brown as Personal Representative of Estate of)* | *1565 LILLY LN | BESSEMER | 35023 |
| 306 | BRUNER, Phillip C. | 5650 SMITH RD | BESSEMER | 35023 |
| 307 | CARNES, Albert Randall | 501 TERRILL DR | BESSEMER | 35023 |
| 308 | CHAFIN, Freida Pierce | 113 MAGNOLIA LN | BESSEMER | 35023 |
| 309 | ESARY, D. L. *(Linda Childress as Executrix of the Estate of)* | *1557 LILLY LN | BESSEMER | 35023 |
| 310 | CLEMONS, Don Ross | 918 PINE HAVEN DR | BESSEMER | 35023 |
| 311 | DABBS, Michael Thomas | 115 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 312 | DABBS, Michael Thomas | 111 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 313 | EARLEY, Ronald A. EARLEY, Gail S. *(Individually and as Personal Representative of Edith Stelman)* | 1451 DOGWOOD LN | BESSEMER | 35023 |
| 314 | EARNEST, Helen H. EARNEST, Frederick C. | 5651 SMITH RD | HUEYTOWN | 35023 |
| 315 | GOLSON, Herbert H. GOLSON, Sally | 200 OAK CIR | BESSEMER | 35023 |
| 316 | GOSA, Mary Pearl *(Individually and as Executrix of the Estate of Quintilla Gosa, deceased)* | 958 GOSA TOWN RD | BESSEMER | 35023 |
| 317 | GOSA, Mary *(Individually and as Executrix of the Estate of Quintilla Gosa, deceased)* | 965 GOSA TOWN RD | BESSEMER | 35023 |
| 318 | GUYTON, Mary Diane GUYTON, Randy | 112 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 319 | GWIN, Kelli A. | 6020 GWIN CIR | HUEYTOWN | 35023 |
| 320 | HAGOOD, Larry HAGOOD, Betty *(Individually and as Trustees under the Hagood Living Trust)* | 1486 DOGWOOD LN | BESSEMER | 35023 |
| 321 | HOLMAN, Robert HOLMAN, Patricia H. HOLMAN, Mark R. | 1059 NORMANDALE CIR | BESSEMER | 35023 |
| 322 | KILLOUGH, E. Terry KILLOUGH, Helen M. | 1235 NORTH CHURCH RD | BESSEMER | 35023 |
| 323 | KNIGHT, Lindi Shoults | 185 CONCORD HIGHLAND DR | BESSEMER | 35023 |
| 324 | NABORS, Harvey M. | 101 BEASLEY DR | BESSEMER | 35023 |
| 325 | OGDEN, George William | 5620 SMITH RD | BESSEMER | 35023 |

* No Easement

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| 326 | OGDEN, George William | 5626 SMITH RD | BESSEMER | 35023 |
|---|---|---|---|---|
| 327 | OGDEN, George W. WILLIS, Daniel | 5607 EASY ST | BESSEMER | 35023 |
| 328 | Steve Tate Properties LLC c/o Steve Tate | 1365 ROCK CREEK RD | BESSEMER | 35023 |
| 329 | Steve Tate Properties LLC c/o Steve Tate | 1371 ROCK CREEK RD | BESSEMER | 35023 |
| 330 | Steve Tate Properties LLC c/o Steve Tate | 1632 GILLIES DR | BESSEMER | 35023 |
| 331 | UPTON, Jerome | 3270 ALLISON BONNETT DR | BESSEMER | 35023 |
| 332 | UPTON, Jerome | 118 BEAVER ST | BESSEMER | 35023 |
| 333 | WADE, Raymond E. WADE, Velma S. | 216 VENUS CIR | HUEYTOWN | 35023 |
| 334 | WESTON, Barry M. WESTON, Betty Jean | 1571 ARCADE TER | BESSEMER | 35023 |
| 335 | WESTON, Barry Martin WESTON, Betty Jean | 232 MASTERS RD | HUEYTOWN | 35023 |
| 336 | WESTON, Barry M. WESTON, Betty Jean | 5636 EASY ST | BESSEMER | 35023 |
| 337 | WAID, Lennis J. | 1430 LILLY LN | BESSEMER | 35023 |
| 338 | WHEAT, Jeff A. WHEAT, Terrie | 512 TERRILL DR | BESSEMER | 35023 |
| 339 | WILLIAMS, Tony | 6901 WARRIOR RIVER RD | BESSEMER | 35023 |
| 340 | YOUNG, Michael B. MITCHELL, Amy | 9539 WARRIOR RIVER RD | HUEYTOWN | 35023 |

* No Easement

UNOFFICIAL DOCUMENT

Exhibit A

DOCUMENT 1031

## EXHIBIT A (PLAINTIFFS AND PROPERTY ADDRESSES)

| | Client Names | Property Address | Property City | Property Zip Code |
|---|---|---|---|---|
| 401 | BLAKE, Danny | *190 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| 402 | BROOKS, Lawrence E.<br>BROOKS, Virginia<br>BROOKS, Lawrence Jr | *7400 FRANKLIN DR | BESSEMER | 35023 |
| 403 | DAVIDSON, Tracey<br>DAVIDSON, Wanda | *5618 EASY ST | BESSEMER | 35023 |
| 404 | HALL, Wesley<br>HALL, Kristie | 8465 WOODVIEW LN | BESSEMER | 35023 |
| 405 | HOYT, Christina | *117 FOUST AVE | HUEYTOWN | 35023 |
| 406 | JORDAN, David<br>JORDAN, Crystal | *229 PINE ST | BESSEMER | 35022 |
| 407 | LAIRD, Stephanie | *1013 PINEWOOD AVE | BESSEMER | 35023 |
| 408 | LEE, Russell<br>LEE, Pamela | *15 SHERROD DR | BESSEMER | 35023 |
| 409 | McDOUGAL, Wesley<br>McDOUGAL, Carla | *1590 ARCADE TER | BESSEMER | 35023 |
| 410 | MURPHREE, Margaret, *as Exacutrix of the Estate of Stansell Manchen* | *1490 LILLY LN | BESSEMER | 35023 |
| 411 | OGDEN, Laura Willis | 3298 ALLISON BONNETT DR | BESSEMER | 35023 |
| 412 | PATTERSON, Jo B. | *534 GAY RD | BESSEMER | 35023 |
| 413 | SMITH, Michael<br>SMITH, Linda<br>SMITH, Dennis | *102 CEDAR ST | BESSEMER | 35023 |
| 414 | THRASHER, Eugene<br>THRASHER, Shirley | 1458 LILLY LN | BESSEMER | 35023 |
| 415 | THRASHER, Kyle | *3451 WARRIOR RIVER ROAD | BESSEMER | 35023 |
| 416 | UPTON, Michael<br>UPTON, Sarabeth | 1280 NORTH CHURCH RD | BESSEMER | 35023 |
| 417 | VINES, George | *7120 WARRIOR RIVER RD | HUEYTOWN | 35023 |
| 418 | ROBERTS, Tommy | 102 JONES AVE | HUEYTOWN | 35023 |
| 419 | ROBERTS, Tommy | 2408 15TH STREET RD | BESSEMER | 35023 |
| 420 | CAPPS, Holly | *1567 ARCADE TER | BESSEMER | 35023 |

### Additional Plaintiffs

| | | | | |
|---|---|---|---|---|
| | ROBERTS, Sylvia (Cobern) | 102 JONES AVE,<br>2408 15TH ST. ROAD | HUEYTOWN<br>BESSEMER | 35023<br>35023 |
| | ROBERTSON (Blake) Jessica | *190 CONCORD HIGHLAND DR | HUEYTOWN | 35023 |
| | HORTON, William | *3416 WARRIOR RIVER ROAD | HUEYTOWN | 35023 |
| | WILLIS Daniel R. | 5630 SMITH ROAD | HUEYTOWN | 35203 |
| | STEWART, Charles Jr.<br>STEWART, Cynthia | *7539 15th Street Rd | BESSEMER | 35203 |

* No Easement

Exhibit A

I, Karen Dunn Burks, as clerk of the Circuit Court, Tenth Judicial Circuit of Alabama, Bessemer Division, do hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in said Court.

