| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ) | |
| MISSION COAL WIND DOWN CO, LLC, et al. ) | Case No. 18-04177-TOM11 |
| ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |

**PLAN ADMINISTRATOR'S MOTION FOR ENFORCEMENT OF CONFIRMATION ORDER AND RELATED AGREEMENTS AGAINST BLUESTONE PARTIES**

Gilbert E. Nathan, in his capacity as the Plan Administrator (the "**Plan Administrator**") under the *Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of its Debtor Affiliates* [Docket No. 1310] (the "**Fourth Amended Plan**") filed by the Debtors,[1] by and through his undersigned counsel, and pursuant to Sections 105(a), 1141(a), and 1142(b) of the Bankruptcy Code, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure, and the Court's continuing jurisdiction over this case pursuant to 28 U.S.C. § 157(b)(2) and Paragraph OO, titled "Retention of Jurisdiction," of the *Order Confirming the Fourth Amended Joint Chapter 11 Plan of Mission Coal Company, LLC and Certain of its Debtor Affiliates* dated April 15, 2019 [Docket No. 1324] (the "**Confirmation Order**"), moves the Court to enforce against Bluestone Resources, Inc. ("**Bluestone Resources**") and Bluestone Oil Corp. ("**Bluestone Oil**" and together with Bluestone Resources, the "**Bluestone Parties**") certain mining permit and reclamation obligations

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mission Coal Wind Down Co, LLC (8465); Beard Pinn Wind Down Co, LLC (0637); OG Land Wind Down Co, LLC (6068); OG Resources Wind Down Co, LLC (0300); Pinn Land Wind Down Co, LLC (6070); Pinn MC Wind Down Co, LLC (7780); Sem AL MC Wind Down Co, LLC (6631); Seminole Coal Resources Wind Down Co, LLC (1795); Seminole WV MC Wind Down Co, LLC (7858); Seneca Coal Resources Wind Down Co, LLC (1816); and Sen NA Coal Wind Down Co, LLC (5102).

owed by the Bluestone Parties to the Debtors pursuant to that certain *Asset Purchase Agreement* (the "**Bluestone APA**") between Bluestone Resources and the Debtors, as incorporated into the Confirmation Order, and implemented by that certain *Contract Operator Agreement* (the "**Operator Agreement**") between the Bluestone Parties and the Debtors.

## BACKGROUND

1. Pursuant to Section 7.7(b) of the Bluestone APA,[2] which is dated April 4, 2019, Bluestone Resources agreed to, among other things, step into the Debtors' shoes by becoming the permittee, licensee, and/or holder of certain mining permits, licenses, approvals and/or authorizations[3] (the "**Permit Obligations**") previously issued by the West Virginia Department of

---

[2] A true and correct copy of the Bluestone APA is attached hereto as **Exhibit "A."**

[3] The permits are referred to in certain of the documents referenced herein as the "West Virginia Mining Permits," which are defined in Section 7.7(b)(ii)(1) of the APA as all "Transferred Permits" and all "General Permits" needed to engage in mining operations at particular locations in West Virginia. The "Transferred Permits" and "General Permits" are listed in Section 2.1(g) of the APA and may be summarized as follows:

Transferred Permits

| Article 3 Permits | Associated NPDES Permits | Associated UIC Permits | Associated Air Permits | Facility Name |
|---|---|---|---|---|
| O-0138-83 | WV009000 | | R13-10900006-2017 | Pinnacle Plant |
| U-0707-00 | WV009000 | | | Slope/Dump |
| O-4022-92 | WV009000 | | | Impoundment |
| E-002500 | WV009000 | | | GR1, GR2, NR pumps |
| U-0220-83 | WV0052531 | 0254-99-047; 0254-99-047; | | Maitland Ponds |

General Permits

| Article 3 Permits | Associated NPDES Permits | Associated UIC Permits | Associated Air Permits | Facility Name |
|---|---|---|---|---|
| O-4008-92 | WV009000 | | | Shafts/Borehole |
| O-4010-97 | WV009000 | | | Gob Gas Well Sites |
| U-0204-83 | WV009000 | 0236-99-047; 0492-02-109; 0492-02-109; 0492-02-109; 1245-08-109 | | 50 Mine & warehouse |

Environmental Protection (the "**D.E.P.**") to the Debtors with regard to the Pinnacle Mining Complex[4] (the "**Pinnacle Mine**"). Bluestone Resources further agreed to perform certain reclamation, revegetation, recontouring, abatement, control, remediation, and clean-up / prevention obligations owed by the Debtors with regard to the Pinnacle Mine (collectively, the "**Reclamation Obligations**").[5]

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Fourth Amended Plan.