Witness my hand and the seal of said Court, this the _____ day of _____ 20___

_____ Clerk

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MISSION COAL COMPANY, LLC, *et al.*,[1] | ) | Case No. 18-04177-TOM11 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER (I) APPROVING THE SALE OF THE ACQUIRED ASSETS FREE AND CLEAR OF CLAIMS, LIENS, INTERESTS AND ENCUMBRANCES; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF[2]

This case came before the Court for a hearing starting on April 3, 2019[3] on Debtors' motion [Docket No. 393] (the "Motion"),[4] dated December 5, 2018, for, among other things, entry of an order (the "Order") (I) approving the sale of all, substantially all, or any combination of the Debtors' assets free and clear of all claims, liens, interests and encumbrances; (II) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") and the assumption of the Assumed Liabilities, each as more fully described and defined in the Motion; and (III) granting related relief; the hearing having been held to approve the sale of certain of the Debtors' assets (the "Sale") pursuant to that certain Asset Purchase Agreement, a copy of which is attached hereto as Exhibit A and incorporated

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Company, LLC (8465); Beard Pinnacle, LLC (0637); Oak Grove Land Company, LLC (6068); Oak Grove Resources, LLC (0300); Pinnacle Land Company, LLC (6070); Pinnacle Mining Company, LLC (7780); Seminole Alabama Mining Complex, LLC (6631); Seminole Coal Resources, LLC (1795); Seminole West Virginia Mining Complex, LLC (7858); Seneca Coal Resources, LLC (1816); and Seneca North American Coal, LLC (5102). The location of the Debtors' service address is: 7 Sheridan Square, Suite 300, Kingsport, Tennessee 37660.

[2] This Order, originally submitted by Debtors' counsel, has been modified by this Court.

[3] The Sale Hearing continued for several days and concluded on April 10, 2019.

[4] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order (as defined below), or the Asset Purchase Agreement (as defined below) as applicable.

1

Exhibit B

herein (as amended, the "APA"); and the Court having reviewed and considered the relief sought in the Motion, the testimony and evidence presented, the declaration of Robert D. Moore (the "Moore Declaration") submitted in support of the Motion, all objections to the Motion, and the arguments of counsel made, at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and upon the record of the Sale Hearing and these Chapter 11 Cases, the Court finds and concludes as follows:[5]

**<u>Introduction</u>**  As this Court previously noted on the record in a memorandum opinion on another matter, the Court recognizes the significant impact that its ruling on the Motion will have on multiple stake holders in these Chapter 11 cases.  When businesses as large as these file bankruptcy cases, the outcome of many issues in the cases will affect multiple parties including creditors, employees, and even the communities where the businesses are located.  This case, like many Chapter 11 cases, require the Court to hear testimony, review evidence, listen to arguments, consider the pleadings and evaluate the credibility of witnesses. There are often, as in this matter before the Court, multiple strenuous objections to the relief sought. The Court must view the totality of the facts and the circumstances and weigh the benefits and detriments of the relief sought and the objections.  In this case, as to this matter, the answer is neither simple nor

---

[5]  The findings and conclusions set forth in this Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  Furthermore, any findings of fact or conclusions of law made by the Court on the record at the close of the Sale Hearing are incorporated herein.

2

easy, but the Court must find what is the best answer based on what has been presented to it at this time. During this lengthy hearing, counsel worked diligently to present the facts and evidence to the Court and, as also previously noted in this case, the remaining dilemma facing this Court is straightforward. The Court must decide whether to rule in a manner that results in the mines being shut down and closed, or rule in a manner that, in the hopes that a new owner, new management, the potential investment of capital, or other changes, will allow the mines to continue operating, the miners to keep valuable jobs, and the miners to benefit as the mines become more profitable.

A. **Jurisdiction and Venue**. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157, 1334 and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984[6] and may enter a final order on the Motion consistent with Article III of the United States Constitution. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 363 and 365. Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, and 9014.

C. **Bidding Procedures**. On December 21, 2018, the Court entered an order [Docket No. 490] (the "Bidding Procedures Order"), which, among other things, (i) approved the Bidding Procedures for the sale of the Debtors' assets, (ii) approved the Assumption and Assignment Procedures, (iii) approved the form and manner of notice thereof, and (iv) granted related relief.

---

[6]  The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
    The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

3

Exhibit B

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document    Page 17 of 52

The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Acquired Assets. The Debtors and their professionals marketed the Acquired Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order. In addition, the Consultation Parties acted at all times in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order. Based upon the record of these proceedings, creditors and other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Acquired Assets.

       D.    **Business Justification**.

          1.      The Debtors have articulated good and sufficient business reasons for the Court to authorize (a) the Debtors' entry into the APA and consummation of the Sale of the Acquired Assets (as defined in the APA) to the Buyer or any Buyer Designee (each as defined in the APA) and (b) the assumption and assignment of the Assumed Contracts and Assumed Liabilities as set forth herein and in the APA. Entry into the APA, consummation of the Sale and assumption of the Assumed Contracts and Assumed Liabilities constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

          2.      Additionally: (a) the Debtors conducted a robust marketing process to sell the Assets and the APA constitutes the highest or otherwise best offer for the Acquired Assets; (b) the Bidding Procedures utilized were designed to yield the highest or otherwise best bids for the Assets; (c) the APA and the closing of the Sale will present the best opportunity to realize the value of the Acquired Assets and avoid further decline and devaluation of the Acquired Assets;

Exhibit B

(d) there is risk of deterioration of the value of the Acquired Assets if the Sale is not consummated promptly; and (e) the APA and the Sale of the Acquired Assets to the Buyer will provide greater value to the Debtors' estates than would be provided by any other presently available alternative. Good and sufficient reasons for approval of the APA and the Sale have been articulated by the Debtors and supported by the credible and persuasive testimony of the witnesses at the Sale Hearing. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose for the Sale pursuant to Bankruptcy Code section 363(b), in that, among other things, the immediate consummation of the Sale is necessary and appropriate to maximize the value of the Debtors' estates. To maximize the value of the Acquired Assets and preserve the viability of the operations to which the Acquired Assets relate, it is essential that the Sale occur within the time constraints set forth in the APA. Time is of the essence in consummating the Sale.