[5] For support regarding the Permit Obligations owed by Bluestone Resources to the Debtors pursuant to the Bluestone APA, see Paragraph 7.7(b)(iii), which is titled "Acquired Assets in West Virginia," and provides, among other things, that:

> [Bluestone Resources] and the Sellers shall, and shall cause their Subsidiaries to, **(A) take all actions and do … all things necessary or desirable … to put in place, to transfer, to amend, or to acquire all Transferred Permits and Replacement Permits** … unless the applicable Legal Requirements regarding such a Permit require certain actions to be taken upon or after the Closing, and, in that event, [Bluestone Resources], **at [Bluestone Resources'] sole cost and expense from and after the Closing**, shall take, or cause its Subsidiaries to take, all actions and do … all things necessary or desirable … which can only be taken or done after the Closing to put in place, to transfer, to amend, or to acquire such remaining Permits as promptly as reasonably practicable after the Closing; and **(B) take all actions and do … all things necessary or desirable … to put in place with the West Virginia Surface Mine Board as promptly as commercially reasonably possible after the Closing, financial assurances necessary to (I) transfer the West Virginia Mining Permits that relate to Transferred Permits from the Sellers or (II) obtain the West Virginia Mining Permits that relate to Replacement Permits, and to obtain the release of the Sellers of the financial assurances previously placed by the Sellers with respect thereto …. From and after the Closing, [Bluestone Resources] shall use commercially reasonable efforts to pursue the transfer of the West Virginia Mining Permits or issuances of new West Virginia Mining Permits (including the Replacement Permits) to [Bluestone Resources] as promptly as possible** (emphasis added).

Also see Paragraph 7.7(b)(iii)(1) of the Bluestone APA, which provides, among other things, that:

> Subject to operating the Acquired Assets during the Interim Period … on and after the Commencement Date (as defined in the Operator Agreement [(i.e., the date on which the West Virginia DEP grants approval of the DM-19 with respect to the Operator Agreement)], **(A) [Bluestone Resources] shall operate under the West Virginia Mining Permits as the designated owner and/or operator and contract miner until the West Virginia Mining Permits are transferred or new Permits (including Replacement Permits) are issued to [Bluestone Resources] and (B) to the fullest extent allowed by and in accordance with the applicable Legal Requirements, the Sellers grant [Bluestone Resources] the right to conduct, at the sole cost and expense of [Bluestone Resources], mining operations following the Closing on the Real Property under the West Virginia Mining Permits as the designated operator until such time as the West Virginia Mining Permits are transferred to, or new Permits (including Replacement Permits) are issued to, [Bluestone Resources] (the "Interim Period")** … Notwithstanding anything to the contrary contained herein, **[Bluestone Resources] shall**

2. After the Fourth Amended Plan (which incorporated the terms of the Bluestone APA),[6] was confirmed by the Court pursuant to its Confirmation Order, the Debtors and the Bluestone Parties entered into the Operator Agreement,[7] dated April 30, 2019, for the purposes of, among other things, temporarily allowing the Bluestone Parties to mine, remove coal and profit from the Pinnacle Mine as the Operator under the Debtors' mining permits, facilitating the contemplated transfer of such mining permits to the Bluestone Parties (or the re-permitting by the Bluestone Parties), and further defining the scope of the Permit Obligations and the Reclamation Obligations owed by Bluestone Resources and Bluestone Oil to the Debtors. Specifically, the Operator Agreement provides that:

   a) Bluestone Oil is Bluestone Resources' designee (i.e., assignee) under the Bluestone APA, and that the Debtors desire for Bluestone Oil to become the permittee in place of the Debtors with respect to the permits issued by the D.E.P.;

---

**reimburse, indemnify and hold harmless the Sellers and/or their Affiliates from any and all Liabilities incurred by the Sellers and/or their Affiliates as a result of (I) activities or omissions of [Bluestone Resources] on the Real Property (or any other Acquired Asset) during the Interim Period or (II) any action taken by the Sellers at Buyer's or its Affiliates' request pursuant to this Section 7.7(b)(iii)** (emphasis added).