E. **Notice**. As evidenced by the affidavits of service [Docket Nos. 507, 528, 529, 544, 550, 554] and publication [Docket No. 520] previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts and the applicable Cure Costs has been provided in compliance with the Bidding Procedures Order and in accordance with Bankruptcy Code sections 102(1), 363, and 365, and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007 and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assumed Contracts or the Cure Costs is or shall be required. With respect to entities whose identities were not reasonably ascertained by the Debtors, publication of the Sale Notice was made in *USA Today* and *The Birmingham News* on December 27, 2018, and December 28, 2018, respectively. Such

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 19 of 52

notice was sufficient and reasonably calculated under the circumstances to reach all known and unknown entities.

F.     **Auction**. An Auction for the Acquired Assets began on February 27, 2019 at the offices of Kirkland & Ellis LLP, co-counsel to the Debtors, at 601 Lexington Avenue, New York, New York 10022, and continued telephonically on March 1, 2019. As of the Bid Deadline, the Debtors did not receive any bids for the Oak Grove mining assets or any bids for the Debtors' combined assets that the Debtors deemed higher and better than the Opening Bidder's Proposed Agreement. As a result, the Debtors continued the Auction for Oak Grove and any combined bids for Oak Grove, Maple Eagle, and Seminole mining complexes to permit the Debtors to negotiate and consider bids for the Acquired Assets. On March 27, 2019, the Debtors docketed the Notice of Successful Bids [Docket No. 1120] pursuant to which they notified parties in interest that the Buyer was the highest and best bidder for the Acquired Assets. The Debtors and their professionals conducted (i) the Auction and the sale process at arm's length and in compliance with the Bidding Procedures Order, and afforded potential purchasers a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer for the Acquired Assets than that reflected in the APA, and (ii) the sale process (including the Auction) was conducted without collusion and in accordance with the Bidding Procedures. All bidders who participated in the Auction acted in good faith, did not engage in collusion, and acted in accordance with the Bidding Procedures. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets. After the conclusion of the Auction, the Debtors determined in a valid and sound exercise of their business judgment that the highest or otherwise best Qualified Bid for the Acquired Assets was that of the Buyer.

Exhibit B

**G.** **Acquired Assets Property of Debtors' Estates**. The Acquired Assets to be transferred and/or assigned, as applicable, by the Debtors to the Buyer pursuant to the APA are property of the Debtors' estates and title thereto is vested in the Debtors' estates. Subject to the entry of this Order, the Debtors: (i) have full power and authority to execute the APA and all other documents contemplated thereby; (ii) have all of the power and authority necessary to consummate the transactions contemplated by the APA; and (iii) have taken all corporate action necessary to authorize and approve the APA and the Sale of the Acquired Assets, and all other actions required to be performed by the Debtors in order to consummate the transactions contemplated in the APA. No consents or approvals, other than those expressly provided for in the APA or this Order, are required for the Debtors to consummate the Sale of the Acquired Assets.

**H.** **Good Faith Purchaser**. The Debtors' marketing process with respect to the Sale afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer. The APA constitutes the highest and best offer and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The consideration provided by the Buyer for the Acquired Assets under the APA is fair and reasonable and constitutes reasonably equivalent value, fair saleable value, and fair value for the Debtors' assets, and was not the result of collusion or any agreement among potential bidders. The Debtors' determination that the APA constitutes the highest and best offer was established by the Debtors' witnesses at the Sale Hearing and constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the APA and the consummation of the Sale is in the best interests of the Debtors' estates, their creditors, and other parties in interest. Neither the Debtors nor the Buyer engaged in any conduct that would cause or permit the APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 21 of 52

The APA was negotiated and is undertaken by the Debtors and the Buyer (and their respective affiliates or representatives) at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). The Buyer is not an "insider" of any of the Debtors as that term is defined by Bankruptcy Code section 101(31). The Buyer has not violated Bankruptcy Code section 363(n) by any action or inaction, and no common identity of directors or controlling stockholders exists between the Buyer and the Debtors. As a result of the foregoing, the Buyer is entitled to the protections of Bankruptcy Code section 363(m), including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the proceeding.

I. **Highest or Otherwise Best Offer**. The testimony of the Debtors' witnesses reflects that the total consideration provided by the Buyer for the Acquired Assets is the highest or otherwise best offer received by the Debtors, and the Purchase Price constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable laws, and may not be avoided under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. The cash consideration provided by the Buyer constitutes reasonably equivalent value for the assets that are being purchased with such cash consideration. The consideration being paid by the Buyer includes, but is not necessarily limited to, the DIP Lender Notes,[7] issued by Murray Metallurgical Coal Holdings, LLC, secured by substantially all of its assets, and guaranteed by all of its direct and indirect subsidiaries. Buyer and each DIP Lender acknowledges and agrees that the principal amount of any DIP Lender Note is subject to

---

[7] For the avoidance of doubt, the term "DIP Lender Notes" shall be defined, for purposes of this Order, to be the final form of the DIP Lender Notes, which shall be in form and substance reasonably satisfactory to the DIP Lenders, the Buyer, and the Debtors.

Exhibit B
Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 22 of 52

adjustment pursuant to the provisions of the APA. The DIP Lender Notes are valid, binding, enforceable, extended in good faith and the liens and claims granted therein may not be avoided under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable laws. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater economic value to the Debtors than the Buyer. The Debtors' determination that the APA constitutes the highest or otherwise best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment. The Court's approval of the Motion, the Sale and the APA is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

J.     **Free and Clear**.

1.     The Buyer would not have entered into the APA and would not consummate the Sale if the sale of the Acquired Assets to the Buyer were not free and clear of all claims (as defined in Bankruptcy Code section 101(5)), liens, obligations, liabilities, contractual commitments, interests and encumbrances (other than Permitted Encumbrances and Assumed Liabilities) pursuant to Bankruptcy Code section 363(f) or if the Buyer would, or in the future could, be liable for any of such claims, liens, interests and encumbrances, including, for the avoidance of doubt, any and all claims asserted by L. Waid and other Waid Claimants (the "Waid Claimants") in these Chapter 11 Cases.    For the voidance of doubt, and as part of the determination that the Sale is "free and clear" of any and all claims asserted by the Waid Claimants, any and all such claims shall be deemed general unsecured claims, and the only source of recovery on account of any such claims shall be the applicable recovery provided to general unsecured creditors pursuant to a plan of reorganization or plan of liquidation for the Debtors. Unless

Exhibit B

expressly included in the Assumed Liabilities and Permitted Encumbrances, the Buyer shall not be responsible for any claims, liens, interests and encumbrances, including in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust and security interests; (c) any intercompany loans and receivables between one or more of the Sellers and any Debtor; (d) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (e) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "COBRA"), (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§9701, *et seq.* or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (f) any liabilities arising under any Environmental, Health and Safety Laws (as defined in the APA) with respect to any assets owned or operated by any of the Debtors or any corporate predecessor

of any of the Debtors at any time prior to the Closing Date; (g) any bulk sales or similar law; (h) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (i) the Coal Act; and (j) any Excluded Liabilities. There is no better available alternative for the Acquired Assets than the Sale to the Buyer.