Also see Paragraph 7.7(b)(iii)(2) of the Bluestone APA, which provides, among other things, that:

During the Interim Period, **[Bluestone Resources], at all time prior to the transfer of the West Virginia Mining Permits and the obtaining of the Replacement Permits, shall (A) comply in all material respects with all Legal Requirements governing, and all conditions and requirements of, or pertaining to, any such West Virginia Mining Permits and (B) be solely responsible for all incidents of violation, non-compliance, and similar occurrences related to the West Virginia Mining Permits that arise during the Interim Period. Buyer shall promptly deliver to the Sellers written notice of any such incidents, violations or occurrences, which the Sellers and their Affiliates shall have the right, but not the obligation, to cure in the event Buyer fails to cure (including right of entry onto the applicable Real Property), and Buyer shall promptly reimburse the Sellers for the reasonable costs of any such cure** (emphasis added).

[6] Article I, Paragraph 22 of the Fourth Amended Plan, which is titled "Defined Terms," refers to the Bluestone APA as one of the "Bluestone Obligations."

[7] A true and correct copy of the Operator Agreement is attached hereto as **Exhibit "B."**

b) Although Bluestone Oil has filed paperwork with the D.E.P requesting a transfer of some but not all of the West Virginia Mining Permits and Replacement Permits from the Debtors to Bluestone Oil such that Bluestone Oil will become the permittee in place of the Debtors, the D.E.P. has not been able to approve the permit transfers that have been filed (this is due to multiple defaults, unabated violations, unpaid civil penalties, and delinquent reclamation and permit fees that the D.E.P has levied against the Bluestone Parties on other permits held or controlled by the Bluestone Parties that are unrelated to the Bluestone APA. While such permits transfers should typically take 3 to 6 months for the D.E.P to approve - with the transferee exerting commercially reasonable efforts - nearly 3.5 years have now passed without the permits being transferred solely due to the actions, inactions and defaults of the Bluestone Parties); and,

c) During the interim period between the date when Bluestone Oil requests that the D.E.P. transfer the permits and replace the Debtors with Bluestone Oil as the permittee, and the actual date when the transfers become effective and Bluestone Oil becomes the permittee, Bluestone Oil may operate the Pinnacle Mine in exchange for its agreement to "satisfy, perform and be responsible for all Liabilities, obligations, responsibilities, costs, expenses and requirements relating to the West Virginia Operator Assignment Permits and any mining and reclamation activities conducted thereunder."[8]

---

[8] For support regarding the Reclamation Obligations owed by Bluestone Oil to the Debtors pursuant to the Operator Agreement, see Paragraph 3, which is titled "Obligations of Transferee," and provides that:

> During the Transfer Period, [Bluestone Oil] shall operate the Pinnacle Complex and shall satisfy, perform and be responsible for all Liabilities, obligations, responsibilities, costs, expenses and requirements relating to the West Virginia Operator Assignment Permits and any mining and

3. Bluestone Oil's agreement to be responsible for the Debtors' Permit Obligations and Reclamation Obligations to the D.E.P. with regard to the Pinnacle Mine is consistent with the obligations that had already been assumed by Bluestone Resources (before it designated Bluestone Oil to take its place) pursuant to Section 2.3 of the Bluestone APA, which is titled "Assumed Liabilities," and provides that the Buyer (Bluestone Resources) and its designee (Bluestone Oil) shall: "assume and agree to discharge and perform when due … (a) all Liabilities under the Assumed Contracts … (c) all Liabilities for Reclamation pertaining to the Pinnacle Mine, other than Reclamation assumed by Contura …; [and], (e) all Liabilities of the [Debtors] with respect to the Transferred Permits or otherwise arising out of or relating to the Transferred Permits, including: (i) all Liabilities for Reclamation and, if applicable, post-mining and post-Gas Well operation Liabilities; (ii) compliance with performance obligations or standards under the Transferred Permits and associated Legal Requirements; and (iii) obligations to replace and/or increase bonds or other financial assurance instruments associated with the Transferred Permits."