2.     The Debtors may sell the Acquired Assets free and clear of all claims, liens, interests and encumbrances (other than Assumed Liabilities and Permitted Encumbrances) because, with respect to each creditor asserting a claim, lien, interest or encumbrance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of claims, liens, interests or encumbrances who did not object or who withdrew their objections to the Sale of the Acquired Assets or the Motion are deemed to have consented to the Motion and the Sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of claims, liens, interests or encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected.  Notwithstanding the foregoing, the Acquired Assets are being sold subject to the Permitted Encumbrances and the Assumed Liabilities.

3.     Neither the Debtors nor the Buyer engaged in any conduct that would cause or permit the APA or the consummation of the Sale of the Acquired Assets to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

4.     The APA and the consideration payable by the Buyer pursuant to the APA constitutes reasonably equivalent value and fair consideration. The Sale of the Acquired Assets (including the consideration payable by the Buyer consisting of cash and the DIP Lender

11

Exhibit B

Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 25 of 52

Notes, among other things) is not being consummated for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Buyer has entered into the APA or is consummating the Sale of the Acquired Assets with any fraudulent or otherwise improper purpose.

5.     For the avoidance of doubt, following the Closing, the Acquired Assets shall be subject in all respects to the liens securing the DIP Lender Notes, to the extent provided by the documents governing the DIP Lender Notes.

**K.      No Successor Liability**. Other than as expressly set forth in this Order, the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, principals, directors, shareholders (or equivalent) will not and shall not be deemed or considered to (i) be legal successors to any of the Debtors or their estates; (ii) be a continuation, or substantial continuation, or hold themselves out as a mere continuation of the Debtors or their estates; (iii) have, de facto or otherwise, merged or consolidated with or into any of the Debtors or their estates; and (iv) have a common identity with the Debtors, in each case, by any theory of law or equity. There is no continuity of enterprise with the Debtors by any theory of law or equity. Unless expressly set forth in the APA, the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, principals, directors, shareholders (or equivalent), or the Acquired Assets shall have no (A) liability or responsibility for any claim against the Debtors and against an insider of the Debtors; (B) liability or responsibility with respect to any claims, liens, encumbrances, or other interests (except for the Permitted Encumbrances and Assumed Liabilities) or Excluded Liabilities and shall not be required to satisfy the same in any manner,

12

Exhibit B

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 26 of 52

whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (C) liability or responsibility to the Debtors except as is expressly set forth in the APA; or (D) successor, transferee, or vicarious liability of any kind or character whatsoever, including, without limitation, under any theory of foreign, federal, state, or local antitrust, criminal, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of Closing, whether now existing or hereafter arising, whether asserted or unasserted, or whether fixed or contingent, liquidated or unliquidated with respect to the Business, the Acquired Assets, the Debtors or any obligations of the Debtors arising prior to Closing. The Buyer would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

     **L.**    **Assumption and Assignment in Best Interests**. The Debtors have proven and demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts (as defined in the APA) to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts to the Buyer is in the best interests of the Debtors, their estates and creditors and all other parties in interest. The Assumed Contracts being assigned to the Buyer are an integral part of the Acquired Assets being purchased by the Buyer, and accordingly, such assumption and assignment of the Assumed Contracts is reasonable and enhances the value of the Debtors' estates.

     **M.**    **Cure Costs.** The cure costs required to be paid pursuant to Bankruptcy Code section 365(b), whether agreed or judicially resolved (the "Cure Costs"), and as set forth in the Debtors' *Notice to Contract Parties to Potentially Assumed and Assigned Executory Contracts and Unexpired Leases* [Docket No. 547] and the *Notice of Filing of an Amendment to the List of*

13

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document   Page 27 of 52

Exhibit B

*Potentially Assumed and Assigned Executory Contracts and Unexpired Leases* [Docket No. 769] (collectively, the "Original Assumption List"), are deemed to be the entire cure obligation due and owing under the Assumed Contracts under Bankruptcy Code section 365(b). To the extent that any non-Debtor counterparty to any of the Assumed Contracts failed to timely file an objection to any of the proposed Cure Costs filed with the Bankruptcy Court, the cure cost listed in the Cure Notice shall be deemed to be the entire cure obligation due and owing under any of the applicable Assumed Contracts. Each provision of the Assumed Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition or could be construed as prohibiting, restricting, or conditioning, assignment of any Assumed Contracts has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365. Upon the assignment to the Buyer and the payment of the relevant Cure Costs, each of the Assumed Contracts shall be deemed valid and binding and in full force and effect in accordance with its terms, and all defaults thereunder, if any, shall be deemed cured, subject to the provisions of this Order.

      **N.**     **Adequate Assurance**. The Buyer has demonstrated adequate assurance of future performance of all Assumed Contracts within the meaning of Bankruptcy Code section 365 by, among other things, filing with the Court an adequate assurance package, participating in the Sale Hearing, providing relevant and credible testimony, and providing the Moore Declaration.

      **O.**     **Corporate Structure of the Successful Bidder for the Oak Grove Mining Complex and Maple Eagle Mining Complex**. The corporate structure of the Buyer, its two direct subsidiary holding companies, Murray Alabama Coal, LLC and Murray Eagle Mining, LLC, and their three direct operating subsidiaries, Murray Oak Grove Coal, LLC, Murray Maple Eagle Coal, LLC and Murray Alabama Minerals, LLC (the "Winning Bidder Corporate Structure"), has been structured in good faith, and the Winning Bidder Corporate Structure and

all steps taken by the Buyer and the DIP Lenders in furtherance thereof, is in compliance with the Bankruptcy Code and all applicable law. Upon the Closing, the (i) corporate governance terms of the Winning Bidder Corporate Structure, (ii) the liens securing the DIP Lender Notes and (iii) all other steps taken by the Buyer and DIP Lenders in furtherance thereof and the Sale are valid, binding, enforceable, and in full force and effect.

P. **No Sub Rosa Plan**. The Sale does not constitute a *sub rosa* Chapter 11 plan. The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating plan of reorganization for any of the Debtors.

Q. **Opportunity to Object**.

1. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

2. Various parties filed multiple objections and reservations of rights regarding insufficient notice, uncertainty regarding compliance with certain non-bankruptcy laws, failure to protect valid liens, and failure to timely provide executed copies of the APA, among other things.

3. The Debtors' witnesses were cross-examined at length during the Sale Hearing by most of the objectors' counsel.

4. Some of the objecting creditors were not necessarily opposed to the sale but were opposed to confirmation of a plan as a condition of the sale, as well as to some of the proposed plan provisions. The objecting creditors[8] faced an uphill battle given that the testimony at the Sale Hearing made it clear that only a small number of bidders made bids for the Debtors' assets and that the Debtors have insufficient cash or reserves to fund a shortfall from

---

[8] Prior to and during most of the Sale Hearing the UCC was an active objector and vigorously questioned Debtors' witnesses. On the morning of the last day of the Sale Hearing, a settlement between the Debtors and the UCC was announced, which resolved its objections to sale and confirmation.

Exhibit B

the sale without additional funds from the DIP Lenders as well as from others. Furthermore, testimony established that the DIP Lenders required confirmation of a plan as a condition of their contribution that would allow a sale to go forward.