4. Bluestone Oil has breached its Permit Obligations and Reclamation Obligations under the Bluestone APA and the Operator Agreement. Although it has actively mined and removed coal from the Pinnacle Mine (thereby greatly reducing the value of the asset), Bluestone

---

**reclamation activities** conducted thereunder, **including without limitation: (i) Reclamation, mitigation, and post-mining operation Liabilities associated with the West Virginia Operator Assignment Permits; (ii) compliance with performance obligations or standards under the West Virginia Operator Assignment Permits and associated Legal Requirements;** and (iii) asset retirement obligations of [Bluestone Oil] or obligations to maintain and/or replace bonds or other financial assurance instruments associated with the West Virginia Operator Assignment Permits. [Bluestone Oil] and Bluestone covenant and agree that all Liabilities relating to the West Virginia Operator Assignment Permits and all Liabilities arising out of or in connection with any act, omission or circumstance occurring **during the Transfer Period** shall be borne by [Bluestone Oil] and Bluestone and shall constitute Assumed Liabilities pursuant to Section 2.3 of the Purchase Agreement (emphasis added).

The "Transfer Period" referenced above is defined in the second "Whereas" clause on Page 2 of the Operator Agreement as "the period of time beginning on the Effective Date and continuing until such time as Transfer Approvals for all West Virginia Operator Assignment Permits are obtained by [Bluestone Oil], or new Permits (including Replacement Permits) are issued to [Bluestone Oil] (the "Transfer Period")."

Oil has failed to obtain final authority from the D.E.P. to step into the Debtors' shoes as the permittee of the mining permits with respect to the Pinnacle Mine. Further, Bluestone Oil has operated the Pinnacle Mine in a way that has resulted in fines, penalties, cessation orders, and unabated violations (together, the "**Violations**") to be levied against both the Debtors and the Plan Administrator by the D.E.P. and the federal Office of Surface Mining ("**OSM**") since April 30, 2019. These Violations are summarized in the chart below:[9]

| Permit Number | NOV / CO No. | Violation Type | Violation Date | Approx Amount Due |
|---|---|---|---|---|
| E002500 | 10-CO | State Civil Penalty[10] | 3/7/2019 | $5,250.00 |
| E002500 | EM-25 | AML | 6/30/2021 | $4,300.90 |
| E002500 | EM-25 | AML | 9/30/2021 | $4,800.34 |
| E002500 | EM-25 | AML | 12/31/2021 | $1,559.42 |
| E002500 | 12-NOV | State Civil Penalty | 2/22/2022 | $888.00 |
| E002500 | EM-25 | AML | 3/31/2022 | $1,846.22 |
| E002500 | 13-NOV | State Civil Penalty | 4/5/2022 | $1085.00 |
| E002500 | EM-25 | AML | 6/30/2022 | $412.61 |
|  |  |  |  |  |
| O013883 | 53-NOV | State Civil Penalty | 2/12/2019 | $1,725.00 |
| O013883 | 54-NOV | State Civil Penalty | 2/12/2019 | $1,900.00 |
| O013883 | 55-NOV | State Civil Penalty | 2/27/2019 | $2,540.00 |
| O013883 | 56-NOV | State Civil Penalty | 4/17/2019 | $2,131.00 |
| O013883 | 58-NOV | State Civil Penalty | 6/12/2019 | $2,253.00 |
| O013883 | 64-CO | State Civil Penalty | 6/30/2022 | $20,250.00 |
|  |  |  |  |  |
| O400892 | 5-CO | Unabated State Cessation Order | 2/9/2021 | ---- |
| O400892 | 5-CO | State Civil Penalty | 2/9/2021 | $22,500.00 |

---

[9] Information summarized in the above chart is taken from OSM's Applicant Violator System centralized database, which is discussed in more detail below.
[10] "State Civil Penalty" refers to fines related to a violation of mining laws issued by a state regulatory authority, in this case the West Virginia Department of Environmental Protection. *See AVS USERS GUIDE* (September 2018), available at https://avss.osmre.gov/pdfs/help.pdf (last accessed).