5. The sale and plan as proposed by Debtors will keep the mines open, will allow miners and other employees to keep their jobs, will give trade vendors that are interested an opportunity to do business with the new owners, and will allow businesses in the vicinity of the mines to continue benefitting from the on-going operation of the mines. Thus, a substantial number of stakeholders stand to benefit from the sale and confirmation of a plan.

6. The Debtors presented uncontroverted testimony from credible and knowledgeable witnesses that, without the sale and confirmation of a plan, the likely result would be closure of the mines and obvious detrimental consequences for all of the stakeholders as already noted.

7. To sustain the objections, and thereby not approve the sale and confirm a plan as proposed, would result in a substantial and significant risk that the mines will close.

8. A decision that the sale should not be approved would be wide-ranging in impact. The risks involved in not approving this sale are considerable, and are risks that this Court deems unacceptable in light of the testimony from the Sale Hearing and the lack of persuasive proof from the objecting creditors that they could obtain a better and more favorable result if the sale and confirmation of the plan as proposed, and as now before this Court, were denied.

9. During the Sale Hearing, no objecting creditor or other party presented any testimony or offered any witness sufficient to rebut the testimony of Debtors' witnesses. Further, no objecting creditor or other party provided evidence of a viable and reasonable

alternative to Debtors' sale and plan as now before this Court.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

1.      **Relief Granted**. The relief requested in the Motion is GRANTED, to the extent set forth herein.

2.      **Objections Overruled**. Any objection to the Motion, or any other relief granted in this Order, to the extent not settled, resolved, waived or withdrawn or previously overruled, and all reservations of rights included therein, is hereby overruled and denied on the merits with prejudice.

3.      **Notice**. Notice of the Motion, including without limitation, the transactions set forth in the APA and the assumption and assignment of the Assigned Contracts, the Auction and the Sale Hearing was fair and reasonable under the circumstances and complied with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, and 9007.

4.      **Approval of Bidding Procedures**. The Bidding Procedures utilized by the Debtors related to the APA and the Sale are hereby approved and ratified and were appropriate under the circumstances in order to maximize the value obtained from the Sale for the benefit of the estates.

5.      **Approval of Buyer's APA**. Pursuant to Bankruptcy Code sections 105, 363 and 365 and the APA, the Sale is hereby approved, and the Debtors are authorized to enter into and perform under the APA. Pursuant to Bankruptcy Code sections 105, 363 and 365, each of the Debtors and the Buyer are hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Sale and the closing of the Sale in accordance with the Motion, the APA and this Order; (b) assume and assign the Assumed Contracts; and (c)

17

perform, consummate, implement and close fully the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA (including, without limitation, the Buyer's issuance of the DIP Lender Notes). The Buyer and the Debtors shall have no obligation to close the Sale except as is contemplated and provided for in the APA, the Bidding Procedures and this Order.

6. **Assumption and Assignment of Contracts**.

a. Pursuant to Bankruptcy Code section 365(f), notwithstanding any provision of any of the Assumed Contracts or applicable non-bankruptcy law that prohibits, restricts or conditions the assignment of the Assumed Contracts, the Debtors are authorized to assume the Assumed Contracts and to assign the Assumed Contracts to the Buyer, which assignment shall take place on and be effective as of the Closing or as otherwise provided by order of this Court. There shall be no accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or assigns or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

b. If the Buyer seeks to assume any contract or unexpired lease not on the Debtors' Original Assumption List, exclude any contract or unexpired lease not on the Debtors' Original Assumption List, or otherwise modify the Cure Cost associated with any contract or unexpired lease previously on the Debtors' Original Assumption List, the Debtors, with the consent of the Buyer shall: (a) supplement the Original Assumption List with previously omitted Assumed Contracts in accordance with the APA; (b) remove any executory contracts and unexpired leases that the Buyer proposes be an Excluded Contract; and/or (c) modify the previously stated Cure Cost associated with any Assumed Contracts (a "Supplemental Assumed Contracts Schedule"). In the event that the Debtors and the Buyer exercise any of the rights reserved above, the Debtors

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document    Page 32 of 52

will serve a Supplemental Cure Notice by electronic transmission, hand delivery, or overnight mail on the applicable Contract Counterparty and its attorney, if known, to each impacted Assumed Contract at the last known address available to the Debtors as set forth in the Bidding Procedures Order. Any contract counterparty listed on a Supplemental Assumed Contracts Schedule may file a supplemental assumed contract objection only if such objection is to the proposed assumption and assignment of the applicable Assumed Contract or the proposed Cure Costs, if any. All Supplemental Assigned Contract Objections must: (a) state with specificity the legal and factual basis thereof as well as what Cure Costs the objecting party believes are required, if any; (b) include appropriate documentation in support of the objection; and (c) be filed and served on the Objection Recipients (as defined in the Bidding Procedures Order) no later than 4:00 p.m. (prevailing Central Time) on the date that (i) fourteen days from the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "Supplemental Assigned Contract Objection Deadline").

      c. The Debtors' assumption of the Assumed Contracts is subject to the consummation of the Sale. Upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assumed Contract. The Debtors shall cooperate with, and take all actions reasonably requested by, Buyer to effectuate the foregoing, as further provided in the APA.

      d. If a Contract Counterparty files a timely objection to the Supplemental Assumed Contracts Schedule in a manner that is consistent with the requirements set forth herein, and the parties are unable to consensually resolve the dispute, the Debtors will seek a hearing to determine the Cure Costs, if any, and approve the assumption of the relevant Assumed Contracts. If there is no such objection, then the Debtors will obtain entry of an order, including by filing a

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 33 of 52

certification of no objection, fixing the Cure Costs and approving the assumption of any Assumed Contract listed on a Supplemental Cure Notice.

e. If a counterparty timely objects to the Supplemental Assumed Contracts Schedule or objected to the Original Assumption List, and such objection is not resolved prior to the Closing Date to the mutual satisfaction of Buyer and the Debtors, then the Debtors, at the direction of the Buyer and subject to the provisions of the APA, shall elect either (i) not to assume such contract or (ii) postpone the assumption of such contract until the resolution of such objection pursuant to the terms of the APA. The postponement of the assumption and assignment of such contract shall be no later than the earlier of (A) the date on which such dispute has been resolved to the mutual satisfaction of the Buyer and the Debtors, (B) sixty days after the Closing Date, (C) the date on which such disputed contract is deemed rejected by operation of 11 U.S.C. § 365(d)(4), and (D) the date required by the Court and set forth in either the Bidding Procedures Order or this Order (the "Extended Contract Period"). If such disputed contract is not expressly assumed by the Buyer in writing by the end of such Extended Contract Period, such disputed contract shall be automatically deemed an Excluded Contract under the APA. Buyer shall be responsible for any obligations or Liabilities arising during any Extended Contract Period relating to any disputed contract that has not been assumed or rejected as of the termination date as provided in the APA. Except as set forth in the APA, the Buyer shall not assume or otherwise have any Liability with respect to any Excluded Contract, except with respect to any obligations or Liabilities arising during any Extended Contract Period relating to any disputed contract that has not been assumed or rejected as of the termination date as provided in the APA.

f. Except as otherwise provided herein, the Cure Costs are hereby fixed at the amounts set forth in the Debtors' Original Assumption List (or as otherwise agreed, in writing by

Exhibit B

Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document      Page 34 of 52

the Debtors, the Buyer, and the non-Debtor counterparties to such Assumed Contracts), and the non-Debtor counterparties to such Assumed Contracts are forever bound by such Cure Costs. Upon payment of such Cure Costs as provided for herein, the non-Debtor counterparties to such Assumed Contracts are hereby enjoined from taking any action against the Buyer or the Acquired Assets with respect to any claim for cure under any Assumed Contract. To the extent that any non-Debtor counterparty to any of the Assumed Contracts failed to timely file an objection to any of the proposed Cure Costs filed with the Bankruptcy Court, the cure cost listed in the Cure Notice shall be deemed to be the entire cure obligation due and owing under any of the applicable Assumed Contracts.