| Permit Number | NOV / CO No. | Violation Type | Violation Date | Approx Amount Due |
|---|---|---|---|---|
| O401097 | 7-CO | Unabated State Cessation Order | 2/9/2021 | ---- |
| O401097 | 7-CO | State Civil Penalty | 2/9/2021 | $22,500.00 |
| | | | | |
| O402292 | 9-NOV | State Civil Penalty | 1/3/2019 | $1,414.00 |
| O402292 | 10-NOV | State Civil Penalty | 2/12/2019 | $1,353.00 |
| O402292 | 11-CO | State Civil Penalty | 3/13/2019 | $22,500.00 |
| O402292 | 16-NOV | State Civil Penalty | 8/24/2021 | $719.00 |
| O402292 | 17-NOV | State Civil Penalty | 5/31/2022 | $440.00 |
| O402292 | 18-CO | Unabated State Cessation Order[11] | 6/30/2022 | ---- |
| O402292 | 19-NOV | State Civil Penalty | 6/30/2022 | $1,380.00 |
| O402292 | 21-CO | Unabated State Cessation Order | 8/17/2022 | ---- |
| | | | | |
| U020483 | 15-NOV | State Civil Penalty | 12/18/2018 | $1,286.00 |
| U020483 | 16-NOV | State Civil Penalty | 2/12/2019 | $1,840.00 |
| U020483 | 17-NOV | State Civil Penalty | 2/28/2019 | $2,108.00 |
| U020483 | 18-CO | State Cessation Order | 4/17/2019 | $21,750.00 |
| U020483 | 19-CO | State Civil Penalty | 4/17/2019 | $22,500.00 |
| U020483 | 19-CO | Unabated State Cessation Order | 4/17/2019 | ---- |
| U020483 | U-204-83 | NRSP[12] | 6/30/2019 | Unknown |
| U020483 | 21-CO | State Civil Penalty | 9/30/2019 | $21,333.60 |
| U020483 | 24-CO | State Civil Penalty | 4/14/2020 | $22,500.00 |
| U020483 | 24-CO | Unabated State Cessation Order | 4/14/2020 | ---- |
| U020483 | 28-CO | Unabated State Cessation Order | 2/9/2021 | ---- |
| U020483 | 28-CO | State Civil Penalty | 2/9/2021 | $22,500.00 |
| U020483 | 29-NOV | State Civil Penalty | 4/5/2022 | $950.00 |
| U020483 | 30-CO | State Civil Penalty | 4/19/2022 | $22,500.00 |
| U020483 | 30-CO | Unabated State Cessation Order | 4/19/2022 | ---- |

---

[11] "State Cessation Order" refers to an order to cease mining due to violations issued by the state regulatory authority. *Id.*

[12] "NRSP" refers to failure by the permit-holder to submit a required quarterly production report, which OSM uses to calculate reclamation fees. *Id.*

| Permit Number | NOV / CO No. | Violation Type | Violation Date | Approx Amount Due |
|---|---|---|---|---|
| U070700 | 11-NOV | State Civil Penalty | 9/22/2021 | $660.00 |
|  |  |  |  |  |
|  |  | **TOTAL** (Approximate) |  | **$263,675.09**[13] |

5. The Plan Administrator cannot fulfill and complete his duties and obligations until such time as the Bluestone Parties have transferred and/or replaced each of the mining permits. The Plan Administrator has issued correspondence to the D.E.P., dated June 17, 2022 (the "**D.E.P. Letter**"), regarding the Debtors' sale of the Pinnacle Mine to Bluestone Resources, explaining that the Court's entry of the Confirmation Order, coupled with Bluestone Oil's obligations under the APA and the Operator Agreement, means that the D.E.P. should not levy fines or issue violation notices to the Debtors or to the Plan Administrator, and requesting that the fines and violation notices should instead be issued to Bluestone Oil.[14]

6. The D.E.P. has responded by issuing a letter-form Decision and Order dated August 1, 2022 (the "**D.E.P. Decision**") denying the Plan Administrator's requests and instead ordering, among other things, (a) that "until the [D.E.P.] actually approves the transfer of the permits **the Reorganized Debtors remain responsible and liable under the permits**;" (b) that "[v]iolations of the terms and conditions of this Order **may subject Pinnacle Mining Company, the Plan Administrator, and Pinnacle Mining Company's other directors, officers or agents to additional civil and criminal penalties and injunctive relief** in accordance with applicable law;"

---

[13] This total is subject to increase due to continuing interest and late penalty charges, and for other violations that may not have yet been assessed by the D.E.P.
[14] A true and correct copy of the D.E.P. Letter is attached hereto as **Exhibit "C."**

and, (c) that the Plan Administrator shall remain **personally** identified in D.E.P.'s database as controller of the Pinnacle Mine (emphasis added).[15]

## HARM TO THE PLAN ADMINISTRATOR AND CREDITORS

7. Counsel to the D.E.P. has asserted that because the mining permits have never been transferred to the Bluestone Parties (due to no fault of the Plan Administrator), the Plan Administrator has ongoing liability (both estate and personal liability) to the D.E.P. for the various violations committed by, and unabated by, the Bluestone Parties.