7.      **Adequate Assurance of Future Performance**. The Buyer has provided adequate assurance of its future performance under the Assumed Contracts within the meaning of Bankruptcy Code sections 365(b)(l)(C), and 365(f)(2)(B). All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied for all Assumed Contracts where the counterparty did not timely file an adequate assurance objection.  Further, compelling testimony was presented at the Sale Hearing that Buyer is an experienced mine operator, particularly of the kind of mines such as Oak Grove and Maple.  Based on the testimony, it is likely Murray will efficiently and successfully operate the mines if the sale closes and the plan is confirmed.

8.      **Anti-Assignment Provisions Unenforceable**. No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor party to such Assumed Contracts, (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a

Exhibit B

bankruptcy case, the financial condition of the Debtors or similar circumstances, (c) declare a breach or default as a result of a change in control in respect of the Debtors, or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts, or modification of any term or condition upon the assignment of an Assumed Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code. The entry of this Order constitutes the consent of the non-debtor parties to the Assumed Contracts to the assumption and assignment of the Assigned Contracts. Each of the Assumed Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the Buyer of the Cure Cost, if any, payable with respect to such Assumed Contract.

9. **No Fees for Assumption Assignment**. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or assigns or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

10. **Consummation of the Sale**. Upon the Closing: (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of all of the Debtors' rights, title and interest in the Acquired Assets to the Buyer free and clear of all Encumbrances and any Liability, other than the Assumed Liabilities and the encumbrances identified on Schedule 1 hereto (the "Permitted Encumbrances"); and (b) except as otherwise expressly provided in the APA, all Encumbrances and any Liability (other than the Assumed Liabilities and the Permitted Encumbrances) shall not be enforceable as against the Buyer or the Acquired Assets.

Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 36 of 52

11. **Free and Clear**.

a     Unless otherwise expressly included in the Assumed Liabilities and Permitted Encumbrances, the Buyer shall not be responsible for any claims, liens, interests and encumbrances, including in respect of the following: (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between one or more of the Sellers and any Debtor; (iv) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (A) ERISA, (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (G) the Americans with Disabilities Act of 1990, (H) COBRA, (I) state discrimination laws, (J) state unemployment compensation laws or any other similar state laws, (K) the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§9701, et seq. or (L) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (M) liabilities arising under any Environmental, Health and Safety Laws with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the Debtors at any time prior to the Closing Date; (vi) any bulk sales or similar law; (vii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (viii)

Exhibit B
Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document     Page 37 of 52

the Coal Act; (ix) any and all claims asserted by the Waid Claimants in these Chapter 11 Cases; and (x) any Excluded Liabilities. For the avoidance of doubt, and as part of the determination that the Sale is "free and clear" of any and all claims asserted by the Waid Claimants, any and all such claims shall be deemed general unsecured claims, and the only source of recovery on account of any such claims shall be the applicable recovery provided to general unsecured creditors pursuant to a plan of reorganization or plan of liquidation for the Debtors. A certified copy of this Order may be filed with the appropriate clerk and/or recorder to act to cancel any such lien, claim, interest or encumbrance of record. None of the Buyer or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the APA and the entry into and consummation of the Sale of the Acquired Assets, except as expressly provided in the APA and this Order.

    b. Except as expressly provided in the APA or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons, holding claims, liens, interests or encumbrances of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Acquired Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, the non-debtor party or parties to each of the Assumed Contracts, arising under or out of, in connection with, or in any

Exhibit B

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document   Page 38 of 52

way relating to, the Acquired Assets or the transfer of the Acquired Assets to the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims, liens, interests and encumbrances against the Buyer or its affiliates, successors, assigns, equity holders, employees or professionals the Acquired Assets, or the interests of the Debtors in such Acquired Assets. Following the Closing, no holder of a claim, lien, interest or encumbrance against the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such claim, lien, interest or encumbrance, and, except as otherwise provided in the APA or this Order, all such claims, liens, interests or encumbrances, if any, shall be, and hereby are transferred and attached to the proceeds from the Sale of the Acquired Assets in the order of their priority, with the same validity, force and effect which they have against such Acquired Assets as of the Closing, subject to any rights, claims and defenses that the Debtors' estate and Debtors, as applicable, may possess with respect thereto. All persons are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtors to transfer the Acquired Assets in accordance with the terms of the APA and this Order.

    c. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' rights, title and interest in the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Buyer on the Closing Date pursuant to the terms of the APA, free and clear of all claims, liens, interests and encumbrances (other than Assumed Liabilities and Permitted Encumbrances). This Order: (i) is and shall be effective as a determination that other than Permitted Encumbrances and Assumed Liabilities, all claims, liens, interests and encumbrances of any kind or nature whatsoever existing as to the Acquired Assets

Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 39 of 52

prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected and (ii) is and shall be binding upon and shall authorize all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets conveyed to the Buyer. Other than Permitted Encumbrances, all recorded claims, liens, interests and encumbrances against the Acquired Assets from their records, official and otherwise, shall be deemed stricken. For the avoidance of doubt, following the Closing, the Acquired Assets shall be subject in all respects to the liens securing the DIP Lender Notes, to the extent provided by the documents governing the DIP Lender Notes.

12. **Valid Transfer**. The transfer to the Buyer of the Debtors' rights, title and interest in the Acquired Assets pursuant to the APA shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' rights, title and interest in the Acquired Assets, and vests with or will vest in the Buyer all rights, title and interest of the Debtors in the Acquired Assets, free and clear of all claims, liens, interests and encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any such claims, liens, interests and encumbrances attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the Sale of the Acquired Assets, subject to the provisions of the APA, and any rights, claims and defenses of the Debtors and other parties in interest.

Exhibit B

13.     **Transferred Avoidance Actions**.  The Acquired Assets shall include all of the Debtors' non-insider claims and causes of action arising under Chapter 5 of the Bankruptcy Code not otherwise released pursuant to the Plan (the "Transferred Avoidance Actions").  The Buyer hereby agrees not to, and shall not, pursue any such Transferred Avoidance Actions.  The purchase of such Transferred Avoidance Actions by the Buyer shall not result in an increase in the purchase price, a purchase price deduction, or any such other price deduction.

14.     **Good Faith**. The APA has been entered into by the Debtors and the Buyer in good faith and the Buyer is a good faith purchaser of the Acquired Assets as that term is used in Bankruptcy Code section 363(m). The Buyer is entitled to all of the protections afforded by Bankruptcy Code section 363(m).