8. Further, the Bluestone Parties' refusal to comply with the Confirmation Order has resulted in a "permit-block" to the Plan Administrator, which has caused him personal and professional harm. The federal Surface Mining Control and Reclamation Act (the "**SMCRA**"), enacted in 1977, includes a "permit blocking" provision[16] designed to prevent operators that have unabated committed environmental violations from obtaining new surface mining permits until those violations are addressed to the satisfaction of the appropriate agency. The pre-SMCRA mining industry included many small mine operators that would mine and then abandon sites without reclaiming in accordance with then-existing state laws.[17] There was no mechanism preventing those operators from abandoning such operations, forming a new business entity and then obtaining new permits. The "permit block" provision and OSM's later-enacted regulations were designed as way of preventing those operators and entities that own or control those operators

---

[15] A true and correct copy of the D.E.P. Decision is attached hereto as **Exhibit "D."** The D.E.P. Decision is five (5) pages long but the pages are not numbered. The parts of the D.E.P. Decision quoted above are found at the bottom of Page 3 and on Pages 4-5.

[16] *See* 30 U.S.C. § 1260 (c) ( "where…information available to the regulatory authority indicates that any surface coal mining operation owned or controlled by the applicant is currently in violation of this chapter or other [environmental] laws…the permit shall not be issued until the applicant submits proof that such violation has been corrected or is in the process of being corrected to the satisfaction of the regulatory authority …which has jurisdiction over such violation." *See* 30 U.S.C. § 1260(c). "Block-worthy" infractions include delinquent civil penalties or fees, certain outstanding unabated violations of SMCRA, and/or unabated violations of certain other laws.

[17] *See Requirements for Surface Coal Mining and Reclamation Permit Approval; Ownership and Control*, 53 Fed. Reg. 38868 (Oct. 3, 1988).

from obtaining new permits until their prior violations were abated. *Id.* Accordingly, the SMCRA and its implementing regulations require that permit applications contain information about the applicant's ownership structure, the holders of the interests in property to be mined, and other entities under common control. 30 U.S.C. §1257(b).

9. Additionally, the SMCRA requires that applicants include a schedule of all violations of the SMCRA and the resolution of the violations and prohibits permit issuance where that the applicant or an entity owned or controlled by the applicant has unabated violations. 30 U.S.C. §1260. In order to maintain a comprehensive schedule of violations across states, the federal Office of Surface Mining created the Applicant Violator System (the "**AVS**"), which is a computerized database programed created in 1987 to identify links between known violators and applicants, individuals, and corporations. *See Sam P. Burchett, The Applicant Violator System in Transition*, 21 n. Ky. L. Rev. 555 n.5 (1994). The AVS system was created for two main purposes: (1) to identify violators who might try to avoid abating their violations by continuing to mine in revised corporate form; and (2) to coerce remedial action by owners or controllers of violators with the threat of a permit block. 53 Fed. Reg. at 38875; *see also* 56 Fed. Reg. 45780 (Sept. 6, 1991). The OSM operates the database and makes it available to the public via the Internet. *See* Office of Surface Mining, Access, at https://avss.osmre.gov/login.aspx (last accessed September 12, 2022).

10. States are given the option of assuming primacy for the regulation of surface mining within their borders and can enact their own version of the SMCRA, which must be approved by the federal Office of Surface Mining. *See* 30 U.S.C. 1260(a). West Virginia enacted the West Virginia Surface Coal Mining and Reclamation Act (the "**WVSCMRA**"), which contains its own "permit-blocking" provisions within the statute (W.Va. Code § 22-3-18(c)) and also within the statute's implementing legislative rules. *See* W.Va. Code. St. R. §38-2-3.32.c. In West Virginia,

every surface mining permit application must identify the applicant's owners and controllers, as defined in §38-2-2.83 of the rules. *See* W.Va. Code St. R. §38-2-3.1.c-d. West Virginia's surface mining rules contain a number of "presumptive" categories of controllers, such as owners, officers, or directors, that allow the D.E.P. to presume that a person or entity has control over a violator unless they can demonstrate they actually have no control over the ability to determine how operations are conducted. W.Va. Code. St. R. §38-2-2.83.d.