15.     **No Liability**. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale. Except as otherwise provided in the APA, no obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment is due to any person in connection with the APA, the other transaction documents or the transactions contemplated hereby or thereby for which the Buyer is or will become liable.

16.     **Consideration**. The consideration provided by the Buyer for the Acquired Assets under the APA (including the cash consideration and the equity interests being purchased by such cash consideration, and the DIP Lender Notes being issued by the Buyer (as may be adjusted pursuant to the terms of the APA)), shall be and hereby is deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale of the Acquired Assets may not be avoided, or costs or

damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

17. **No Successor Liability**. The Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, principals, directors, officers and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities. Upon the Closing, except as specifically included in Assumed Liabilities, the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) are not and shall not: (a) be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Debtors, including without limitation, with respect to any Collective Bargaining Agreement or Benefit Plan; (b) be the successor of or successor employer to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws; (c) have, *de facto*, or otherwise, merged or consolidated with or into Debtors; (d) be a mere continuation or substantial continuation of Debtors or the enterprise(s) of Debtors; or (e) be liable for any acts or omissions of Debtors in the conduct of the Business or arising under or related to the Acquired Assets other than as set forth in the APA. Without limiting the generality of the foregoing, and except as otherwise provided in the APA, the parties intend and the Court hereby orders that the Buyer shall not be liable for any encumbrance or liability (other than Assumed Liabilities and Permitted Encumbrances) against any of the Debtors, or any of each Debtor's predecessors or Affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing Date,

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 42 of 52

whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business, the Acquired Assets or any Liability of any of the Debtors arising prior to the Closing Date.

18. **Direction to Creditors**. If any person or entity which has filed statements or other documents or agreements evidencing liens, interests or encumbrances on, or claims in, the Acquired Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all claims, liens, interests or encumbrances (other than Permitted Encumbrances) which the person or entity has or may assert with respect to the Acquired Assets, the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

19. **Further Assurances**. All counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Debtors or the Buyer for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.

20. **Direction to Federal, State and Governmental Agencies**. Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale contemplated by the APA. All such entities described above in this

paragraph are authorized and specifically directed to strike all recorded liens against the Assets from their records.

21. **Licenses, Permits, Registrations**. To the extent provided in the APA and available under applicable law, the Buyer shall be and hereby is authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Assumed Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such licenses or permits of the Debtors shall remain in place for the Buyer's benefit until new licenses and permits are obtained. No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Acquired Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale of the Acquired Assets.

22. **Debtors' Reservation of Rights**. Except as expressly provided in the APA, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not one of the Acquired Assets. The Debtors shall have no liability to Buyer, any governmental agency, surety or any other person for any liabilities with respect to the Assumed Contracts and such Assumed Liabilities (which shall, for the avoidance of doubt,

Exhibit B
Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 44 of 52

include, among other things, all Assumed Liabilities arising under or relating to (x) any Environmental, Health and Safety Laws (as defined in the APA) and (y) the transferred permits and licenses, including such liabilities thereunder arising out of or relating to all reclamation liabilities). Further, the Sale is, and shall be treated for all purposes as, an absolute sale, conveyance and transfer of all liabilities relating to, in connection with, or arising under the Assumed Contracts and Assumed Liabilities except as expressly set forth in the APA.

23. **Use of Proceeds**. All proceeds and consideration received by the Debtors from the Sale shall be distributed pursuant to the terms of the *Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of its Debtor Affiliates* (as may be amended or supplemented from time to time, the "Plan").

24. **Surrender of Possession**. All entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

25. **No Modification by Plan**. This Order shall not be modified by any Chapter 11 plan confirmed in these Chapter 11 Cases.

26. **Binding Order**. This Order and the APA shall be binding in all respects upon all creditors and interest holders of the Debtors, all non-debtor parties to the Assumed Contracts, the Official Committee of Unsecured Creditors of Mission Coal Company, LLC, et al. (the "UCC"), their respective successors and permitted assigns, the Debtors and their affiliates and subsidiaries, their successors and assigns of and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Chapter 11 Cases or upon a conversion of the Debtors' cases to those under Chapter 7 of the Bankruptcy Code, including a Chapter 7 trustee, and this Order and the APA shall not be subject to rejection or avoidance under any circumstances. If any order

Exhibit B

under Bankruptcy Code section 1112 is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that this Order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on parties in interest.

27. **Failure to Specify Provisions**. The failure specifically to include or make reference to any particular provisions of the APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA and the related agreements are authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order. The provisions of this order are non-severable and mutually dependent.

28. **Amendments to Sale Documents**. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties thereto, with the consent of the Required DIP Lenders, in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby.

29. **Retention of Jurisdiction**. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (a) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the APA (and all related agreements), all amendments thereto and any waivers and consents thereunder; (b) protect the Buyer, or the Acquired Assets, from and against any of the claims, liens, interests or encumbrances; (c) compel delivery of all Acquired Assets to the Buyer; (d) compel the Buyer to

Case 18-04177-TOM11    Doc 1355    Filed 04/26/19    Entered 04/26/19 15:02:51    Desc
Case 18-04177-TOM11    Doc 1322    Filed 04/15/19    Entered 04/15/19 11:52:46    Desc
Main Document    Page 46 of 52

perform all of its obligations under the APA; and (e) resolve any disputes arising under or related to the APA, any related disputes or the Sale of the Acquired Assets.

30. **Governing Terms**. To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases related to the Motion, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

31. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rule 6004(h), the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry; (b) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

32. **Other Provisions**.

a. **Jefferson County Department of Health**. The Buyer shall pay timely and in the ordinary course of business any air permit fees owed to the Jefferson County Department of Health on account of periods subsequent to the Closing Date.

b. **IBNR Healthcare Claims**. Notwithstanding anything to the contrary in this Order, the Plan, the Plan Supplement, or any other Sale Transaction Documentation, and in addition to any other Claims payable under this Order, the Buyer shall assume all IBNR Claims (not to exceed, in the aggregate, $3,000,000 net of (i.e., in excess of) any other collateral posted in respect of IBNR Claims, and with respect to Pinnacle, not to exceed, in the aggregate,

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 47 of 52

$2,300,000 net of (i.e., in excess of) any collateral posted in respect of IBNR Claims associated with the Pinnacle Business (as defined in the APA) without a further purchase price reduction) and any other Claims owing under the Self-Funded Health Plans to the extent (i) such claims are due and payable pursuant to the terms of the applicable Self-Funded Health Plan, (ii) the proper documentation is provided, and (iii) such claims are not otherwise payable by stop loss insurance or Medicaid, Medicare, or any other payor. For the avoidance of doubt, the payment of such claims as described herein shall take place notwithstanding any limits imposed by the Plan or otherwise.