11. The D.E.P and all States with OSM-approved surface mining programs provide information on ownership and control received through state permit applications to the AVS and are also required to review the AVS information on permit applicants.[18] Thus, once the D.E.P. enters a "control" link to an individual or entity with a permit-block, that individual or entity may, themselves, then be "personally" permit blocked in all states. In turn, if that person is, for example, an officer or director, he or she may carry that block from the violating entity to a non-violating entity where he or she serves in a similar capacity. In that instance, the non-violating entity my avoid the block only if the violating entity cures the outstanding violations or it severs its relationship with the permit blocked individual - making such individuals virtually unemployable in the mining industry.

12. In the present case, the D.E.P. has applied the presumption of control to the Plan Administrator on the basis of the Confirmation Order's provision that the Plan Administrator would act as the sole officer, director, and manager of Mission Coal Company, LLC ("**Mission Coal**"), which is the parent company of two former mine operators, Seminole Coal Resources, LLC ("**Seminole**") and Pinnacle Mining Company, LLC ("**Pinnacle**"). As detailed above, Pinnacle's West Virginia operations, which are the Bluestone Parties' responsibility, have

---

[18] *Use of the Applicant/Violator Computer System (AVS) in Surface Coal Mining Reclamation and Permit* Approval, 56 Fed. Reg. 45780, 45781; *see also* 30 C.F.R. §§773.8 & 773.11.

Case 18-04177-TOM11    Doc 1782    Filed 09/27/22    Entered 09/27/22 10:40:51    Desc
Main Document    Page 12 of 17

outstanding violations of environmental laws and unpaid Abandoned Mine Land fees that have resulted in a permit-block for Pinnacle and its owners and controllers, including the Plan Administrator.

13. Until recently, the Plan Administrator sat on the Board of Directors for a different coal company (Westmoreland Coal) that was actively applying for surface mining permits in other States. After running the mandatory AVS cross-checks on the owners and controllers identified by that coal company during the application process, the regulatory authorities in those States found that the coal company (Westmoreland Coal) was connected to Pinnacle's violations through its connection to the Plan Administrator. Once the potential risk of a permit block was identified, the Plan Administrator opted to resign his position on the board of directors for the good of the company. Thus, the Bluestone Parties' refusal to fulfill their obligations is not only a breach of the APA and in contravention of the Confirmation Order, but has also personally harmed the Plan Administrator through loss of income and has caused him professional harm through damage to his reputation.

## NOTICE TO BLUESTONE

14. The Plan Administrator has issued correspondence to Bluestone Resources dated August 31, 2022 (the "**Bluestone Letter**") detailing the reasons why Bluestone Resources is in violation of the Confirmation Order, the Bluestone APA, and the Operator Agreement.[19] But Bluestone Resources has failed to respond to the Bluestone Letter in any meaningful fashion, thereby necessitating the Plan Administrator's filing of the instant motion.

---

[19] A true and correct copy of the Bluestone Letter is attached as **Exhibit "E."**

## REQUEST FOR RELIEF

15. The Plan Administrator asks the Court to enforce the Confirmation Order, the APA, and the Operator Agreement against the Bluestone Parties by ordering the Bluestone Parties, within thirty (30) days, to:

   a) Take all steps necessary to secure the transfer or replacement of all the West Virginia Mining Permits and any associated permits or licenses, including those summarized in footnote 3 of this brief;

   b) Cure any existing D.E.P. Violations on all of the West Virginia Mining Permits by fulfilling their Permit Obligations and Reclamation Obligations; and,

   c) Pay all outstanding fines, penalties, or fees associated with the West Virginia Mining Permits and any associated permits or licenses;

16. Moreover, the Plan Administrator asks the Court to order that the Bluestone Parties and, if necessary, their respective officers and directors, may be subject to contempt of court in the event that they fail to timely comply.