        c.   **Certain Government Matters**. Nothing in this Order or the APA shall release, impair, nullify, enjoin, or otherwise preclude the enforcement of any liability or obligation to, or any claim or cause of action by, a Governmental Unit under police or regulatory statutes or regulations to which any entity is subject as and to the extent that they are the owner, lessor, lessee, permittee, controller, or operator of real property or a mining operation after the date of entry of this Order (whether or not such liability, obligation, claim or cause of action is based in whole or in part on acts or omissions prior to the entry of this Order), including, but not limited to, liability for reclamation or water treatment pursuant to SMCRA or the CWA and similar state or tribal laws; except to the extent the Plan, the Plan Supplement, or any document relating to the Plan releases, discharges, or exculpates any of the Debtors from, or precludes or enjoins a Governmental Unit from pursuing or enforcing against the Debtors (i) any claims, obligations, or liabilities for costs expended or paid before the entry of this Order, or any penalties or fines owed for days of violations of police or regulatory statutes or regulations before the date of entry of this Order (which shall be treated as otherwise provided in the Plan); or (ii) any claims, obligations, or liabilities by or to a party that are resolved in a written agreement with a

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document      Page 48 of 52

Governmental Unit to which that party has agreed and only as to that party; provided, however, (A) that the Court retains jurisdiction to determine whether any liability identified in clause (i) of this paragraph to a Governmental Unit is discharged or otherwise barred by the Plan, the Plan Supplement, or any document relating to the Plan, this Order, or the Bankruptcy Code, and (B) that nothing herein shall subject the Buyer to any liability to a Governmental Unit for penalties for days of violation prior to Closing, response costs incurred by a Governmental Unit prior to Closing, or any liability relating to offsite disposal that occurred prior to Closing. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (1) license, (2) permit, (3) registration, (4) authorization, or (5) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable non-bankruptcy legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to adjudicate any defense asserted under this Order.

       d. **Waid Easements**. The "property of the estate" of the Debtors includes approximately 255 permanent, perpetual easements running with the land as more particularly described in Exhibit C to the Waid Claimant's Motion for Relief From Automatic Stay [Docket No. 691] (the "Waid Easements"). The Waid Easements are Acquired Assets under the APA that are conveyed to the Buyer free and clear of all liens, claims and encumbrances, and are irrevocable by any party. All claims arising under that certain settlement agreement, executed on December 16, 2016, between the Waid Claimants and the Debtors (the "Waid Settlement Agreement") shall be deemed general unsecured claims, and the only source of recovery on account of any such claims shall be the applicable recovery provided to general unsecured creditors pursuant to the Plan. To the extent the Waid Settlement Agreement is an executory

Exhibit B

contract under Bankruptcy Code section 365, such agreement shall be deemed rejected as of the date of entry of this Order and (i) the Buyer shall have no liability whatsoever in connection with the Waid Settlement Agreement and (ii) and the Debtors shall have no liability whatsoever in connection with the Waid Settlement Agreement other than with respect to any liability on account of general unsecured claims provided for under the Plan. The Waid Claimants shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Debtors or the Buyer for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.

     e. **Bay Point Lease**. Notwithstanding anything set forth in the Debtors' Proposed Settlement Term Sheet (the "Settlement Term Sheet") [Docket 1121], and in accordance with the *Confirmation Order (I) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Mission Coal Company and Certain of its Debtor Affiliates and (II) Granting Related Relief and (B) Occurrence of the Plan Effective Date* (the "Confirmation Order"), and the record set forth by counsel for the Sellers and the Buyers at the Sale Hearing, the Debtors shall not assume and assign to the Buyer the Master Equipment Lease Agreement, dated as of May 21, 2018, by and between Coking Coal Leasing, LLC ("CCL") and Oak Grove Resources, LLC with respect to certain shields set forth in the schedules thereto (the "Shields"), which shall be an Excluded Contract under the APA. Subsequent to the filing of the Settlement Term Sheet, CCL sold all of its right, title and interest in and to the Shields to Bay Point in a true sale. Bay Point is the sole and exclusive owner of the Shields as stipulated to by CCL and the Debtors. On or before closing of the Sale, the Buyer shall enter into a new Master

36

Exhibit B

Case 18-04177-TOM11   Doc 1355   Filed 04/26/19   Entered 04/26/19 15:02:51   Desc
Case 18-04177-TOM11   Doc 1322   Filed 04/15/19   Entered 04/15/19 11:52:46   Desc
Main Document   Page 50 of 52

Equipment Lease Agreement with Bay Point Capital Partners, L.P., in form and substance acceptable to the parties in their sole discretion (the "Bay Point Lease"), provided, that, the economic terms of the Bay Point Lease shall be the same as set forth in the Settlement Term Sheet. The Debtors' stipulations contained in this paragraph and the transfer of the Shields as outlined herein are conditioned upon entry of the Confirmation Order approving the Investigation Settlement.

f. **Anthem**. Notwithstanding anything to the contrary in this Order, the Plan, the Plan Supplement, or the Sale Transaction Documentation, and in addition to any other Claims payable thereunder, the Buyer shall assume the IBNR Liabilities (provided, that a purchase price reduction shall be made for estimated IBNR Liabilities at Closing that exceed, in the aggregate, $3,000,000 net of (i.e., in excess of) any collateral posted in respect of IBNR Liabilities, and with respect to Pinnacle that exceed, in the aggregate, $2,300,000 net of (i.e., in excess of) any collateral posted in respect of IBNR Liabilities associated with the Pinnacle Business (as defined in the APA)) and accrued and unpaid Liabilities due to HealthKeepers, Inc. and Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield (collectively, "Anthem") as an Ordinary Course Employment Liability or a Special Employment Liability, as applicable, and the Sellers shall include all such Liabilities in the statement setting forth the Special Employment Liabilities Amount.

g. **Certain Environmental Matters Pertaining to Non-Governmental Units**. Nothing in this Order or the APA shall release, impair, nullify, enjoin, or otherwise preclude the enforcement of any liability or obligation to, or any claim or cause of action by, a Governmental Unit under police or regulatory statutes or regulations to which any entity is subject as and to the extent that they are the owner, lessor, lessee, permittee, controller, or operator of real

Exhibit B

property or a mining operation after the date of entry of this Order (whether or not such liability, obligation, claim or cause of action is based in whole or in part on acts or omissions prior to the entry of this Order), including, but not limited to, liability for reclamation or water treatment pursuant to SMCRA or the CWA and similar state laws; except to the extent the Plan, the Plan Supplement, or any document relating to the Plan releases, discharges, or exculpates any of the Debtors from, or precludes or enjoins any entity from pursuing or enforcing against the Debtors any claims, obligations, or liabilities for costs expended or paid before the entry of this Order, or any penalties or fines owed for days of violations of police or regulatory statutes or regulations before the date of entry of this Order (which shall be treated as otherwise provided in the Plan); or any claims, obligations, or liabilities by or to a party that are resolved in a written agreement with a Governmental Unit to which that party has agreed and only as to that party; provided, however, (A) that the Court retains jurisdiction to determine whether any liability identified in clause (i) to a Governmental Unit is discharged or otherwise barred by the Plan, the Plan Supplement, or any document relating to the Plan, this Order, or the Bankruptcy Code, and (B) that nothing herein shall subject the Buyer to any liability to a Governmental Unit for penalties for days of violation prior to Closing, response costs incurred by a Governmental Unit prior to Closing, or any liability relating to offsite disposal that occurred prior to Closing. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (1) license, (2) permit, (3) registration, (4) authorization, or (5) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable non-bankruptcy legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to adjudicate any defense asserted under this Order.

Dated: April 15, 2019

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

Exhibit B