17. Finally, the Plan Administrator asks the Court to order that the Plan Administrator, in his discretion, may elect to terminate the Operating Agreement with the Bluestone Parties.

## BASIS FOR RELIEF

18. The Court is authorized to require the Bluestone Parties to cure the D.E.P. Violations and fulfill their Permit Obligations and Reclamation Obligations pursuant to Sections 105(a), 1141(a), and 1142(b) of the Bankruptcy Code, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure, and the Court's continuing jurisdiction over this case pursuant to 28 U.S.C. § 157(b)(2) and Paragraph OO, titled "Retention of Jurisdiction," of the Confirmation Order.

19.     Section 105(a) authorizes the Court to "enter any order … that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). This includes an order enforcing the obligations owed by a party pursuant to an order confirming a debtor's chapter 11 plan, *See* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind … any entity acquiring property under the plan") and *In re Davis Offshore, L.P.*, 644 F.3d 259, 265 (5th Cir. 2011) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) for the proposition that a confirmation order that has become final cannot be collaterally attacked by parties in the case), the performance of which may be required by the Court pursuant to Section 1142(b) ("The court may direct … any other necessary party … to perform any other act … that is necessary for the consummation of the plan").

20.     The Court's continuing jurisdiction over this case gives it the power to enforce the Permit Obligations and Reclamation Obligations owed by the Bluestone Parties pursuant to 28 U.S.C. §§ 157(b)(2)(L) ("confirmations of plans") and (N) ("orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate"), and Paragraph OO, titled "Retention of Jurisdiction," of the Confirmation Order ("Except as otherwise provided in any of the Plan, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and the Sale Transactions, including, but not limited to, (a) the matters set forth in Article XI of the Plan, and (b) the enforcement of this Order and all documents and agreements authorized herein"). Further authority is provided by subpart (d) of Rule 3020, which is titled "Retained power," and provides that "Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." *See* Fed. R. Bankr. P. 3020(d).

## NOTICE

21. Notice of this Motion will be given to (a) the Bluestone Parties; (b) the D.E.P.; (c) the Bankruptcy Administrator; (d) Sean Southard, Liquidating Trustee; and (e) all parties who have entered a formal appearance in this case pursuant to Bankruptcy Rule 2002 or who have requested notice.

WHEREFORE, Gilbert E. Nathan, in his capacity as the Plan Administrator, moves the Court to enforce the Confirmation Order, the APA, and the Operator Agreement against Bluestone Resources and Bluestone Oil by ordering the Bluestone Parties to, within thirty (30) days,

(A) take all steps necessary to secure the transfer or replacement of all of the West Virginia Mining Permits, and any associated permits or licenses;

(B) cure all existing (or subsequently occurring) D.E.P. Violations related to each of the West Virginia Mining Permits, and any associated permits or licenses;

(C) fulfill their Permit Obligations and Reclamation Obligations for the reasons set out herein; and,

(D) pay all outstanding fines, penalties, or fees associated with the West Virginia Mining Permits, and any associated permits or licenses;

and further ordering that the Plan Administrator, in his discretion, may hereafter elect to terminate the Operating Agreement with the Bluestone Parties.

Dated:   September 27, 2022

**CHRISTIAN & SMALL LLP**

By: */s/ Daniel D. Sparks*
Daniel D. Sparks
Bradley R. Hightower
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203
Tel: (205) 795-6588
Email: ddsparks@csattorneys.com
     brh@csattorneys.com

*Counsel to Gilbert E. Nathan,
Plan Administrator*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing motion has been served upon Bluestone Resources, Inc. and Bluestone Oil Corp. by email and certified mail at the address below, and upon the all other parties requesting notice, via the Court's CM/ECF noticing system.

**Via Email and Certified Mail**

Bluestone Resources, Inc.
302 S. Jefferson St.
Roanoke, VA 24011
Attention:   James C. Justice, III
             Steven W. Ball, Esq.
Email:   jcj3@bluestoneindustries.com
         steve.ball@bluestoneindustries.com

*/s/ Bradley R. Hightower*
Bradley R. Hightower

Page **17** of **17**

Case 18-04177-TOM11    Doc 1782    Filed 09/27/22    Entered 09/27/22 10:40:51    Desc
Main Document    Page 17 of 17